IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TOM G. PALMER, et al., | ) | Case No. 09-CV-1482-HHK |
| | ) | |
| Plaintiffs, | ) | MEMORANDUM OF POINTS |
| | ) | AND AUTHORITIES IN SUPPORT |
| v. | ) | OF PLAINTIFFS' MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| DISTRICT OF COLUMBIA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

COME NOW the Plaintiffs, Tom G. Palmer, George Lyon, Edward Raymond, Amy

McVey, and the Second Amendment Foundation, Inc., by and through undersigned counsel, and

and submit their Memorandum of Points and Authorities in Support of Plaintiffs' Motion for

Summary Judgment.

Dated: August 26, 2009                    Respectfully submitted,

                                          Alan Gura (D.C. Bar No. 453449)
                                          Gura & Possessky, PLLC
                                          101 N. Columbus Street, Suite 405
                                          Alexandria, VA 22314
                                          703.835.9085/Fax 703.997.7665

                                    By:   /s/Alan Gura_____
                                          Alan Gura

                                          Attorney for Plaintiffs

TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.     THE SECOND AMENDMENT PROTECTS THE RIGHT
       TO CARRY HANDGUNS FOR SELF-DEFENSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.    THE RIGHT TO BEAR ARMS MAY NOT BE CONDITIONED
       UPON RESIDENCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

       A.     <u>Defendants' Residence-Based Discrimination Violates
              The Right To Equal Protection</u>. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

       B.     <u>Defendants' Residence-Based Discrimination Violates
              the Right to Travel</u>.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

TABLE OF AUTHORITIES

Cases

*Andrews* v. *State*, 50 Tenn. 165 (1871). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11

*Apethaker* v. *Secretary of State*, 378 U.S. 500 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Aymette* v. *State*, 21 Tenn. 154 (1840). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Bolling* v. *Sharpe*, 347 U.S. 497 (1954). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Bsharah* v. *United States*, 646 A.2d 993 (D.C. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Buckley* v. *Valeo*, 424 U.S. 1 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*City of Cleburne* v. *Cleburne Living Center*, 473 U.S. 432 (1985). . . . . . . . . . . . . . . . . . . . . 14

*City of Las Vegas* v. *Moberg*, 485 P.2d 737 (N.M. Ct. App. 1971). . . . . . . . . . . . . . . . . . . . . 9

*District of Columbia* v. *Heller*, 128 S. Ct. 2783 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Dunn* v. *Blumstein*, 405 U.S. 330 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Guillory* v. *County of Orange*, 731 F.2d 1379 (9th Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . 15

*Harper* v. *Virginia Board of Elections*, 383 U.S. 663 (1966). . . . . . . . . . . . . . . . . . . . . . . . 14

*Hutchins* v. *District of Columbia*,
    188 F.3d 531 (D.C. Cir. 1999) (en banc). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Application of McIntyre*, 552 A.2d 500 (Del. Super. 1988). . . . . . . . . . . . . . . . . . . . . . 12

*In re Brickey*, 70 P. 609 (Idaho 1902). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kellogg* v. *City of Gary*, 562 N.E.2d 685 (Ind. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mills* v. *District of Columbia,* 571 F.3d 1304 (D.C. Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . 16

*Muscarello* v. *United States*, 524 U.S. 125 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Nunn* v. *State*, 1 Ga. 243 (1846). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-11

*Robertson* v. *Baldwin*, 165 U.S. 275 (1897). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Saenz* v. *Roe*, 526 U.S. 489 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Shapiro* v. *Thompson*, 394 U.S. 618 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*State ex rel. City of Princeton* v. *Buckner*, 377 S.E.2d 139 (W. Va. 1988). . . . . . . . . . . . . . . . 9

*State* v. *Chandler*, 5 La. Ann. 489 (1850). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*State* v. *Delgado*, 692 P.2d 210 (Or. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*State* v. *Kerner*, 107 S.E. 222 (N.C. 1921). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*State* v. *Reid*, 1 Ala. 612 (1840). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*State* v. *Rosenthal*, 55 A. 610 (Vt. 1903). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States* v. *Carolene Products Co.*, 304 U.S. 144 (1938). . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States* v. *Emerson*, 270 F.3d 203 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States* v. *Everist*, 368 F.3d 517 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Zobel* v. *Williams*, 457 U.S. 55 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Constitutional Provisions

