UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOM G. PALMER, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 09-01482 (HHK) |
| ) | |
| DISTRICT OF COLUMBIA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE ISSUE

1. In *District of Columbia v. Heller*, ___ U.S. ___, 128 S. Ct. 2783 (Jun. 26, 2008) ("*Heller*"), the Supreme Court determined that the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 2821.

2. The Court ruled out "rational basis" review but otherwise declined to establish a level of scrutiny for examining firearms regulation under the Second Amendment. *Heller*, 128 S. Ct. at 2817–18 & n.27.

3. The Court stated: "Like most rights, the right secured by the Second Amendment is not unlimited [and] not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 128 S. Ct. at 2816.

4. The Court reaffirmed "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools or government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 128 S. Ct. at 2816–17 & n.26.

5. The Court acknowledged the "problem of handgun violence in this country," and that "[t]he Constitution leaves the District of Columbia a variety of tools for combating that problem . . . ." *Heller*, 128 S. Ct. at 2822.

6. After *Heller*, the Council of the District of Columbia acted to amend the District's gun laws, adopting a number of emergency and temporary measures. *See* Council of the District of Columbia, Committee on Public Safety and the Judiciary, Report on Bill 17-843, the "Firearms Control Amendment Act of 2008," November 25, 2008 ("FCAA Rep."), at 2 (*available online at* http://www.dccouncil.washington.dc.us/images/00001/20090513152155.pdf).

7. The Council found that, in *Heller*, the Supreme Court ruled that "District citizens have the right to register handguns for the purpose of self defense in their home." Council of the District of Columbia, Committee on Public Safety and the Judiciary, Report on Bill 17-593, the "Inoperable Pistol Amendment Act of 2008," November 25, 2008, at 3 ("IPAA Rep.") (*available online at* http://www.dccouncil.washington.dc.us/images/00001/20090518113852.pdf). The Committee determined that "persons should not be carrying real weapons on the street . . . ." *Id*. at 3.

8. The Council held a number of public hearings on amending the District's gun laws, "in order to receive as much public comment as possible . . . ." FCAA Rep. at 3. The Council heard from dozens of witnesses, including defendant Cathy Lanier, Chief of the MPD. FCAA Rep. at 11–12. It used such testimony to help craft "laws that reflect standard gun safety practices." FCAA Rep. at 2.

9. The IPAA was passed unanimously and signed by the Mayor on January 16, 2009. *See* 56 D.C. Reg. 1162 (Feb. 6, 2009). The IPAA was transmitted to Congress for review on or

about February 4, 2009. 155 Cong. Rec. H1040-03 (Feb. 4, 2009). After Congress did not disapprove the act, the law became effective on May 20, 2009. *See* 56 D.C. Reg. 4438 (June 12, 2009).

10. The IPAA was passed, *inter alia*, to clarify "that one may carry their own registered firearm in their home and for lawful recreational purposes in light of [*Heller*]." IPAA Rep. at 1. The IPAA also repealed District Official Code § 22-4506 (2001 ed.). "Without repeal, the provision gives the impression that ordinary people (as opposed to law enforcement personnel, the military, certain investigators, etc.) may obtain a license to carry a concealed weapon. Given the unique character of the District, such activity would be unwise." IPAA Rep. at 4.

11. The IPAA Report stated:

> The District shares the problem of gun violence with other dense, urban jurisdictions—a problem which is quite different than the experience in the rest of suburban and rural America. The District, however, has a unique distinction: as the nation's capital it hosts a large presence of government and diplomatic officials. Sadly, the District is no stranger to attacks on such officials—the assassinations for Presidents Lincoln and Garfield, attempted assassination of President Reagan, the assassination of former Chilean official Letelier, etc. Government officials and diplomats are constantly moving about the District. The threat of gun violence against them is an especial concern, and one of which we are reminded almost daily in the international news.

*Id*.

