IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TOM G. PALMER, et al., | ) | Case No. 09-CV-1482-HHK |
| | ) | |
| Plaintiffs, | ) | MEMORANDUM OF POINTS |
| | ) | AND AUTHORITIES IN |
| v. | ) | OPPOSITION TO DEFENDANTS' |
| | ) | MOTION FOR SUMMARY |
| DISTRICT OF COLUMBIA, et al., | ) | JUDGMENT AND REPLY TO |
| | ) | DEFENDANTS' OPPOSITION |
| Defendants. | ) | TO MOTION FOR SUMMARY |
| _____ | ) | JUDGMENT |

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REPLY TO
DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

COME NOW the Plaintiffs, Tom G. Palmer, George Lyon, Edward Raymond, Amy

McVey, and the Second Amendment Foundation, Inc., by and through undersigned counsel, and

submit their Memorandum of Points and Authorities in Opposition to Defendants' Motion for

Summary Judgment and Reply to Defendants' Opposition to Plaintiffs' Motion for Summary

Judgment.

Dated: September 23, 2009              Respectfully submitted,

                                       Alan Gura (D.C. Bar No. 453449)
                                       Gura & Possessky, PLLC
                                       101 N. Columbus Street, Suite 405
                                       Alexandria, VA 22314
                                       703.835.9085/Fax 703.997.7665

                               By:    /s/Alan Gura
                                       Alan Gura

                                       Attorney for Plaintiffs

TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................... ii

PRELIMINARY STATEMENT.................................................. 1

STATEMENT OF FACTS..................................................... 1

SUMMARY OF ARGUMENT................................................... 7

ARGUMENT.............................................................. 8

I.      PLAINTIFFS' SECOND AMENDMENT ARGUMENTS
        STAND UNREBUTTED..................................................... 8

II.     THIS CASE MAY NOT BE CERTIFIED TO THE ATTORNEY GENERAL........ 9

III.    THE DISTRICT OF COLUMBIA IS BOUND BY
        THE SECOND AMENDMENT........................................... 11

IV.     MERE "REASONABLENESS" IS NOT THE SECOND AMENDMENT
        STANDARD OF REVIEW, AND WOULD NOT, IN ANY EVENT, SAVE
        DEFENDANTS' TOTAL CARRY PROHIBITION............................ 14

V.      DEFENDANTS VIOLATE THE RIGHT TO TRAVEL BY
        CONDITIONING TRAVEL ON RELINQUISHMENT OF
        THE RIGHT TO ARMS............................................. 17

        A.      Mere Bootstrapping Cannot Save Defendants' Ban On
                Travel With Firearms................................. 17

        B.      The Right To Travel With Firearms Does Not Implicate
                The Provision Of Government Benefits................. 18

        C.      Defendants' Ban Violates The Constitutional Conditions Doctrine.......... 19

        D.      The Firearms Owners Protection Act Is Irrelevant....... 22

CONCLUSION............................................................. 23

TABLE OF AUTHORITIES

Cases

*Andrews* v. *State*, 50 Tenn. 165 (1871). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Apethaker* v. *Secretary of State*, 378 U.S. 500 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Bach* v. *Pataki*, 408 F.3d 75 (2d Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Bolling* v. *Sharpe*, 347 U.S. 497 (1954). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cooke* v. *United States*, 275 F.2d 887 (D.C. Cir. 1960). . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*District of Columbia* v. *Heller*, 128 S. Ct. 2783 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Hamilton Nat'l Bank* v. *District of Columbia*,
    176 F.2d 624 (D.C. Cir. 1949). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Hepburn* v. *Ellzey*, 6 U.S. (2 Cranch.) 445 (1805). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Holland* v. *Commonwealth*, 294 S.W.2d 83 (Ky. 1956). . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Application of McIntyre*, 552 A.2d 500 (Del. Super. 1988). . . . . . . . . . . . . . . . . . . . 3

*Kaluszka* v. *Town of E. Hartford*,
    46 Conn. Supp. 588 (Conn. Super. Ct. 1999), *aff'd*,
    60 Conn. App. 749 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kent* v. *Dulles*, 357 U.S. 116 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Keyes* v. *Madsen*, 179 F.2d 40 (D.C. Cir. 1949). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mills* v. *District of Columbia*, 571 F.3d 1304 (D.C. Cir. 2009). . . . . . . . . . . . . . . . 10, 11, 13, 19

*Muscarello* v. *United States*, 524 U.S. 125 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Nunn* v. *State*, 1 Ga. 243 (1846). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Ohioans for Concealed Carry, Inc.* v. *City of Clyde*,
    120 Ohio St. 3d 96 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*O'Donoghue* v. *United States*, 289 U.S. 516 (1933). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Palmore* v. *United States*, 411 U.S. 389 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Parker* v. *District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . 11

*People* v. *Knight*, 121 Cal. App. 4th 1568 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Pernell* v. *Southall Realty*, 416 U.S. 363 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Perry* v. *Sindermann*, 408 U.S. 593 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Saenz* v. *Roe*, 526 U.S. 489 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Simmons* v. *United States*, 390 U.S. 377 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Smith* v. *State*, 882 A.2d 762 (Del. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*State* v. *Bolin*, 378 S.C. 96 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*State* v. *Chandler*, 5 La. Ann. 489 (1850). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*State* v. *Johnson*, 16 S.C. 187 (1881). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*State* v. *Kerner*,107 S.E. 222 (N.C. 1921) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*State* v. *Reid*, 1 Ala. 612 (1840). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*State* v. *Rosenthal*, 55 A. 610 (Vt. 1903). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States* v. *Arzberger*,
    592 F. Supp. 2d 590 (S.D.N.Y. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Engstrum*,
    609 F. Supp. 2d 1227 (D. Utah 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States* v. *Jackson*, 390 U.S. 570 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-21

*United States* v. *Moreland*, 258 U.S. 433 (1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States* v. *Pritchett*, 470 F.2d 455 (D.C. Cir. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States* v. *Salerno*, 481 U.S. 739 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Zemel* v. *Rusk*, 381 U.S. 1 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Constitutional Provisions

