UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TOM G. PALMER, *et al.* | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 09-01482 (HHK) |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| Defendants. | ) | |

DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT

Defendants (collectively, "the District"), by and through undersigned counsel, hereby briefly reply to plaintiffs' Opposition to Defendants' Motion for Summary Judgment, in accordance with LCvR 7(d).

Plaintiffs assert that the District's filing was "replete with factual errors" and ignored the "controlling language" of *Heller v. District of Columbia*, ___ U.S. ___, 128 S. Ct. 2783 (Jun. 26, 2008). The undersigned apologizes and takes full responsibility for any confusion arising from the use of outdated or incorrect materials from advocacy organizations.[1] But even if the scope of

---

[1] Plaintiffs challenge the statement that "the majority of Americans live in states that entirely prohibit the carrying of concealed weapons." D.Mem. at 17 (citing "Guide to Right-to-Carry Reciprocity and Recognition," at 1, National Rifle Association of America, Institute for Legislative Action (Apr. 2009) ("NRA Right-to-Carry") (available online at *http://www.nraila.org/recmap/Recguide.pdf*)). The relevant portion of the NRA document reads: "[N]early half of all Americans live in states that allow a law-abiding citizen to carry a firearm concealed for personal protection . . . ." NRA Right-to-Carry, at 1. The undersigned inferred that the converse of that statement was also true, *i.e.*, that over half of all Americans live in states that *do not* allow a law-abiding citizen to carry a firearm concealed for personal protection.

In any event, as plaintiffs acknowledge, seven states "completely prohibit open carrying of firearms . . . ." P.Opp. at 4 n.2. Those states make up four of the five most populous states in the country, amounting to over a quarter of the population. *See* Table GCT-T1-R, "American FactFinder," U.S. Census Bureau (available online at http://factfinder.census.gov/

reasonable gun regulations as described by the District was incorrect in some of the particulars, plaintiffs would still not prevail. Plaintiffs have failed to demonstrate that the District's firearms regulations are a "radical and extreme departure from the norms prevalent in this country." P.Opp. at 7. "Reasonableness" acknowledges a *range* of permissible regulation. Plaintiffs' absolutist view finds no support in *Heller*, the Constitution, or case law.

*Plaintiffs Failed to Meet Their Burden.*

The District agrees with plaintiffs that there are "no factual disputes directly relevant to the motion" and that this matter is ripe for summary judgment. P.Opp. at 2. There are no material facts at issue here, and plaintiffs have not identified any, hence summary judgment is appropriate for the District. Plaintiffs failed to meet their burden—to "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial." *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(e)). *See also Doe v. Gates*, 981 F.2d 1316, 1323 (D.C. Cir. 1993) (on summary judgment, non-movant, having the burden at trial, must respond with a showing of "affirmative evidence.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).[2]

---

servlet/GCTSubjectShowTablesServlet?_lang=en&_ts=272285496699) (showing an estimated U.S. population, as of July 1, 2008, of 304,059,724). Adding in the population of Wisconsin (along with Illinois, the only states to entirely prohibit the carrying of concealed weapons) brings the figure of such "restrictive" states to over 30% of the U.S. population. Thus, while the District may not be in the majority, it is within the mainstream, and in good company. If the Second Amendment, or similar state constitutional provisions, were interpreted as broadly as plaintiffs argue, these prohibitions would have been invalidated long ago.

[2] Plaintiffs also argue that the District's reliance on *United States v. Salerno*, 481 U.S. 739 (1987) is "excessive." P.Opp. at n.8. Notwithstanding the opacity of the argument, *Salerno* controls here. *See, e.g., Babbitt v. Sweet Home Chapter of Communities for a Great*

Plaintiffs argue that the District's quotation of its 1858 law was "incomplete," P.Opp. at 5, and imply (but do not explicitly state) that that law banned only the carrying of concealed weapons, not the open carrying of weapons, in that the word "so" refers only the manner of carrying, *i.e.*, concealed. *Id*. Plaintiffs present no support for this argument, and the District could find none. The 1858 Act made it unlawful for persons "to carry or have concealed" various weapons, and imposed fines for anyone "duly convicted of so carrying or having concealed . . . ." Act of Nov. 18, 1858. The District avers that if the law intended only to prohibit concealed weapons, the use of "or" in the two quoted clauses would be unnecessary.