U.S. Const. amend. II. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

U.S. Const. amend. VI. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

U.S. Const. amend. VIII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Statutes

D.C. Code § 7-2502.01. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

D.C. Code § 7-2502.02. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13, 16

D.C. Code § 7-2507.06. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

D.C. Code § 22-4504. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13, 16

D.C. Code § 22-4505. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

D.C. Code § 22-4506. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Tex. Gov't Code § 411.177(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Tex. Penal Code § 46.035(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Other Authorities

Black's Law Dictionary (6th Ed. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Eugene Volokh, *Implementing the Right to Keep
    and Bear Arms for Self-Defense: An Analytic
    Framework and a Research Agenda,*
    56 UCLA L. Rev. 1443 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

The American Students' Blackstone (G. Chase ed. 1884). . . . . . . . . . . . . . . . . . . . . . 11, 12

iv

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

PRELIMINARY STATEMENT

The Second Amendment contains two basic guarantees with respect to the right to arms: "keep and bear." U.S. Const., amend. II. Last year, the Supreme Court affirmed the D.C. Circuit's judgment striking down the District of Columbia's complete ban on the keeping of functional arms in the home, including a specific ban on the keeping of handguns. Now comes the time to eliminate the city's unconstitutional ban on the bearing of arms.

As with the earlier case, this action does not assert an absolute right to be free of gun regulations in the interest of public safety. The Supreme Court correctly advised that the right to bear arms can be restricted in sensitive places, limited to those which would be in lawful common use (including handguns), barred to particularly dangerous individuals, and restricted to lawful purposes. But none of these restrictions, which the District is free to enforce, is at issue here. The problem before the Court is a total ban on the exercise of the right to bear all arms, by all people, at all times, for all purposes.

The District's complete gun carry prohibition is not merely unconstitutional. It is also highly unusual, reflecting a condition that exists in just one of the fifty states (Illinois). In almost all states, and in most major American cities, the right to bear arms is well-established. Forty-one states generally allow individuals to arm themselves with functional handguns in public for self-defense. In many of these states (including nearby Virginia), a permit is required only if the handgun is carried concealed. And in most of these states, a permit to carry a handgun is mandatorily available to qualified applicants. The remaining eight states implement discretionary

1

licensing systems in an uneven fashion, though even in these states, residents can and do obtain licenses to carry handguns. Most states recognize at least some handgun carry permits issued by other states, and numerous states issue handgun carry permits to non-residents who meet the issuing state's qualifications.

This lawsuit seeks nothing more than to secure for individuals in the District the same right already enjoyed, without incident, by people in Atlanta, Dallas, Denver, Detroit, Philadelphia, Phoenix, Miami, and Seattle. How the District regulates the right to bear arms is largely up to the District, within constitutional limitations. But the city's ability to flatly prohibit the right's exercise is foreclosed by the Second Amendment.

STATEMENT OF FACTS

The basic facts are not in dispute. D.C. Code § 7-2502.01(a) provides that "no person or organization in the District shall possess or control any firearm, unless the person or organization holds a valid registration certificate for the firearm." Statement of Undisputed Material Fact ("UMF") 1. D.C. Code § 7-2502.02(a)(4) provides that individuals who are not retired police officers may only register a handgun "for use in self-defense within that person's home." UMF 2. Pursuant to this statutory limitation, Defendants District of Columbia and its Police Chief, Cathy Lanier, distribute handgun registration application forms requiring applicants to "give a brief statement of your intended use of the firearm and where the firearm will be kept." UMF 3.

Defendants maintain a custom, practice and policy of refusing to entertain gun registration applications by individuals who do not reside in the District of Columbia. Defendants require gun registration applicants submit "[p]roof of residency in the District of Columbia (e.g., a valid DC operator's permit, DC vehicle registration card, lease agreement for a residence in the

2

District, the deed to your home, or other legal document showing DC residency)." UMF 4. A first violation of the District of Columbia's ban on the ownership or possession of unregistered handguns is punishable as a misdemeanor by a fine of up to $1,000, imprisonment of up to one year, or both.  A second offense is punishable as a felony by a fine of up to $5,000, imprisonment of up to five years, or both. D.C. Code § 7-2507.06. UMF 5.