12. The IPAA "revis[ed] the requirements pertaining to the transportation of firearms to more closely parallel federal law . . . ." IPAA Rep. at 4. Persons not otherwise prohibited "shall be permitted to transport a firearm for any lawful purpose from any place where he may lawfully possess and carry the firearm to any other place where he may lawfully possess and carry the firearm . . . ." D.C. Official Code § 22-4504.02(a). If transportation is to occur by vehicle, the firearm must be unloaded, and neither the firearm nor any ammunition "shall be readily accessible or directly accessible . . . ." *Id*., § 22-4504.02(b)(1). If transportation is in a manner

other than in a vehicle, the firearm must be unloaded, inside a locked container, and separate from any ammunition. *Id.*, § 22-4504.02(c). *Cf.* Firearms Owners' Protection Act, *codified at* 18 U.S.C. § 926A *et seq*.

13. Congress, in H.R. 6691, the "Second Amendment Enforcement Act," 110th Cong., 2nd Sess. (July 31, 2008), proposed to limit the District's ability to regulate firearms. That legislation had 135 co-sponsors.

14. In testimony in opposition to H.R. 6691, defendant Lanier stated:

> [I]t would be far more difficult for MPD and Federal law enforcement agencies in the District of Columbia to ensure safety and security in the Nation's Capital.
>
> [P]rotecting government officials and infrastructure is a challenge for every city in the United States. But in Washington, DC, the likelihood of attack is higher, and the challenges to protecting the city are greater.
>
> [T]he high-profile human targets—from the Nation's top elected leaders to the more than 400 foreign dignitaries that make official visits to DC each year—are also an obvious and attractive target.
>
> [I]n addition to assisting the Secret Service with daily movements of the President and Vice President around the city, and protecting foreign dignitaries, MPD also provides security support for more than 4,000 special events annually. [I]magine how difficult it will be for law enforcement to safeguard the public, not to mention the new President at the Inaugural Parade, if carrying semi-automatic rifles were to suddenly become legal in Washington.
>
> [A]llowing [weapons] to be carried in a large number of places outside the home will make this job much more dangerous and difficult.
>
> It is clear to me and others engaged every day in securing DC against terrorism that our city is unique.

*Hearing on the Impact of Proposed Legislation on the District of Columbia's Gun Laws Before the House Comm. on Oversight & Government Reform* (Sept. 9, 2008) (Testimony of Cathy L. Lanier, Chief of Police) at 2–4 (a copy of Chief Lanier's congressional testimony is attached to the FCAA Report online).

15. The Chief noted that she was prohibited from carrying her gun into the Supreme Court to hear the arguments in *Heller*:

> The Federal Government considers the Court building to be so sensitive that, no matter who you are, you cannot wear your firearm in the building.
>
> I would argue that similar caution should apply to the District of Columbia. [T]he District of Columbia, as the seat of the Federal government, with its multitude of critical official and symbolic buildings, monuments, and events, and high-profile public officials traversing its streets every day, is a city filled with "sensitive" places. Our laws should reflect that reality.

*Id.* at 5.

16. A version of the "Second Amendment Enforcement Act" was introduced in the Senate as an amendment, S.A. 575, to Senate Bill 160. *See* 155 Cong. Rec. S2507-08, 2541 (Feb. 26, 2009). That amendment, which had 22 co-sponsors (and eventually passed by a vote of 62 to 36), stated: "Nothing in the previous two sentences shall be construed to prohibit the District of Columbia from regulating or prohibiting the carrying of firearms by a person, either concealed or openly, other than at the person's dwelling place, place of business, or on other land possessed by the person." S.A. 575, § 3, 155 Cong. Rec. S2490 (Feb. 25, 2009).

17. The Committee on Public Safety and the Judiciary noted its belief that the District's firearms laws "comply with [*Heller*], while at the same time allow[ing] the District to protect its citizens and maximize public safety with reasonable and sensible gun policy." FCAA Rep. at 10.