Del. Const. art. I, § 20. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

U.S. Const. amend. II. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

U.S. Const. amend. XIV, § 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

U.S. Const. art. I, § 8, cl. 17. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

U.S. Const. art. IV, § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Wis. Const. art. I, § 25. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statutes and Rules

D.C. Code § 7-2502.01. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

D.C. Code § 7-2502.02. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13, 16

D.C. Code § 7-2507.06. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 Pa. C. S. § 6109. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 926A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

28 U.S.C. § 2403.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Act of Nov. 18, 1858, Corporation Laws
    of the City of Washington (Robert A. Waters 1853 & 1860). . . . . . . . . . . . . . . . . . . 5

Ariz. Rev. Stat. § 13-3112. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Cal. Penal Code § 12031. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Penal Code § 12050. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Colo. Rev. Stat. § 18-12-203. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

D.C. Code § 22-4506. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. P. 5.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Fla. Stat. § 790.06. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

H.R.S. § 134-9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

LCvR 7(h)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Mich. C.L. § 28.422. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Neb. LB 430 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

O. C. G. A. § 16-11-129(d)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

R. I. Gen. Laws § 11-47-18. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Rev. Code Wash. § 9.41.070. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Tex. Gov't Code § 411.177. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2


Other Authorities

51 Ops. Cal. Atty. Gen. 197 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Advisory Memorandum, Wisconsin Dept. of Justice,
    http://www.doj.state.wi.us/news/files/FinalOpenCarryMemo.pdf (April 20,2009). . . . . . 3

Alexi Mostrous, "White House Backs Right To Arms Outside
    Obama Events," *The Washington Post*, Aug. 19, 2009,
    available at http://www.washingtonpost.com/wp-dyn/
    content/article/2009/08/18/ AR2009081803416.html. . . . . . . . . . . . . . . . . . . . . . . . 13

http://www.ago.ne.gov/media/
    Recognition_of_ State_ Concealed_Handgun_Permits.pdf. . . . . . . . . . . . . . . . . . . . . 4

Michael Fletcher, "Obama Takes The Girls For Frozen Custard,"
    http://voices.washingtonpost.com/44/2009/06/20/
    obama_takes_the_girls_for_froz.html. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

"Obama and Biden Lunch at Ray's Hell Burger,"
    http://dcist.com/2009/05/obama_ and_biden_
    lunch_at_rays_hell.php. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REPLY TO
DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

PRELIMINARY STATEMENT

Defendants' cross-motion and opposition to Plaintiff's motion for summary judgment is replete with factual errors in describing the treatment of the right to bear arms. Defendants' largely non-responsive pleading also ignores the Supreme Court's controlling language defining the Second Amendment's use of "bear arms," describing the right to bear arms as fundamental, and placing the right to arms within the established paradigm for evaluating enumerated rights.

Instead of addressing controlling precedent, Defendants pretend that "bear arms" was not defined by the Supreme Court, assert that Washington, D.C. is a constitution-free zone or, at least, that the entire city (!) is a "sensitive place" in which Second Amendment rights may be generally curtailed, and assert that a complete prohibition on the right to arms is a mere regulation that can be sustained by resort to a clearly inapplicable if not rejected standard of review.

Defendants' pleading is essentially not credible. Their motion for summary judgment must be denied, and that of Plaintiffs must be granted.

STATEMENT OF FACTS

The facts relevant to this case as laid out in Plaintiffs' motion are almost entirely conceded. Although Defendants do not wish to admit that Plaintiffs intend to carry guns in public, these claims – supported by Plaintiffs' declarations – are not actually disputed. There being no evidence contradicting Plaintiffs' stated intent, or any reason to doubt that Plaintiffs are sincerely interested in publicly carrying guns, that much is conceded. LCvR 7(h)(1).

1

For their part, the Defendants offer as "facts" various claims about the legislative history of the acts in question, and their own opinions about the necessity of the law. Plaintiffs do not dispute the sincerity of Defendants' beliefs, but these are irrelevant even on the occasion where they happen to be correct. Accordingly, while the parties may vigorously dispute the need for these laws, there appear to be no factual disputes directly relevant to the motion. At the very least, the parties agree that the case is ripe for summary judgment.

Plaintiffs do take issue with the numerous, pervasive errors offered by Defendants, particularly as relating to the treatment of the right to carry arms in other states. Regardless of whether Defendants' law is constitutional, the claim that "The District's regulation of handguns at issue here is squarely in the mainstream," Def. Br. at 2, is demonstrably false. For example, Defendants claim Plaintiffs' listing of seven major cities where the right to carry a gun is respected is a "flip comment" that "should be rejected out of hand." Def. Br. at 18. Perhaps Defendants would prefer "out of hand" rejection of this claim because it holds up to examination: Atlanta, Dallas, Denver, Detroit, Philadelphia, Phoenix, Miami, and Seattle are all located in states where any law-abiding person can obtain a permit to carry a concealed handgun on a "shall issue" basis.[1]

Completely false is the statement that "the majority of Americans live in states that entirely prohibit the carrying of concealed weapons." Def. Br. at 17. This is nonsense. Only two states – Wisconsin and Illinois – entirely prohibit the carrying of concealed weapons. *All* other states license the carrying of concealed weapons, mostly on a shall-issue basis. It requires no recourse to

---

[1]Atlanta: O. C. G. A. § 16-11-129(d)(4); Dallas: Tex. Gov't Code § 411.177; Denver: Colo. Rev. Stat. § 18-12-203; Detroit: Mich. C.L. § 28.422; Philadelphia: 18 Pa. C. S. § 6109; Phoenix: Ariz. Rev. Stat. § 13-3112; Miami: Fla. Stat. § 790.06; Seattle: Rev. Code Wash. § 9.41.070.

the Census Bureau for the Court to judicially notice that the majority of Americans do not live in Wisconsin and Illinois.