Plaintiffs also incorrectly argue that this matter "may not be certified to the Attorney General[,]" P.Opp. at 9, citing two 60-year-old cases. The District avers that more recent case law suggest otherwise. Similarly, plaintiffs claim that such certification "would add nothing to this litigation but a period of delay." *Id*. at 10.

Plaintiff argues that 28 U.S.C. § 2403 is not "operative" because the statute in question applies only in the District of Columbia and "concerns a matter of mere local interest." *Id*. (quoting *Keyes v. Madsen*, 179 F.2d 40, 43 (D.C. Cir. 1949) (citing *Hamilton Nat'l Bank v. District of Columbia*, 176 F.2d 624, 630 n.3 (D.C. Cir. 1949)).

Preliminarily, the District points out that the United States Attorney prosecutes the crime of "carrying a pistol without a license," not the District itself. D.C. Official Code § 23-101(c)

---

*Oregon*, 515 U.S. 687, 699–700 (1995) (a party can demonstrate that a statute is facially invalid *only* by showing that it is unconstitutional in all of its applications). The laws at issue here have a "plainly legitimate sweep," *Washington State Grange v. Washington State Republican Party*, ___ U.S. ___, 128 S. Ct. 1184, 1190 (Mar. 18, 2008), and plaintiffs have not shown otherwise, hence their facial challenge should be rejected. *See also id*. at 1195 (a facial challenge fails where "at least some" constitutional applications exist) (quoting *Schall v. Martin*, 467 U.S. 253, 264 (1984)); *Nebraska v. EPA*, 331 F.3d 995, 998 (D.C. Cir. 2003) (rejecting facial constitutional challenge to statute; plaintiffs "fall well short of satisfying that considerable burden.") (citing and quoting *Salerno*).

(2001 ed.). *See, e.g.*, *Sims v. United States*, 963 A.2d 147 (D.C. 2008). Consequently, the views of the United States would be of prime importance as to the regulation of firearms in the nation's capital and seat of the federal government, even ignoring *Heller*.

Moreover, the fact that the statutes disputed here apply only in the District of Columbia is insufficient, alone, to preclude the Court from certifying the claim to the United States. *See Turner v. District of Columbia Bd. of Elections & Ethics*, 354 F.3d 890, 893 (D.C. Cir. 2004) (United States intervened in challenge to amendment to D.C. Appropriations Act which prohibited use of appropriated funds to conduct ballot initiative regarding the legalization or reduction of penalties associated with a controlled substance); *Calloway v. District of Columbia*, 216 F.3d 1, 5 (D.C. Cir. 2000) (United States intervened in challenge to section of D.C. Appropriations Act which limited fees the District may pay prevailing parties in suits pursuant to the Individuals with Disabilities Education Act). Both *Turner* and *Calloway* involved legislation that applied only in (and to) the District of Columbia, and concerned only matters of mere local interest.[3]

Plaintiffs also appear to argue that the President "is in agreement" with the right to "freely carry guns," P.Opp. at 13, because he regularly travels to places that have fewer restrictions than the District. But plaintiffs' citation of a statement from the President's press secretary makes the District's argument for it: "There are laws that govern firearms that are done state or locally. Those laws don't change when the president comes to your state or locality." *Id*. (quoting Robert Gibbs in Alexi Mostrous, "White House Backs Right to Arms Outside Obama Events," THE WASHINGTON POST, Aug. 19, 2009). That proclamation is federalism in a

---

[3] Notwithstanding this, even if certification were not required, the Court surely has the discretionary authority to ask for the views of the United States.

nutshell—the right of localities to decide on their own the best methods to protect public health and safety.