D.C. Code § 22-4504(a) provides, "[n]o person shall carry within the District of Columbia either openly or concealed on or about their person, a pistol, without a license issued pursuant to District of Columbia law, or any deadly or dangerous weapon capable of being so concealed." UMF 6. The first violation of this section by a non-felon is punishable by a fine up to $5,000 and imprisonment of up to five years. UMF 7.

Former D.C. Code § 22-4506 empowered the District of Columbia's police chief to issue licenses to carry handguns to individuals, including to individuals not residing in the District of Columbia. UMF 8. However, it was Defendant District of Columbia's policy for many years to not issue such licenses. UMF 9. "It is common knowledge . . . that with very rare exceptions licenses to carry pistols have not been issued in the District of Columbia for many years and are virtually unobtainable." *Bsharah* v. *United States*, 646 A.2d 993, 996 n.12 (D.C. 1994). On December 16, 2008, the District of Columbia's City Council and Mayor repealed the Police Chief's authority to issue handgun carry licenses. UMF 10. Accordingly, the District of Columbia lacks any mechanism to issue handgun carry licenses to individuals. UMF 11.

Plaintiff Tom G. Palmer would carry a functional handgun in public for self-defense, but refrains from doing so because he fears arrest, prosecution, fine, and imprisonment as he does not possess a license to carry a handgun. UMF 12. Palmer sought to register a handgun in the District

of Columbia so that he might carry it for self-defense. UMF 13. On or about May 12, 2009,

defendant Lanier denied plaintiff Palmer's application to register a handgun, for the following

reason:

> The intended use of the firearm as stated on your firearms registration application, "I intend to carry this firearm, loaded, in public, for self-defense, when not kept in my home" is unacceptable per the "Firearms Registration Emergency Amendment Act of 2008," which states that pistols may only be registered by D.C. residents for protection within the home.

UMF 14. Defendant Lanier subsequently approved Palmer's application to register the handgun

for home self-defense. UMF 15.

Plaintiff George Lyon would carry a functional handgun in public for self-defense, but

refrains from doing so because he fears arrest, prosecution, fine, and imprisonment as he does not

possess a license to carry a handgun in Washington, D.C. UMF 16. Lyon is licensed to carry

handguns by the states of Virginia, Utah, and Florida. He has approximately 240 hours of

firearms training, of which approximately 140 hours relate specifically to handguns. UMF 17.

Lyon sought to register a handgun in the District of Columbia so that he might carry it for self-

defense. UMF 18. On or about April 8, 2009, defendant Lanier denied plaintiff Lyon's

application to register a handgun, for the following reason:

> The intended storage and use of the firearm as stated on your firearms registration application, "carrying personal protection, keep at home or office" is unacceptable per the "Firearms Registration Emergency Amendment Act of 2008," which states that pistols may only be registered by D.C. residents for protection within the home.

UMF 19. Defendant Lanier subsequently approved Lyon's application to register the handgun for

home self-defense. UMF 20.

4

Plaintiff Edward Raymond is currently enrolled as a student in the Franklin Pierce Law Center in New Hampshire. He is also employed as a Patent Examiner, and owns a home in Waldorf, Maryland. Raymond holds a Master of Business Administration degree, as well as a Master of Science degree in Electrical Engineering. He has started various successful businesses, and is an honorably discharged Navy veteran. UMF 21.

On April 6, 2007, Plaintiff Raymond was stopped by District of Columbia Police for allegedly speeding. UMF 22. At the time, Raymond held valid permits to carry a handgun issued by the states of Maryland and Florida, and he still holds those permits. UMF 23. Although Raymond was never charged with a traffic violation, he was charged with carrying a pistol without a license because his loaded handgun was located in his car's center console. UMF 24. Raymond subsequently pled guilty to misdemeanor possession of an unregistered firearm and unregistered ammunition. He successfully completed a sentence of probation. UMF 25.