18. The Committee also stated:

> The Committee believes that the District must maintain a strong firearms' registration law because it is part of a sound gun policy. Registration is critical because it: gives law enforcement essential information about firearm ownership, allows officers to determine in advance whether individuals involved in a call may have firearms, facilitates the return of lost or stolen firearms to their rightful owners, assists law enforcement in determining whether registered owners are eligible to possess firearms or have fallen into a prohibited class, permits officers to charge individuals with a crime if an individual is in possession of an unregistered firearm, and permits officers to seize unregistered weapons.

*Id*. at 3–4.

19. Defendant Lanier testified that "I think that the registration process for firearms is vital and enhances public safety. It enables MPD to verify eligibility through a local background check, a process that has been found to reduce homicide rates. It also provides an opportunity to educate registrants about vital laws, responsibilities, and safety." *Hearing on the Firearms Control Amendment Act of 2008 Before the Council of the District of Columbia Committee on Public Safety & the Judiciary* (Oct. 1, 2008) (Testimony of Cathy L. Lanier, Chief of Police).

20. District law allows a person holding a valid registration for a firearm to carry the firearm "[w]ithin the registrant's home; [w]hile it is being used for lawful recreational purposes; [w]hile it is kept at the registrant's place of business; or [w]hile it is being transported for a lawful purpose as expressly authorized by District or federal statute . . . ." D.C. Official Code § 22-4504.01.

21. Seven states prohibit the grant of "carry" permits to non-residents. *See* NRA Reciprocity (Alabama, California, Hawaii, Illinois, Nebraska, New York, and Wisconsin).

22. Thirteen states do not recognize such permits from other jurisdictions. *Id.* (California, Connecticut, Hawaii, Illinois, Iowa, Maryland, Massachusetts, Nebraska, New Jersey, New York, Oregon, Rhode Island, and Wisconsin).

23. At least 15 states prohibit the open carrying of weapons in public (Connecticut, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Maryland, Massachusetts, Minnesota, New Jersey, New York, Rhode Island, South Carolina, and Texas). NRA, PRACTISING LAW INSTITUTE: MUNICIPAL LAW INSTITUTE 2009, at 207–211.

24. It has been illegal to carry "deadly or dangerous weapons" in public in the District since before the Civil War. *See* Act of Nov. 18, 1858, CORPORATION LAWS OF THE CITY OF WASHINGTON, at 114 (Robert A. Waters 1853 & 1860).

25. Legislation by Congress in 1932 repealed that law, and enacted what became D.C. Official Code § 22-4504, still in effect today. *See Cooke v. United States*, 275 F.2d 887, 888 n.1 (D.C. Cir. 1960) (discussing Act of July 8, 1932, Pub. L. No. 72-275, 47 Stat. 651). That law contained an exception for a person carrying such a weapon "in his dwelling house or place of business or on other land possessed by him . . . ." *See* House Rep. No. 767, at 1 (72nd Congress, 1st Sess., Mar. 11, 1932).

26. Congress enacted the law to "provid[e] additional safeguards and more stringent restrictions concerning the sale and possession of dangerous weapons. It was introduced at the request of the Commissioners of the District of Columbia and the need for such legislation is apparent to all citizens." House Rep. No. 767, *supra*, at 2.

DATE: September 9, 2009    PETER J. NICKLES
                           Attorney General for the District of Columbia

                           GEORGE C. VALENTINE
                           Deputy Attorney General, Civil Litigation Division

                           _____/s/ Ellen A. Efros_____
                           ELLEN A. EFROS, D.C. Bar No. 250746
                           Chief, Equity Section I
                           441 Fourth Street, N.W., 6th Floor South
                           Washington, D.C. 20001
                           Telephone: (202) 442-9886

                           _____/s/ Andrew J. Saindon_____
                           ANDREW J. SAINDON, D.C. Bar No. 456987
                           Assistant Attorney General
                           Equity Section I
                           441 Fourth Street, N.W., 6th Floor South
                           Washington, D.C. 20001

Telephone: (202) 724-6643
Facsimile: (202) 730-1470
E-mail: andy.saindon@dc.gov

-8-