The National Rifle Association brochure cited by Defendants for their interesting proposition does not support their claim. The brochure does state "that nearly half of all Americans live in states that allow a law-abiding citizen to carry a firearm concealed for personal protection," but this statement, even though misleading, does not logically force the conclusion that in all other states, carrying guns is "entirely prohibited." As the remainder of the brochure makes very clear, only Illinois and Wisconsin do not actually issue permits. The other forty-eight states are divided among those which issue permits on a "shall issue" basis, and on either a "permissive may issue" or "restrictive may issue" basis.

Even here, it must be remembered that the issue in the brochure is the carrying of *concealed* handguns, but this case concerns simply the carrying of guns, period, openly or concealed. Some of the areas where concealed carrying is "restrictive" or "entirely prohibited" actually *do* allow the open carrying of handguns. For example, Delaware, a "restrictive may issue" state, and Wisconsin, which completely outlaws concealed carrying, allow unlicensed open carrying. *See* Wis. Const. art. I, § 25; Advisory Memorandum, Wisconsin Dept. of Justice, http://www.doj.state.wi.us/news/files/FinalOpenCarryMemo.pdf (April 20,2009); Del. Const. art. I, § 20; *Smith* v. *State*, 882 A.2d 762 (Del. 2005); *In re Application of McIntyre*, 552 A.2d 500, 501 n.1 (Del. Super. 1988). In California, the issuance of permits is set by the policies of each county Sheriff, some of whom are very permissive. Cal. Penal Code § 12050.

And indeed, Defendants' claims that California entirely bans the open carrying of loaded handguns, Def. Br. at 18 n.9, is false. California allows the carrying of loaded handguns in

3

unincorporated areas. Cal. Penal Code § 12031; *People* v. *Knight*, 121 Cal. App. 4th 1568 (2004); 51 Ops. Cal. Atty. Gen. 197 (1968). Defendants also add that North Dakota, Utah, and Oklahoma prohibit the open carrying of loaded handguns. Yet all three states permit the *concealed* carrying of loaded handguns on a shall-issue basis, and Utah and North Dakota both allow the open carrying of a handgun if one has a license to carry the handgun concealed.

Defendants' reliance on the NRA brochure, which they misinterpret and which appears somewhat out of date, is no substitute for actually researching the law. It leads Defendants to make a host of additional errors. For example, Defendants list Hawaii as prohibiting the granting of permits to non-residents, Def. Br. at 18, but Hawaii's law apparently contains no such limitation. H.R.S. § 134-9. Defendants claim Nebraska does not recognize out of jurisdiction permits, but that is no longer the case. http://www.ago.ne.gov/media/Recognition_of_State_ Concealed_Handgun_Permits.pdf. And most of the states Defendants claim prohibit the open carrying of guns, Def. Br. at 18, actually permit the practice with an appropriate license.[2]

Defendants' reliance upon material compiled by the "Legal Community Against Violence" is no better. Describing Cleveland, Columbus, Hartford and Omaha as cities where the carrying of guns is generally banned does not withstand scrutiny. The Cleveland and Columbus bans are pre-empted by Ohio's shall-issue carry law. *Ohioans for Concealed Carry, Inc.* v. *City of Clyde*, 120 Ohio St. 3d 96 (2008) (holding state law preempts all localities including urban centers from limiting handgun carry rights). Omaha's ban was repealed. Neb. LB 430 (2009) (repealing power

---

[2]The only states that completely prohibit open carrying of firearms are: Arkansas, Texas, Illinois, New York, Oklahoma, Florida, and South Carolina. The other states listed by Defendants provide for carry permits that are not by law limited to concealed carry but rather allow for carrying, generally. *See, e.g.* R. I. Gen. Laws § 11-47-18.

of cities and villages in Nebraska to regulate the ownership, possession, or transportation of concealed handguns), *available at* http://nebraskalegislature.gov/FloorDocs/Current/PDF/Slip/LB430.pdf (last visited on September 18, 2009). It is doubtful that Hartford's law would survive a pre-emption challenge. *See Kaluszka* v. *Town of E. Hartford*, 46 Conn. Supp. 588 (Conn. Super. Ct. 1999), *aff'd*, 60 Conn. App.749 (2000) (striking down local hunting regulation as pre-empted).

Defendants thus prove only that advocacy group brochures are no substitute for legal research. The source of Defendants' errors concerning the legislative history of Washington, DC's regulation of the right to carry firearms is less obvious. Defendants' assertion that "[i]t has been illegal to carry 'deadly or dangerous weapons' in public in the District since before the Civil War," Def. Br. at 23, is false.

First, Defendants' quotation of the District's 1858 weapons carrying law, Act of Nov. 18, 1858, Corporation Laws of the City of Washington 114 (Robert A. Waters 1853 & 1860), is incomplete. The complete act is attached hereto as Exhibit E. Although Defendants accurately quote the first provision of the law, setting forth that "it shall not hereafter be lawful for any person or persons, to carry or have concealed about their persons" various weapons, including handguns, the word "concealed" modifies both "carry" and "have" – as made clear by the language that follows, which Defendants omit: "any person or persons who shall be duly convicted of *so* carrying or having concealed about their persons any such weapon . . ." Act of Nov. 18, 1858 (emphasis added). "So" refers to the manner of carrying: concealed. If the law banned *all* carrying, as Defendants suggest, the word "so" would be superfluous, as would be the qualification that the "having" of the weapon be "concealed."

5

Indeed, in 1892, Congress enacted a statute that was effective until 1932 proscribing the open carrying of handguns, only if carried "with intent to unlawfully use the same." *United States* v. *Pritchett*, 470 F.2d 455, 457 & n.4 (D.C. Cir. 1972) (summarizing the statutory history of the weapons laws of the District of Columbia). Defendants casually note this qualification on the prohibition of open carrying in the District, Def. Br. at 23, which defeats their claim that the carrying of handguns has been completely barred since the Civil War.