The Supreme Court long ago recognized that certain decisions are best left to local legislatures. In *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), a citizen had challenged the state's compulsory smallpox vaccinations, offering testimony from his own medical experts, who would testify that such vaccinations had "little or no value" in preventing the spread of the disease, and would, in fact, cause other diseases. *Id*. at 30. The Supreme Court affirmed the rejection of the offer. *Id*. at 31 ("It is no part of the function of a court or a jury to determine which one of two modes was likely to be the most effective for the protection of the public against disease. That was for the legislative department to determine in the light of all the information it had or could obtain"). Moreover, the court indicated that the state was not required to prove that the statute would be effective, and acknowledged the importance of allowing states to learn from other jurisdictions' efforts.

> Nearly every state in the Union has statutes to encourage, or directly or indirectly to require, vaccination; and this is true of most nations of Europe . . . . A common belief, like common knowledge, does not require evidence to establish its existence, but may be acted upon without proof by the legislature and the courts . . . . The fact that the belief is not universal is not controlling, for there is scarcely any belief that is accepted by everyone. The possibility that the belief may be wrong, and that science may yet show it to be wrong, is not conclusive; for the legislature has the right to pass laws which, according to the common belief of the people, are adapted to prevent the spread of contagious diseases. In a free country, where the government is by the people, through their chosen representatives, practical legislation admits of no other standard of action, for what the people believe is for the common welfare must be accepted as tending to promote the common welfare, whether it does in fact or not. Any other basis would conflict with the spirit of the Constitution, and would sanction measures opposed to a Republican form of government.

*Id*. at 35 (quoting *Viemester v. White*, 72 N.E. 97 (N.Y. 1904)).

*The Right Identified in* Heller *is Not Fundamental.*

Plaintiffs continue to misread *Heller v. District of Columbia*, ___ U.S. ___, 128 S. Ct. 2783 (Jun. 26, 2008). The Supreme Court did not hold that the Second Amendment right identified there is fundamental. While the Court used the word "fundamental" three times in its decision, it did not use it in its conclusion or holding. The relevant portion of that opinion (on the standard of review) makes clear that the Court was declining to decide such issues. *Id*. at 2817–18. *See also United States v. Moore*, 2009 WL 1033363, * 3 (W.D.N.C. Apr. 17, 2009) ("the *Heller* Court did not explicitly declare this right to be fundamental."); *United States v. Miller*, 604 F.Supp.2d 1162, 1170 (W.D. Tenn. Feb. 26, 2009) (same); *United States v. Radencich*, 2009 WL 127648, * 4 (N.D.Ind. Jan. 20, 2009) (same); *United States v. Schultz*, 2009 WL 35225, * 5 (N.D. Ind. Jan. 5, 2009) (same).

For all their sloganeering, plaintiffs barely discuss *Heller*. Plaintiffs insist that *Heller* held that the "right to bear arms" encompasses the right to carry guns in public. P.Opp. at 9. Plaintiffs' arguments expand that decision's holding well beyond its boundaries. The focus of *Heller* was not about "bearing" at all, let alone about public carrying; it would likely come as a surprise to the Justices involved if they had unwittingly decided this controversial issue, and it could be expected that the dissenters at least would have commented on it. To the extent *Heller* even implicated "bearing," it was only to note that a complete prohibition on bearing would be unconstitutional. But there is no such complete ban here, as the District allows the bearing of weapons in the home, which *Heller* found to be the "core" of the right. *Heller* recognized limitations on the right, and the argument that public "carrying" must be allowed is inconsistent with the spirit—if not the letter—of those recognized limitations.

The Supreme Court explicitly noted that its decision in *Heller* was not meant to reveal everything the Second Amendment *allowed*, 128 S.Ct. at 2816, but only decided the single issue before the Court—the District's prohibition which "totally bans handgun possession in the home." *Id.*, 2817. If that decision had, in fact, determined that the Second Amendment broadly authorizes persons to carry guns in public, the District avers that some authority—in the 15 months since the decision—would have noted that fact.

*The District's Firearms Laws are Reasonable.*

The overwhelming weight of local and federal case law mandates that "reasonableness review" be applied here, and plaintiffs have failed to demonstrate otherwise. Plaintiffs equivocate, arguing that "[w]hatever the standard of review might be," P.Opp. at 14, the regulation at issue here does not withstand it.