Plaintiff Edward Raymond would carry a functional handgun in public for self-defense while visiting and traveling through Washington, D.C., but refrains from doing so because he fears another arrest and prosecution, as well as fine and imprisonment as he does not possess a license to carry a handgun in Washington, D.C. UMF 26. On June 26, 2009, Plaintiff Edward Raymond sought to register a handgun in the District of Columbia. He was refused an application form on account of his lack of residence in the District. UMF 27.

Plaintiff Amy McVey would carry a functional handgun in public for self-defense, but refrains from doing so because she fears arrest, prosecution, fine, and imprisonment as she does not possess a license to carry a handgun in Washington, D.C. UMF 28. McVey is licensed by the state of Virginia to publicly carry a handgun. UMF 29.

Plaintiff Amy McVey sought to register a handgun in the District of Columbia so that she might carry it for self-defense. UMF 30. On July 7, 2009, defendant Lanier denied plaintiff McVey's application to register a handgun, for the following reason:

> The intended storage and use of the firearm as stated on your firearms registration application, "I intend to carry the loaded firearm in public for self-defense when not stored in my home" is unacceptable per the "Firearms Registration Emergency Amendment Act of 2008," which states that pistols may only be registered by D.C. residents for protection within the home.

UMF 31.

Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. UMF 32. SAF has over 650,000 members and supporters nationwide, including Washington, D.C. UMF 33. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control. UMF 34. SAF expends its resources encouraging exercise of the right to bear arms, and advising and educating its members, supporters, and the general public about the law with respect to carrying handguns in Washington, D.C. UMF 35. The issues raised by, and consequences of, Defendants' policies, are of great interest to SAF's constituency. UMF 36. Defendants' policies regularly cause the expenditure of resources by SAF as people turn to it for advice and information. UMF 37. Defendants' policies bar the members and supporters of SAF  from obtaining permits to carry handguns. UMF 38.

## SUMMARY OF ARGUMENT

The Second Amendment guarantees the right to carry handguns in public for self-defense. To be sure, this right is subject to a legitimate regulatory interest that has been recognized for

centuries. However, throughout the centuries, it has always been well-understood that the state's regulatory interest does not sanction a complete ban on the carrying of handguns. The city's total ban is plainly unconstitutional.

Also unconstitutional is the Defendants' imposition of residency requirements for the exercise of Second Amendment rights. The Bill of Rights is enjoyed on equal terms by all visitors to our nation's capital. Restricting fundamental rights to city residents does not survive any standard of equal protection review, and violates not only the right to bear arms, but the right of travel as well.

Defendants have many options at their disposal. Assuming they wish to regulate the carrying of weapons, Defendants may, as suggested by their basic carrying statute, license the carrying of handguns much as they do the keeping of handguns. They may entirely proscribe the carrying of handguns in either a concealed or open manner. And they may restrict the carrying of handguns in sensitive places. But Plaintiffs do not ask the Court to legislate for the District, only to enjoin those practices and policies that violate the right to arms until the District conforms its conduct to constitutional requirements.

ARGUMENT

I.    THE SECOND AMENDMENT PROTECTS THE RIGHT TO CARRY HANDGUNS FOR SELF-DEFENSE.

The Second Amendment protects the right "to keep and bear arms." U.S. Const. amend. II. This syntax is not unique within the Bill of Rights. For example, the Sixth Amendment guarantees the right to a "speedy and public trial," U.S. Const. amend. VI, while the Eighth Amendment secures individuals from "cruel and unusual" punishment. U.S. Const. amend. VIII.

7

Just as the Sixth Amendment does not sanction secret, speedy trials or public, slow trials, and the

Eighth Amendment does not allow the usual practice of torture, the Second Amendment's

reference to "keep and bear" refers to two distinct concepts.

The Supreme Court confirmed as much, rejecting the argument that "keep and bear arms"

was a unitary concept referring only to a right to possess weapons in the context of military duty.