Yet Defendants err again in describing the 1932 law, suggesting that a complete ban was enacted by repealing the element "that the weapon be carried with intent to use it illegally." *Id.* (citing *Cooke* v. *United States*, 275 F.2d 887, 888 n.1 (D.C. Cir. 1960)). It is footnote 3, not 1, of *Cooke*, which contains the legislative history, and this history also mentions: "In 1943 the statute was amended to prohibit the carrying of an unlicensed pistol openly as well as concealed. 57 Stat. 586." *Cooke*, 275 F.2d at 889 n.3.

What Defendants fail to mention is that the 1932 law did not merely repeal the element that the open carrying of guns be criminalized if accompanied by criminal *mens rea*. The 1932 law omitted all mention of any proscription against the open carrying of arms. Exh. F. It was only with the 1943 law that a license became required to carry a gun openly. Exh. G.

Accordingly, the history of laws regulating the carrying of handguns in Washington, D.C. is as follows: In 1858, Congress banned the concealed carrying of guns but left open carrying unregulated. In 1892, Congress continued the ban on concealed carrying, and added that open carrying was permitted so long as the individual not harbor unlawful intent. In 1932, Congress created a licensing mechanism for concealed carrying in the District, which in 1943 was extended to the open carrying of handguns. None of this is remarkable.

It was not until December 16, 2008 that the District implemented a *de jure* ban on the carrying of handguns by repealing the police chief's licensing authority – following the lead of exactly one state.

Other errors in Defendants' brief worth pointing out are discussed in turn below. Suffice it to say that the inappropriate tone of Defendants' brief (*e.g.*, "flip comment," Def. Br. at 18; "flimsy showing," Def. Br. at 7; "nonsensical rhetoric," Def. Br. at 9; "[a]lthough plaintiffs may not like it, all citizens are subject to one or more 'restrictions' on their Second Amendment rights," Def. Br. at 17) is especially not warranted given Defendants' lack of care in reciting basic facts about the state of the law.[3]

There is, however, no dispute about how the challenged provision operates today, nor can there be any dispute about this much: Defendants' complete prohibition on the carrying of arms by law abiding citizens is a radical and extreme departure from the norms prevalent in this country. Not surprisingly, it is also unconstitutional.

## SUMMARY OF ARGUMENT

Plaintiffs' basic arguments about the Second Amendment securing a right to carry a handgun in public for self-defense are entirely ignored and unrebutted. Defendants prefer to discuss just about anything other than the law that controls this case – but the controlling law is unambiguous and defeats the entirety of Defendants' position nonetheless.

---

[3]What Plaintiffs do not "like" is a complete prohibition on the exercise of a fundamental constitutional right. The insinuation that Plaintiffs are some sort of anarchists, or have an "absolutist" view of the Second Amendment, Def. Br. at 20 n.11, is inappropriate, especially considering the motion for summary judgment amply concedes there is a role for government to play in the regulation of firearms.

Seeking to delay the inevitable, Defendants complain that the case should be certified to the Attorney General for review. However, as Defendants should know, the D.C. Code is not generally within the purview of the certification provision.

The claim that the District of Columbia is somehow not subject to the Second Amendment because it is the seat of government is absurd. This claim was presented to the Supreme Court recently as some length, and correctly ignored.

Defendants' arguments about "reasonableness" review were emphatically rejected by the Supreme Court. Finally, Defendants' treatment of the right to travel is no more accurate than their treatment of the Second Amendment right to arms.

ARGUMENT

I.    PLAINTIFFS' SECOND AMENDMENT ARGUMENTS STAND UNREBUTTED.

Plaintiffs' motion relies largely on the Supreme Court's binding opinion in *District of Columbia* v. *Heller*, 128 S. Ct. 2783 (2008) – a case with which Defendants are familiar.

In response, Defendants largely offer the law of Illinois, the only state in the union that entirely bans the public carrying of guns. And without any sense of irony, they also assert that "the District's gun regulations should not be based on a 'lowest common denominator' analysis." Def. Br. at 7. Defendants also spend a great deal of energy discussing the laws of Wisconsin, the only other state that completely bans the concealed carrying of guns, although Defendants fail to mention that Wisconsin permits the unlicensed *open* carrying of guns, an outcome that would satisfy Plaintiffs' prayer for relief in this case.[4]

_____

[4] Although Plaintiffs stressed this point in the Complaint and in their moving papers, perhaps it still bears repetition: this is not a "concealed carry" case. It is a case about carrying, period. If Defendants really wish to imitate Wisconsin's approach to this issue, they can consent

But as for *Heller,* Defendants are merely dismissive. "Plaintiffs provide no controlling or persuasive authority for their conclusion that the right to bear arms universally encompasses the right to carry handguns in public." Def. Br. at 7.

> Plaintiffs' invocation of various snippets of language from *Heller*—that "the right to keep and carry arms" authorizes the public carrying of weapons—is not supported by that decision, or any other controlling decision. Plaintiffs rely almost exclusively on legal treatises or inapposite, outdated decisions from other jurisdictions.

Def. Mot. at 2.

Actually, those "snippets of language from *Heller*" are controlling precedent, defining the right to bear arms as the right to "carry" guns, and the supposedly "inapposite, outdated decisions from other jurisdictions" are cases relied upon by the Supreme Court in *Heller,* as recently as last year, to reach that conclusion.

Defendants are not being asked to approve of *Heller* – only to obey its requirements. If Defendants wish to continue ignoring "snippets of *Heller,*" it is this Court's role to compel their full and exacting adherence to the requirements of that decision.

II.    THIS CASE MAY NOT BE CERTIFIED TO THE ATTORNEY GENERAL.

Defendants claim that Plaintiffs have failed to comply with Fed. R. Civ. P. 5.1, requiring notice to the Attorney General of cases questioning the constitutionality of "federal statute[s]" where "the parties do not include the United States, one of its agencies, or one of its officers or employees in an official capacity." Similarly, Defendants claim that the case must be certified by the Court pursuant to 28 U.S.C. § 2403, per Fed. R. Civ. P. 5.1.