Plaintiffs make no attempt to distinguish the Circuit's finding in *Parker v. District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007), citing that decision only once. "The protections of the Second Amendment are subject to the same sort of *reasonable restrictions* that have been recognized as limiting, for instance, the First Amendment." *Id.* at 399 (emphasis added) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). "Reasonableness" has been the standard in federal and local decisions for decades.[4] Nothing in *Heller* changed this analysis. Indeed, the *Heller* Court made clear it was not deciding the standard of review.

---

[4] *See, e.g., Walter v. Ohio*, 15 Ohio Dec. 464, 1905 WL 789 (Ohio Com. Pl. 1905) ("the right to keep and bear arms is to be enjoyed subject to such reasonable regulations and limitations as may be imposed by the law of the land."); *State v. Shelby*, 2 S.E. 468, 469 (Mo. 1886) ("right to bear arms" is subject to "reasonable regulation").

Reasonableness review properly allows legislatures to act when the evident bases for the legislation are reasonable. This is not the same as rational-basis review, in which a court need not even consider why a legislature acted. A legislature's reasons for acting can be discovered in explicit findings, but also from context and the substance of the legislation itself.

> In determining the legislative purpose of a law or government practice, courts generally look to the text of a statute or rule, legislative history, administrative interpretations, testimony of parties who participated in the enactment or implementation of the challenged law or practice, historical context, and the sequence of events leading to the passage of the law or the initiation of the practice.

*Bonham v. District of Columbia Library Admin.*, 989 F.2d 1242, 1244–45 (D.C. Cir. 1993) (citing *Edwards v. Aguillard*, 482 U.S. 578, 594–95 (1987)). *See also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540 (1993) ("Relevant evidence includes, among other things, the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body.") (citations omitted).

Here, there can be no question that the Council plainly acted to limit gun violence while respecting the core right recognized in *Heller*.[5] Plaintiffs concede that "there is a role for government to play in the regulation of firearms." P.Opp. at 7. But plaintiffs never explain what they consider to be the proper scope of that role. Plaintiffs' concession is no more than an acknowledgement that restrictions on Second-Amendment rights are a matter of *degree*, not kind. *Cf. Capitol Sq. Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 780 (1995) (O'Connor, J., concurring) ("reasonable person" in tort law is "a personification of a community ideal of

reasonable behavior, determined by the [collective] social judgment.") (alteration in original) (citation omitted).

"Reasonableness" inevitably results in a spectrum of permissible regulation. Plaintiffs imply that, because only one state has "a complete ban on carrying guns," P.Opp. at 15, the District's prohibitions here are unreasonable. But the fact that one other jurisdiction has the *same* "restrictions" as the District saves the regulation under reasonableness review. One jurisdiction necessarily has to be at *each* end of that range of permissible regulation, *i.e.*, "most restrictive" or "most permissive." Even if plaintiffs had been able to prove that the District stood alone at the end of the spectrum, there is ample evidence in the legislative record (and the public record) to support the *sui generis* nature of the District of Columbia as the nation's capital, all of which reinforces the reasonableness of the "restrictions" challenged here. Again, such policy decisions belong to the elected branches of government and not the courts. *See Gonzalez v. Carhart*, 550 U.S. 124, 163–64 (2007) (legislature should receive deference in absence of expert consensus); *Richmond v. J.A. Croson Co.*, 488 U.S. 469, 544 (1989) ("Local officials, by virtue of their proximity to, and their expertise with, local affairs, are exceptionally well qualified to make determinations of public good 'within their respective spheres of authority.'") (quoting *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 244 (1984)).

The District does not argue that a legislature's assertion that a gun regulation is reasonable is conclusive. The question is what the core right is; the handgun prohibition in *Heller* plainly infringed on that core right, the regulations at issue here do not.

---

[5] *See* Council of the District of Columbia, Committee on Public Safety and the Judiciary, Report on Bill 17-593, the "Inoperable Pistol Amendment Act of 2008," November 25, 2008, at 1, 4.

At bottom, discussion of "core rights" is another method of analyzing "reasonableness," *i.e.*, there is a range of permissible approaches that may be valid, so long as "they do not impair the core conduct upon which the right was premised." *Parke*, 478 F.3d at 399. In any event, the right defined by plaintiffs cannot be broader than that already found by the Supreme Court, "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 128 S. Ct. at 2821. The District's law challenged here fully allows the exercise of this right.