"At the time of the founding, as now, to 'bear' meant to 'carry.'" *District of Columbia* v. *Heller*,

128 S. Ct. 2783, 2793 (2008) (citations omitted). To "bear arms," as used in the Second

Amendment, is to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for

the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict

with another person." *Heller*, 128 S. Ct. at 2793 (quoting *Muscarello* v. *United States*, 524 U.S.

125, 143 (1998) (Ginsburg, J., dissenting); Black's Law Dictionary 214 (6th Ed. 1998)); *see*

*also Heller*, 128 S. Ct. at 2804 ("the Second Amendment right, protecting only individuals'

liberty to keep *and carry* arms . . ."), at 2817 ("the right to keep *and carry* arms") (emphasis

added).

Having defined the Second Amendment's language as including a right to "carry" guns

for self-defense, the Supreme Court helpfully noted several exceptions that prove the rule.

Explaining that this right is "not unlimited," in that there is no right to "carry any weapon

whatsoever in any manner whatsoever and for whatever purpose," *Heller*, 128 S. Ct. at 2816

(citations omitted), the Court confirmed that there is a right to carry at least some weapons, in

some manner, for some purpose. The Supreme Court then listed as "presumptively lawful,"

*Heller*, 128 S. Ct. at 2817 n.26, "laws forbidding the carrying of firearms in sensitive places," *id.*,

at 2817, confirming both that such "presumptions" may be overcome in appropriate

8

circumstances, and that carrying bans are *not* presumptively lawful in non-sensitive places.

The dissenting justices in *Heller* appeared to acknowledge that the decision protected the public carrying of handguns:

> Given the presumption that most citizens are law abiding, and the reality that the need to defend oneself may suddenly arise in a host of locations outside the home, I fear that the District's policy choice may well be just the first of an unknown number of dominoes to be knocked off the table.

*Heller*, 128 S. Ct. at 2846 (Stevens, J., dissenting). The *Heller* majority sharply disagreed with the dissenters on numerous points, but remained silent with respect to that observation.

In upholding the right to carry a handgun under the Second Amendment, the *Heller* court broke no new ground. As early as 1846, Georgia's Supreme Court, applying the Second Amendment, quashed an indictment for the carrying of a handgun that failed to allege whether the handgun was being carried in a constitutionally-protected manner. *Nunn* v. *State*, 1 Ga. 243, 251 (1846); *see also In re Brickey*, 70 P. 609 (Idaho 1902) (Second Amendment right to carry handgun). Numerous state constitutional right to arms provision have likewise been interpreted as securing the right to carry a gun in public, albeit often, to be sure, subject to some regulation. *See*, *e.g. Kellogg* v. *City of Gary*, 562 N.E.2d 685 (Ind. 1990); *State ex rel. City of Princeton* v. *Buckner*, 377 S.E.2d 139 (W. Va. 1988); *City of Las Vegas* v. *Moberg*, 485 P.2d 737 (N.M. Ct. App. 1971); *State* v. *Kerner*, 107 S.E. 222 (N.C. 1921); *State* v. *Rosenthal*, 55 A. 610 (Vt. 1903) (striking down ban on concealed carry); *Andrews* v. *State*, 50 Tenn. 165 (1871); *see also State* v. *Delgado*, 692 P.2d 210 (Or. 1984) (right to carry a switchblade knife).

The right to bear arms is not abrogated by recognition of its well-established regulation. To the contrary, precedent approving of the government's ability to regulate the carrying of

9

handguns forcefully confirms the general rule to which it establishes exceptions. Traditionally, "the right of the people to keep and bear arms (Article 2) is not infringed by laws prohibiting the carrying of *concealed* weapons . . . ." *Robertson* v. *Baldwin*, 165 U.S. 275, 281-82 (1897) (emphasis added). But more recently, the Supreme Court has suggested that such bans are only "presumptively" constitutional. *Heller*, 128 S. Ct. at 2817 n.26 (emphasis added). Surveying the history of concealed carry prohibitions, it appears time and again that such laws have always been upheld as mere regulations of the manner in which arms are carried – with the understanding that a complete ban on the carrying of handguns is unconstitutional.