---

to such a judgment and allow unlicensed open carrying.

9

Section 2403 and its counterpart, Rule 5.1, are designed to allow notice to governments whose laws are being questioned to intervene if they wish to do so, if they are not parties to the case.[5] However, the District of Columbia and its police chief are the relevant federal agencies in this action and they are parties to the lawsuit. Indeed, the District of Columbia contributed to the creation of this dispute by repealing former D.C. Code § 22-4506, allowing for the issuance of gun carry permits.

Defendants are represented by the Attorney General for the District of Columbia and should not be strangers to the established procedure. The D.C. Circuit has long held that the certification requirement of 28 U.S.C. § 2403 "would not be operative [where] the statute in question applies only in the District of Columbia and concerns a matter of mere local interest." *Keyes* v. *Madsen*, 179 F.2d 40, 43 (D.C. Cir. 1949) (*citing Hamilton Nat'l Bank* v. *District of Columbia*, 176 F.2d 624, 630 n.3 (D.C. Cir. 1949)).

Notably, no Rule 5.1/Section 2403 certification to the Attorney General was ever made in *Heller*. Notwithstanding the lack of certification, neither the D.C. Circuit nor the Supreme Court had trouble striking down the District's unconstitutional gun laws at issue in that case. More recently, the District's unconstitutional "Neighborhood Safety Zone" system of checkpoints was all-but struck down by the D.C. Circuit. *Mills* v. *District of Columbia*, 571 F.3d 1304 (D.C. Cir. 2009). This, too, was done without the benefit of Attorney General certification.

Attorney General certification would add nothing to this litigation but a period of delay. It contravenes over half a century of this Court's established practice in dealing with the

---

[5]The requirements apply with equal force to notifying state attorney generals of actions not involving state agencies or officers where the constitutionality of a state's law is implicated.

10

constitutionality, or lack thereof, of D.C. Code provisions. Nothing prevents Defendants' counsel from seeking the assistance of the Department of Justice if he wishes to do so, but the D.C. Circuit has held it is not for this Court to make that suggestion.

III.    THE DISTRICT OF COLUMBIA IS BOUND BY THE SECOND AMENDMENT.

"That the Constitution is in effect . . . in the District has been so often determined in the affirmative that it is no longer an open question." *O'Donoghue* v. *United States*, 289 U.S. 516, 541 (1933). "[T]he Supreme Court has unambiguously held that the Constitution and Bill of Rights are in effect in the District." *Parker* v. *District of Columbia*, 478 F.3d 370, 395 (D.C. Cir. 2007), *aff'd sub nom District of Columbia* v. *Heller*, 128 S. Ct. 2783 (2008); *accord Mills* v. *District of Columbia*, supra, 571 F.3d 1304.

Washington was not planned as a "Forbidden City" in which federal officials would be sequestered from the otherwise-free people of the United States. Quite the contrary:

> It is important to bear constantly in mind that the District was made up of portions of two of the original states of the Union, and was not taken out of the Union by the cession. Prior thereto its inhabitants were entitled to all the rights, guaranties, and immunities of the Constitution . . . . [I]t is not reasonable to assume that the cession stripped them of these rights . . . .

*O'Donoghue*, 289 U.S. at 540.

Defendants' legislative power is not above the Constitution, but derived from it; a delegation of Congress's authority under U.S. Const. art. I, § 8, cl. 17. That power "is plenary; but it does not . . . authorize a denial to the inhabitants of any constitutional guaranty not plainly inapplicable." *O'Donoghue*, 289 U.S. at 539. "If, before the District was set off, Congress had passed an unconstitutional act, affecting its inhabitants, it would have been void. If done after the District was created, it would have been equally void." *Id.,* at 541 (citation omitted).

Accordingly, Congress can exercise general police powers within the District, "so long as it does not contravene any provision of the Constitution of the United States." *Palmore* v. *United States*, 411 U.S. 389, 397 (1973) (citation omitted). For example, Congress may operate public schools in the District of Columbia, a power otherwise reserved to the states. But such schools cannot be segregated. *Bolling* v. *Sharpe*, 347 U.S. 497 (1954).

Indeed, because the Constitution with its Bill of Rights applies directly to the federal government, of which the city is a creature, Defendants are bound to respect even those rights that are not incorporated as against the states through the Fourteenth Amendment. *See Pernell* v. *Southall Realty*, 416 U.S. 363 (1974) (Seventh Amendment right to civil jury trial); *United States* v. *Moreland*, 258 U.S. 433 (1922) (Fifth Amendment right to grand jury indictment). Even were the Second Amendment not incorporated as against the states, a dubious proposition, *see Heller*, 128 S. Ct. at 2813 n.23, the fact remains that the District of Columbia is not a state. *Hepburn* v. *Ellzey*, 6 U.S. (2 Cranch.) 445 (1805).

Notwithstanding these very obvious points, Defendants persist in offering frivolous arguments that they are not bound by the Second Amendment, either because the entire city is a Constitution-free "sensitive place," or because in the modern era, the Fourteenth Amendment has not yet been held by the Supreme Court to incorporate the Second Amendment against the states.

The "sensitive place" doctrine refers to discreet areas where the government has taken upon itself the task of increasing the immediate level of security, such as the sterile area of an airport. It does not refer to urban areas generally, as the overwhelming majority of Americans live in urban areas. This does not mean that the overwhelming majority of Americans do not enjoy fundamental civil liberties, and that the exception swallows the entire rule. An enclosed forum at

12

which the President is appearing may be a sensitive place from which guns are banished, but it is also generally true that persons entering such forums consent to searches and surveillance that would be unconstitutional in public. *See Mills*, supra.