*Sensitive Places*

Plaintiffs feign surprise that the District would invoke the "sensitive places" language in *Heller*, and contend that it cannot be extended District-wide, but their argument is little more than semantics. Moreover, they purposefully and erroneously suggest that be invoking the "sensitive places" doctrine, the District is attempting to argue its way around being bound by the Second Amendment. This is not the case; the District does not argue that the Second Amendment is not applicable to it and recognizes, according to currently binding law, it must allow handguns in homes. This fact, however, does not preclude the District's arguments regarding where carrying will be allowed, or prevent use of "sensitive places" in resolving that issue. Indeed, if Illinois, constituting 57,914 square miles, can prohibit carrying weapons outside the home, open or concealed, is it really that hard to imagine the 68-square-mile nation's capital as being "sensitive" in this context?[6]

Many jurisdictions have restrictions on the carrying of firearms in numerous places, such as police stations, sheriff's offices, or state correctional institutions; school safety zones;

---

[6] *See* U.S. Dep't of the Interior, "Profile of the People and Land of the United States" (available online at http://nationalatlas.gov/articles/mapping/a_general.html).

courthouses; in licensed premises "where liquor is being dispensed"; in colleges or universities; in churches, synagogues, or mosques (unless those institutions permit otherwise); day-care centers; aircraft; "any building owned by this state or any political subdivision of this state;" or any place where federal law prohibits the carrying of concealed handguns. *Ohioans for Concealed Carry, Inc. v. City of Clyde*, 896 N.E.2d 967, 969 (Ohio 2008).[7] *See also, e.g., Walter*, 15 Ohio Dec. at 466 (discussing prohibitions on carrying weapons "either concealed or unconcealed, into a court of justice, or into a church, or into a voting place or within a mile thereof").

In a case decided after *Heller*, a court rejected a Second-Amendment challenge to a federal regulation prohibiting the carrying of weapons on U.S. Postal Service property "without official purpose." *United States v. Dorosan*, 2008 WL 2622996 (E.D. La. 2008) (upholding 39 C.F.R. § 232.1(1)). The court compared the challenged regulation to others that have been "routinely upheld" by the Fifth Circuit "that are designed to promote workplace and public safety on government property." *Id*. at * 5 (citing *United States v. Gliatta*, 580 F.2d 156 (5th Cir. 1978)). The court specifically invoked *Heller*'s "sensitive places" discussion, holding that the challenged regulation was permissible because it did not infringe on the core right announced in *Heller*. "Congress has the authority to regulate safety of the post office and its property, notwithstanding the individual right to bear arms in the home, 'where the need for defense of self, family and property is most acute.'" *Dorosan*, *supra*, at * 6 (quoting *Heller*, 128 S. Ct. at 2817).

---

[7] The Ohio law also allows private employers and landowners "to prohibit gun possession on their property as they deem fit." *Id*. (citing OHIO REV. CODE §§ 2923.126(C)(1), (C)(3)).

The manifold cases supporting restrictions on firearms in "sensitive places" have a common theme—the locations involved implicate issues of public safety and welfare that do not, by definition, exist in the home. The rights of the public generally must be considered in light of the individual right to bear arms. "The danger does not necessarily arise from any evil intent on the part of the person possessing the firearm." *State v. Lake*, 918 P.2d 380, 382 (N.M. Ct. App. 1996) (state law prohibiting the carrying of firearms in establishments licensed to serve alcohol did not infringe upon right to bear arms) (quoting *State v. Powell*, 848 P.2d 1115, 1118 (N.M. Ct. App. 1996)).