*Heller* discussed, with approval, four state supreme court opinions that referenced this conditional rule. *See Heller*, 128 S. Ct. at 2818 (discussing *Nunn*, *supra*, 1 Ga. 243; *Andrews*, *supra*, 50 Tenn. 165; and *State* v. *Reid*, 1 Ala. 612, 616-17 (1840)) and 128 S. Ct. at 2809 (citing *State* v. *Chandler*, 5 La. Ann. 489, 490 (1850)). In *Reid*, upholding a ban on the carrying of concealed weapons, Alabama's high court explained:

> We do not desire to be understood as maintaining, that in regulating the manner of bearing arms, the authority of the Legislature has no other limit than its own discretion. A statute which, under the pretence of regulating, amounts to a destruction of the right, or which requires arms to be so borne as to render them wholly useless for the purpose of defense, would be clearly unconstitutional. But a law which is merely intended to promote personal security, and to put down lawless aggression and violence, and to this end prohibits the wearing of certain weapons in such a manner as is calculated to exert an unhappy influence upon the moral feelings of the wearer, by making him less regardful of the personal security of others, does not come in collision with the Constitution.

*Reid*, 1 Ala. at 616-17.

The *Nunn* court followed *Reid*, and quashed an indictment for publicly carrying a pistol for failing to specify how the weapon was carried:

10

> so far as the act . . . seeks to suppress the practice of carrying certain weapons *secretly*, that it is valid, inasmuch as it does not deprive the citizen of his *natural* right of self-defence, or of his constitutional right to keep and bear arms. But that so much of it, as contains a prohibition against bearing arms *openly*, is in conflict with the Constitution, and *void*.

*Nunn*, 1 Ga. at 251 (emphasis original).

*Andrews* presaged *Heller* by finding that a revolver was a protected arm under the state constitution's Second Amendment analog. It therefore struck down as unconstitutional the application of a ban on the carrying of weapons to a man carrying a revolver, declaring:

> If the Legislature think proper, they may by a proper law regulate the carrying of this weapon publicly, or abroad, in such a manner as may be deemed most conducive to the public peace, and the protection and safety of the community from lawless violence. We only hold that, as to this weapon, the prohibition is too broad to be sustained.

*Andrews*, 165 Tenn. at 187-88.[1]

Finally, in *Chandler*,

> the Louisiana Supreme Court held that citizens had a right to carry arms openly: "This is the right guaranteed by the Constitution of the United States, and which is calculated to incite men to a manly and noble defence of themselves, if necessary, and of their country, without any tendency to secret advantages and unmanly assassinations."

*Heller*, 128 S. Ct. at 2809 (quoting *Chandler*, 5 La. Ann. at 490).

The legal treatises relied upon by the *Heller* court explained the rule succinctly. For supporting the notion that concealed carrying may be banned, *Heller* further cites to THE AMERICAN STUDENTS' BLACKSTONE, 84 n.11 (G. Chase ed. 1884). *Heller*, 128 S. Ct. at 2816. Here is what that source provides:

---

[1]*Andrews* appeared to abrogate in large part *Aymette* v. *State*, 21 Tenn. 154 (1840), upholding the prohibition on the concealed carry of daggers. But even *Aymette*, which found a state right to bear arms limited by a military purpose, deduced from that interpretation that the right to bear arms protected the open carrying of arms. *Aymette*, 21 Tenn. at 160-61.

11

> [I]t is generally held that statutes prohibiting the carrying of *concealed* weapons are not in conflict with these constitutional provisions, since they merely forbid the carrying of arms in a particular manner, which is likely to lead to breaches of the peace and provoke to the commission of crime, rather than contribute to public or personal defence. In some States, however, a contrary doctrine is maintained.

Exh. D, AMERICAN STUDENTS' BLACKSTONE, 84 n.11 (emphasis original). This understanding survives today. *See, e.g. In re Application of McIntyre*, 552 A.2d 500, 501 n.1 (Del. Super. 1988) ("'the right to keep and bear arms' does not of necessity require that such arms may be kept concealed").