Not that this is relevant to the legal analysis, but the President is in agreement. Presidents have always traveled throughout the forty-nine states that permit the carrying of arms, including the forty-one states that regularly issue permits to carry concealed handguns and the numerous states where no permit at all is required to carry firearms openly. Predictably, this has brought the President into proximity with individuals exercising their Second Amendment rights, some of whom are vociferously opposed to his various policies. Yet as White House Press Secretary Robert Gibbs offered, "There are laws that govern firearms that are done state or locally. Those laws don't change when the president comes to your state or locality." Alexi Mostrous, "White House Backs Right To Arms Outside Obama Events," *The Washington Post*, Aug. 19, 2009, available at http://www.washingtonpost.com/wp-dyn/content/article/2009/08/18/AR2009081803416.html.

Indeed, the President enjoys frequenting localities where people may freely carry guns. Virginia, for example, maintains a "shall issue" licensing regime for concealed handguns, and does not require a license to carry handguns openly. That has not stopped the President from crossing the Potomac to enjoy frozen custard with his children in Alexandria,[6] or to eat hamburgers with the Vice President in Arlington.[7] Presumably, the Secret Service takes appropriate precautions

---

[6]Michael Fletcher, "Obama Takes The Girls For Frozen Custard," http://voices.washingtonpost.com/44/2009/06/20/obama_takes_the_girls_for_froz.html

[7]"Obama and Biden Lunch at Ray's Hell Burger," http://dcist.com/2009/05/obama_and_biden_lunch_at_rays_hell.php

13

whenever the President and Vice President venture out into the public, without trampling on the fundamental rights of entire populations of major American cities numbering half a million or more people. Considering the difference in the rate of violent crime between Washington, D.C. and its adjacent Virginia jurisdictions, the President is doubtless safer each time he leaves Washington for Virginia. In any event, as John Wilkes Booth and John Hinckley, Jr., proved, deranged and/or politically motivated individuals who would make an attempt on the President's life are unlikely to be deterred by the District's laws restricting their ability to carry weapons.

IV.    MERE "REASONABLENESS" IS NOT THE SECOND AMENDMENT STANDARD OF REVIEW, AND WOULD NOT, IN ANY EVENT, SAVE DEFENDANTS' TOTAL CARRY PROHIBITION.

Acknowledging that *Heller* specifically rejected rational basis review for Second Amendment questions, Defendants nonetheless claim that any law that is merely "reasonable," as they see it, is constitutional. This standard is claimed to be drawn from various state high court decisions weighing regulations on the right to arms as contained in state constitutions, and under it, claim Defendants, a complete ban on the carrying of guns is reasonable.

Defendants err on several levels. Whatever the standard of review might be for reviewing regulation on the right to carry guns, a complete prohibition of the right to carry is not a regulation, and would not withstand any level of review. The cases discussed in Plaintiffs' motion make this clear. So does *Heller*, which rejected the District's complete prohibition on the keeping of handguns and functional arms, not under any standard of review, but as a prohibition on the core exercise of the right itself. This case will turn out no differently.[8]

─────────────────

[8]For the same reason, Defendants' reliance on *United States* v. *Salerno*, 481 U.S. 739 (1987), is excessive. *Salerno* does not sanction the total, across-the-board prohibition of any right, even though some individuals – e.g., inmates sentenced to death – may be deprived of the

There is little point repeating what was offered in Plaintiffs' moving papers. *Heller* rejected rational basis review, and explicitly placed the Second Amendment within the familiar *Carolene Products* paradigm reserving higher levels of review for enumerated rights. *Heller*, 128 S. Ct. at 2818 n.27; *United States v. Engstrum*, 609 F. Supp. 2d 1227, 1232 (D. Utah 2009) (applying strict scrutiny to uphold federal law forbidding firearms possession by persons convicted of crimes of domestic violence); *accord United States* v. *Arzberger*, 592 F. Supp. 2d 590, 603 (S.D.N.Y. 2008). Defendants' citation to various pre-*Heller* collective rights decisions holding that the Second Amendment does not secure a fundamental right is frivolous – those cases have all been overruled by *Heller*, which observed that "[b]y the time of the founding, the right to have arms had become fundamental for English subjects," *Heller*, 128 S. Ct. at 2798 (citations omitted), and that the Second Amendment "codified [this] right inherited from our English ancestors." *Id.*, at 2802 (citation omitted)

Moreover, even if the standard of review for Second Amendment claims were mere "reasonableness," and even if a complete prohibition of the right to carry were viewed only as a form of regulation, the fact remains that a complete ban on carrying guns exists in only one of the fifty states. *Heller* discussed, with approval, no fewer than *four* state Supreme Court cases holding the Second Amendment or analogous state constitutional provisions secure the right to carry arms: *Andrews* v. *State*, 50 Tenn. 165 (1871) (striking down carrying ban); *State* v. *Chandler*, 5 La. Ann. 489 (1850) (Second Amendment protects right to carry); *Nunn* v. *State*, 1

---

right to life itself. *Heller* acknowledged that felons and the mentally ill may be deprived of firearms, yet also had no trouble striking down the District's gun bans though felons and the mentally ill are among the District's residents. In any event, there is no dispute that each of the individual Plaintiffs here have had the ban on carrying gun applied to them personally.

Ga. 243 (1846) (state ban on openly carrying firearms violates Second Amendment); *State* v. *Reid*, 1 Ala. 612 (1840) (striking down carrying ban); *see also State* v. *Rosenthal*, 55 A. 610 (Vt. 1903) (state constitution precludes general ban on carrying handguns openly or concealed); *State* v. *Kerner*, 107 S.E. 222 (N.C. 1921) (requirement to obtain permit to carry handguns openly violates state constitution); *Holland* v. *Commonwealth*, 294 S.W.2d 83, 86 (Ky. 1956) ("The constitutional provision is an affirmation of the faith that all men have the inherent right to arm themselves for the defense of themselves and of the state. The only limitation concerns the mode of carrying such instruments").