"It requires no leap of logic to deduce that keeping dangerous weapons out of a public park directly reduces the possibility of armed conflict as well as accidents therein and substantially advances the safety of all who go there." *City of Tucson v. Rineer*, 971 P.2d 207, 213 (Ariz. Ct. App. 1998) (applying reasonableness test). "The benefit to public safety by reducing the possibility of armed conflict while under the influence of alcohol outweighs the general right to bear arms in defense of self and state." *Second Amendment Found. v. Renton*, 668 P.2d 596, 586–87 (Wash. Ct. App. 1983) (ordinance prohibiting the carrying of weapons on any premises "where alcoholic beverages are dispensed by the drink" did not violate "unambiguous" right in state constitution to bear arms).[8]

Similarly, it requires no leap of logic to apply the "sensitive places" language of *Heller* District-wide, given the unique nature of this "federal enclave."[9]

---

[8] The court in *Renton* applied the "reasonableness" test, defining it to require "that the regulation be reasonably necessary to protect the public safety, health, morals and general welfare and be substantially related to the legitimate ends sought." *Id.* at 586 (citations omitted).

[9] *See Hearing on the Impact of Proposed Legislation on the District of Columbia's Gun Laws Before the House Comm. on Oversight & Government Reform* (Sept. 9, 2008) (Testimony of Cathy L. Lanier, Chief of Police) at 5 ("[T]he District of Columbia, as the seat of

*The District Regulation of Firearms Does Not Violate Any Right to Travel.*

Plaintiffs do not successfully distinguish the cases cited by the District, preferring instead to knock down a straw man of their own construction. First, given that plaintiffs' right to travel argument presupposes that there is a Second Amendment right to carry weapons in public, it fails for all the reasons discussed previously.

Plaintiffs, again, assert that, aside from Illinois, only one state (New York) "facially discriminates" between residents and non-residents regarding the carrying of guns. P.Opp. at 17. But the very idea of "reasonableness" is founded on the idea of collective judgment, which will vary depending on local context and other factors. If two other states do what plaintiffs assert is impermissible here, and those "restrictions" have never been invalidated, the District's regulation must surely be considered reasonable.

Plaintiffs cannot seriously contend that they are being "forced to choose" here between the Second Amendment right enunciated in *Heller* and the right to travel. The "core" right is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 128 S. Ct. at 2821. All the plaintiffs can freely exercise that right.

Plaintiffs also assert that the Firearm Owners Protection Act, 18 U.S.C. § 926A ("FOPA"), is "irrelevant," P.Opp. at 22, but plaintiffs' interpretation of the Second Amendment would manifestly conflict with that law's provisions, which require guns to be transported unloaded and inaccessible. *Id*. Consequently, the Court could certify this matter to the U.S. Attorney General pursuant to 28 U.S.C. § 2403 on that basis alone.

---

the Federal government, with its multitude of critical official and symbolic buildings, monuments, and events, and high-profile public officials traversing its streets every day, is a city filled with 'sensitive' places. Our laws should reflect that reality.").

Moreover, if the right to bear arms was as unqualified as plaintiffs argue, there would have been no need to enact FOPA in the first place.

*Conclusion*

Plaintiffs speak of their rights under the Second Amendment in absolute terms, as if their unlimited exercise of those rights would have no impact on others. Such a proposition does not find support in the Constitution, case law, or common sense.

> [T]he possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community. Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's own will. It is only freedom from restraint under conditions essential to be equal enjoyment of the same right by others. It is then liberty regulated by law.

*Crowley v. Christensen*, 137 U.S. 86, 89–90 (1890).


DATE: October 6, 2009                    Respectfully submitted,

                                         PETER J. NICKLES
                                         Attorney General for the District of Columbia

                                         GEORGE C. VALENTINE
                                         Deputy Attorney General, Civil Litigation Division

                                              /s/ Ellen A. Efros
                                         ELLEN A. EFROS, D.C. Bar No. 250746
                                         Chief, Equity Section I
                                         441 Fourth Street, N.W., 6th Floor South
                                         Washington, D.C. 20001
                                         Telephone: (202) 442-9886

                                              /s/ Andrew J. Saindon
                                         ANDREW J. SAINDON, D.C. Bar No. 456987
                                         Assistant Attorney General
                                         Equity I Section
                                         441 Fourth Street, N.W., 6th Floor South
                                         Washington, D.C. 20001

        Telephone: (202) 724-6643
        Facsimile: (202) 730-1470
        andy.saindon@dc.gov