It is important, then, to recall that (1) the Supreme Court's definition of "bear arms" as that language is used in the Second Amendment includes the concealed carrying of handguns: "wear, bear, or carry . . . *in the clothing or in a pocket* . . ." *Heller*, 128 S. Ct. at 2793 (citations omitted) (emphasis added); (2) the legality of bans on concealed carrying is only "presumptive," *Heller*, 128 S. Ct. at 2817 n.26, and (3) the cases supporting concealed carry prohibition explain that no abrogation of the right to carry arms is effected because open carrying is still permitted.

Legislatures might well prefer one form of carrying over another. Precedent relied upon by *Heller* reveals an ancient suspicion of weapons concealment where social norms viewed the wearing of arms as virtuous. But today, the open carrying of a handgun may be mistakenly viewed as provocative or alarming by segments of the population unfamiliar with firearms. *See* Eugene Volokh, *Implementing the Right to Keep and Bear Arms for Self-Defense: An Analytic Framework and a Research Agenda*, 56 UCLA L. Rev. 1443, 1523 (2009). Mandating that carried handguns be concealed is not unusual, and has been adopted by some jurisdictions where the public acceptance of gun rights is relatively high. For example, in Texas, where concealed handgun permits are readily available on a "shall issue" basis, Tex. Gov't Code § 411.177(a), a

12

permit holder who "intentionally fails to conceal the handgun" commits a misdemeanor. Tex. Penal Code § 46.035(a). *Heller*'s recognition of a right to carry a handgun does not compel government officials to allow the carrying of handguns in a manner they understandably perceive may cause needless public alarm, so long as a more socially-conducive option exists to allow people to exercise the right to bear arms.[2]

Thus, Plaintiffs enjoy an individual Second Amendment right to carry a handgun for purposes of self-defense. Plaintiffs make no claim for a right to carry *concealed* handguns, any more than they claim a right to carry handguns openly. The right is merely to carry handguns for self-defense, and as the precedent makes clear, either mode of carrying, open or concealed, satisfies the interest in self-defense.

Notably, the District's relevant laws here do not make any distinction between concealed and open carry. Section 7-2502.02(a)(4)'s registration limitation addresses the one permitted use of handguns – home self-defense – to the exclusion of any mode of public carry. And Section 22-4504(a)'s prohibition on the carrying of handguns without a license speaks to those carrying a handgun "either openly or concealed on or about their person." The District's law is functionally no different than those repeatedly struck down with *Heller*'s approval. It plainly effects a complete prohibition on the right to bear arms of the sort unequivocally forbidden by the Second Amendment.

---

[2]The District appears to express a preference for concealed over open carrying. *See* D.C. Code § 22-4505(b) (retired police officers may carry concealed weapons).

13

II.    THE RIGHT TO BEAR ARMS MAY NOT BE CONDITIONED UPON RESIDENCE.

    A.    <u>Defendants' Residence-Based Discrimination Violates The Right To Equal Protection</u>.

The Fifth Amendment's Due Process Clause has long been understood to bind the District of Columbia to standards of equal protection. *Bolling* v. *Sharpe*, 347 U.S. 497, 499 (1954). "Equal protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment." *Buckley* v. *Valeo*, 424 U.S. 1, 93 (1976) (citations omitted). The Equal Protection Clause "is essentially a direction that all person similarly situated should be treated alike." *City of Cleburne* v. *Cleburne Living Center*, 473 U.S. 432, 439 (1985) (citation omitted).

Strict scrutiny applies to government classifications that "impinge on personal rights protected by the Constitution." *Id.*, 473 U.S. at 440 (citations omitted). "[W]here fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized and carefully confined." *Harper* v. *Virginia Board of Elections*, 383 U.S. 663, 670 (1966).

The Supreme Court has made clear that the rational basis test "could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, *or the right to keep and bear arms*." *Heller*, 128 S. Ct. at 2818 n.27 (citing *United States* v. *Carolene Products Co.*, 304 U.S. 144, 152, n. 4 (1938)) (emphasis added). "[I]t remains certain that the federal government may not restrain the freedom to bear arms based on mere whimsy or convenience." *United States* v. *Everist*, 368 F.3d 517, 519 n.1 (5th Cir. 2004).[3] However, where a classification

---

       [3]The Fifth Circuit utilizes a version of strict scrutiny to evaluate gun laws under the Second Amendment, permitting regulations that are "limited, narrowly tailored specific

plainly fails rational basis review, the Court's analysis need go no further. *Zobel* v. *Williams*, 457 U.S. 55, 60-61 (1982). Even absent a Second Amendment right, the Ninth Circuit held that a California Sheriff's policies regarding the issuance of handgun carry permits may be restrained by the Equal Protection Clause. *Guillory* v. *County of Orange*, 731 F.2d 1379 (9th Cir. 1984).