Typical of Defendants' casual approach to the law is their misplaced – and misleading – reliance on *State* v. *Johnson*, 16 S.C. 187 (1881), for the proposition that "protection of the public peace—is mirrored in state gun laws prohibiting the carrying of weapons." Def. Br. at 21. Defendants breezily follow with citation to an Illinois case, Illinois being the only state completely banning the carrying of arms. Yet in *Johnson*, the South Carolina Supreme Court *reversed* a conviction for the concealed carrying of arms, notwithstanding the language Defendants quote out of context.

Johnson appealed his conviction because the trial judge refused to instruct the jury that it had to find Johnson's gun was ordinarily concealed from view to convict him. The court agreed:

> to constitute the offense charged it is necessary to show not only that the defendant carried about his person a weapon of the kind mentioned in the statute, but such weapon must be "concealed about his person." Hence, we think that the Circuit judge erred in declining, or, at least, omitting to charge as requested . . . the defendant had a right to have the jury explicitly instructed upon this point, as the fact of carrying a weapon *concealed* about the person constitutes the gist of the offense, inasmuch as merely carrying the weapon constitutes no violation of the statute, unless it is concealed about the person.

16

*Johnson*, 16 S.C. at 189.

Even in the passage quoted by Defendants, the regulation on the right to carry is only appropriate "as far as may be consistent with the right of the citizen to bear arms." *Johnson*, 16 S.C. at 191 – not exactly a ringing endorsement for denying the existence of this right, as Defendants do. This is not to suggest that South Carolina is no model for Defendants; it is. Today, South Carolina welcomes concealed carry by license holders from many states, issues concealed carry permits on a "shall issue" basis, and requires no license to carry loaded guns in vehicles. The state's ban on the possession of handguns by adults aged 18-20 was recently struck down as violating its constitution. *State* v. *Bolin*, 378 S.C. 96 (2008).

## V.    DEFENDANTS VIOLATE THE RIGHT TO TRAVEL BY CONDITIONING TRAVEL ON RELINQUISHMENT OF THE RIGHT TO ARMS.

### A.    Mere Bootstrapping Cannot Save Defendants' Ban On Travel With Firearms.

Defendants' claim that "[t]he District is not alone in prohibiting the registration of firearms by non-residents, and declining to issue 'carry' licenses, or recognize such licenses from other jurisdictions," Def. Br. at 17, is misleading. Exactly one state – New York – facially discriminates entirely between residents and non-residents when it comes to carrying arms in public. All other states, except for Illinois, the only state completely banning the carrying of guns, either: (1) recognize at least some out-of-state carry permits, (2) allow for the issuance of carry permits to non-residents, or (3) allow unlicensed open carrying.

Predictably, Defendants rely on the Second Circuit's upholding of New York's discriminatory practice in *Bach* v. *Pataki*, 408 F.3d 75 (2d Cir. 2005), but that pre-*Heller* case relied largely on the refusal to hold the Second Amendment incorporated as against New York.

Times have changed, and in any event, Defendants are bound by the Second Amendment.

Apart from the incorporation hurdle, *Bach*'s circular reasoning is also unpersuasive: the state takes it upon itself to require procedures that it cannot easily satisfy in order to issue a license, therefore, people are not entitled to a license because the state's self-imposed burden is excessive. Extending *Bach* to the limits of its logic, anyone – state resident or not – may be denied the right to arms (or, indeed, any right, privilege, or benefit) if he or she has traveled or engaged in conduct the state cannot easily research.

Whatever the initial value of such logic, with respect to arms, it does not survive *Heller*.

B.    The Right To Travel With Firearms Does Not Implicate
      The Provision Of Government Benefits.

Defendants make a basic error in describing the right to travel, conceiving of it only in terms of an entitlement to some government benefit, and then offering some precedents that allow governments to offer greater benefits and/or services to their own residents than to visitors. These cases are, of course, completely irrelevant. Neither the simple act of traveling, nor the carrying of arms, is a government benefit that may be rationed to residents.

Contrary to Defendants' assertion, the right to travel may be based on more than the Privileges and Immunities Clauses of Art. IV, § 2 and the Fourteenth Amendment. Def. Br. at 29. "The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment." *Kent* v. *Dulles*, 357 U.S. 116, 125 (1958).

> Travel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values.

*Kent*, 357 U.S. at 126 (citations omitted).

Yet even if the right to travel were based solely on the Privileges or Immunities Clauses, Defendants cannot seriously suggest there is no right to visit the Nation's capital without the intent to settle here, such that the right to travel can only be analyzed as securing the right to receive some government benefit. As Defendants recently learned, "[i]t cannot be gainsaid that citizens have a right to drive upon the public streets of the District of Columbia or any other city absent a constitutionally sound reason for limiting their access." *Mills*, 571 F.3d at 1312.

C.     Defendants' Ban Violates The Constitutional Conditions Doctrine.

Although Defendants complain that Plaintiffs' discussion of the issue is brief, Defendants do not actually respond to Plaintiffs' argument: there is a right to travel, there is a right to arms, and one may not be conditioned upon forfeiture of the other.

An elementary principle of constitutional law forbids the government from imposing conditions upon the exercise of rights, or receipt of benefits, that it could not impose directly. The unconstitutional conditions doctrine is sufficiently broad so as to forbid the government from demanding people forfeit rights in exchange for benefits, even where there is no entitlement to the benefit in the first instance. *See, e.g. Perry* v. *Sindermann*, 408 U.S. 593 (1972) (public employment cannot be conditioned on forfeiture of First Amendment rights); *Saenz* v. *Roe*, 526 U.S. 489 (1999) (welfare benefits cannot be conditioned on forfeiture of interstate travel right).

The unconstitutional conditions doctrine is so broad that it forbids government from merely discouraging, even inadvertently, the exercise of core constitutional rights. In *United States* v. *Jackson*, 390 U.S. 570 (1968), the Supreme Court held unconstitutional a provision which directed that a defendant could only be sentenced to death upon a jury's recommendation. The provision's effect discouraged defendants from exercising their Fifth Amendment right to

19

enter a not guilty plea, and their Sixth Amendment right to trial by jury. A defendant who insisted

upon either right did so at the additional risk of hanging, a condition that would tend to encourage

coercive guilty pleas and forfeiture of the jury trial right. That the statute had a benign

ameliorative goal rather than a punitive one made no difference:

> Whatever might be said of Congress' objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights. The question is not whether the chilling effect is 'incidental' rather than intentional; the question is whether that effect is unnecessary and therefore excessive.