The District's discrimination against non-residents with respect to Second Amendment rights plainly violates basic tenets of equal protection. The government has no compelling interest in depriving individuals of arms based on their lack of residence. After all, District of Columbia law knows no distinction between residents and non-residents when it comes to the exercise of self-defense. All individuals are entitled to use arms in self-defense on equal terms. Depriving some of the means of doing so makes no sense. Indeed, this distinction could not even survive rational basis review were that the appropriate test. Whatever requirements the government may prescribe for District residents in having arms can be applied equally to non-residents. Owing to the city's status as the Nation's capital, the District's population tends to be, in any event, relatively transitory. Many Americans pass through the city. Those who stay have the same Second Amendment rights as those passing through.

B. Defendants' Residence-Based Discrimination Violates the Right to Travel.

"[D]urational residence laws must be measured by a strict equal protection test: they are unconstitutional unless the State can demonstrate that such laws are necessary to promote a compelling governmental interest." *Dunn* v. *Blumstein*, 405 U.S. 330, 342 (1972) (citations and internal quotation marks omitted). Durational residency requirements have repeatedly been struck

---

exceptions or restrictions for particular cases that are reasonable and not inconsistent with the right of Americans generally to individually keep and bear their private arms as historically understood in this country." *United States* v. *Emerson*, 270 F.3d 203, 261 (5th Cir. 2001).

15

down as inconsistent with various manifestations of a right to travel. *Saenz* v. *Roe*, 526 U.S. 489 (1999); *Shapiro* v. *Thompson*, 394 U.S. 618 (1969); *Dunn*, *supra*, 405 U.S. 330. Although it is unclear whether there exists a right to intra-state travel, "the right to *interstate* travel is well established." *Hutchins* v. *District of Columbia*, 188 F.3d 531, 536 (D.C. Cir. 1999) (en banc) (emphasis original) (citations omitted).[4]

It is well-established that the right to bear arms is constitutionally enumerated makes the matter more egregious, as the exercise of one right cannot be conditioned upon waiver of another. *See, e.g. Apethaker* v. *Secretary of State*, 378 U.S. 500, 507 (1964) (right to travel cannot be conditioned on forfeiture of First Amendment right of association). Requiring District visitors to check their constitutional rights at the border improperly burdens the right to travel.

CONCLUSION

The District's complete ban on the carrying of handguns in public is plainly not constitutional. Neither is the District's complete ban on possession of handguns by non-residents.

Plaintiffs are plainly entitled to summary judgment. The Court should enjoin Defendants from barring gun registration by non-residents, enforcing the home limitations of D.C. Code § 7-2502.02(a)(4), and enforcing D.C. Code § 22-4504(a) until such time as the District of Columbia adopts a licensing mechanism consistent with constitutional standards enabling people to exercise the Second Amendment right to bear arms.

---

[4]A right of intrastate travel might be gleaned from the operation of other rights. *See, e.g. Mills* v. *District of Columbia,* 571 F.3d 1304, __ (D.C. Cir. 2009) ("[i]t cannot be gainsaid that citizens have a right to drive upon the public streets of the District of Columbia or any other city absent a constitutionally sound reason for limiting their access") (suspicionless police checkpoints violate Fourth Amendment).

Dated: August 26, 2009          Respectfully submitted,

                                      Alan Gura (D.C. Bar No. 453449)
                                      Gura & Possessky, PLLC
                                      101 N. Columbus Street, Suite 405
                                      Alexandria, VA 22314
                                      703.835.9085/Fax 703.997.7665

By:  /s/Alan Gura                 
                                      Alan Gura

                                      Attorney for Plaintiffs

17