*Jackson*, 390 U.S. at 582 (citations omitted).

Perhaps nowhere is the unconstitutional conditions doctrine more clearly implicated than

in those situations where the government encourages individuals to choose from among their

constitutional rights. Where an individual ordinarily enjoys two constitutional rights, the

government cannot demand that the exercise of one right be conditioned upon the discouragement

or forfeiture of the other. People are entitled to *all* of their constitutional rights, and may freely

exercise them in any combination as they see fit.

An excellent example of such an unconstitutional condition is described in *Simmons* v.

*United States*, 390 U.S. 377 (1968). In *Simmons*, the Supreme Court held that a criminal

defendant who wishes to assert Fourth Amendment rights in challenging the admissibility of

evidence cannot be expected to do so at the risk that such potentially self-incriminating testimony

might be used against him later at trial.

> Garrett was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another.

*Simmons*, 390 U.S. at 394.

20

An even more relevant example of an unconstitutional condition between two constitutional rights is provided by the case previously relied upon by Plaintiffs, *Apethaker* v. *Secretary of State*, 378 U.S. 500 (1964), which Defendants ignore entirely. In striking down that portion of the Subversive Activities Control Act forbidding international travel on account of one's association with communist organizations, the Supreme Court specifically rejected the argument that plaintiffs had voluntarily forfeited their right to travel by choosing to exercise their right of free association:

> The restrictive effect of the legislation cannot be gainsaid by emphasizing, as the Government seems to do, that a member of a [communist] organization could recapture his freedom to travel by simply in good faith abandoning his membership in the organization. Since freedom of association is itself guaranteed in the First Amendment, restrictions imposed upon the right to travel cannot be dismissed by asserting that the right to travel could be fully exercised if the individual would first yield up his membership in a given association.

*Apethaker*, 378 U.S. at 507 (footnote omitted); *compare Zemel* v. *Rusk*, 381 U.S. 1, 16 (1965) (ban on travel to Cuba, for legitimate national security reasons, does not violate First Amendment where "appellant is not being forced to choose between membership in an organization and freedom to travel."); *accord Jackson*, 390 U.S. at 583 ("A procedure need not be inherently coercive in order that it be held to impose an impermissible burden upon the assertion of a constitutional right.").

*Apethaker* is directly on-point as applied to the facts of this case. The Plaintiffs cannot, without more, have their right to travel to the District conditioned upon abandonment of their Second Amendment rights. Conversely, the Plaintiffs cannot, without more, have their Second Amendment right to bear arms conditioned upon forfeiting their right of travel  The condition itself is unconstitutional, unless each infringement on the right to travel and the right to keep and

bear arms is itself justified under the high levels of scrutiny by which restrictions on such rights are to be scrutinized – and they are not.

D.    The Firearms Owners Protection Act Is Irrelevant.

Although Defendants correctly state that "the reasons for [Plaintiffs'] omission" of any discussion of the Firearm Owners Protection Act ("FOPA"), 18 U.S.C. § 926A, "are not hard to guess," Def. Br. at 33 – Defendants nonetheless fail to guess those reasons. Defendants do come close, pointing out what Plaintiffs have expressly alleged: that Plaintiff Raymond was not in compliance with FOPA when he was arrested. Yet Defendants somehow fail to recall the basic allegation that Raymond was well-within his constitutional right to bear arms.

Putting these two pieces of information together – Raymond exercised his right to arms, but was not in compliance with FOPA –  Defendants should have guessed that it is Plaintiffs' position that FOPA is irrelevant to the constitutional question. Indeed, it is.

FOPA immunizes travelers from local gun laws so long as the firearm is unloaded and inaccessible. The District has some recent experience with the constitutionality of such requirements when applied to individuals entitled to exercise Second Amendment rights: "This makes it impossible for citizens to use them for the core lawful purpose of self-defense and is hence unconstitutional." *Heller*, 128 S. Ct. at 2818.

Raymond enjoys the right to "wear, bear, or carry" his gun "upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *Heller*, 128 S. Ct. at 2793 (quoting *Muscarello* v. *United States*, 524 U.S. 125, 143 (1998) (Ginsburg, J., dissenting)). He could hardly exercise that right were his gun unloaded and locked securely in the trunk of his car. "Compliance with

22

FOPA" does not "give[] plaintiffs all the protections they are entitled to in travels to and through the District." Def. Br. at 33. But the Second Amendment does.

CONCLUSION

The Supreme Court has clearly held that there is a right to bear arms in non-sensitive places. Defendants complain that "the logistical and administrative difficulties in defining and enforcing such a system would be monumental," Def. Br. at 27, and thus claim that they should simply be permitted to dispense with the people's right.

If District officials cannot govern this city while respecting basic constitutional rights, they are in the wrong line of work. Defendants do not have the option of ignoring those portions of the Bill of Rights they find burdensome. Though they are free to do so within constitutional limitations, there is no requirement that Defendants regulate the right to arms similar to the requirement that they respect the right.

It is the Court's duty to compel Defendants' adherence to the basic law of this country. Defendants' motion for summary judgment, seeking to be excused from a constitutional mandate, must be rejected. Plaintiffs' motion for summary judgment, which asks only that a basic right not be entirely violated, should be granted.

Dated: September 23, 2009          Respectfully submitted,

                                   Alan Gura (D.C. Bar No. 453449)
                                   Gura & Possessky, PLLC
                                   101 N. Columbus Street, Suite 405
                                   Alexandria, VA 22314
                                   703.835.9085/Fax 703.997.7665

                            By:  /s/Alan Gura_____
                                   Alan Gura