# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD PERUTA,<br><br>　　　　　　　　　　　Plaintiff,<br>　vs.<br><br>COUNTY OF SAN DIEGO; and WILLIAM D. GORE, individually and in his capacity as sheriff,<br><br>　　　　　　　　　　　Defendants. | CASE NO. 09-CV-2371 - IEG (BLM)<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS<br><br>[Doc. No. 3] |

    This is a Section 1983 action, challenging the constitutionality of California's law governing the carrying of concealed weapons, both facially and as applied to Plaintiff. Currently before the Court is Defendant William Gore's ("Gore") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Having considered the parties' arguments, and for the reasons set forth below, the Court DENIES the motion.

## BACKGROUND

    Plaintiff is a sixty year old United States citizen and a California resident, who "maintains several residences across the United States, including but not limited to a residence in San Diego County." (Compl. ¶ 17.) According to Plaintiff, he maintains a permanent mailing address in San Diego, "where he and his wife have a room in which they keep a wardrobe and other personal items." (Id.) Plaintiff and his wife have made their motor home their "permanent residence," and allegedly stay in San Diego for extended periods of time. (Id. ¶ 18.) For example, Plaintiff claims to have

1 reserved space at Campland on the Bay, in San Diego, from November 15, 2008 through April 15, 2009. He had also reserved spaces at the same place from February 2007 through April 2007. Plaintiff is a founder, and sole stockholder, of American News and Information Services, Inc., which gathers and provides raw, breaking news video, photographs, and news tips to various mainstream media outlets. According to Plaintiff, both his work and his lifestyle choice often require him to travel to high crime areas as well as remote rural areas, sometimes carrying large sums of cash, valuables, and equipment.

By way of background, Plaintiff is a certified National Rifles Association ("N.R.A.") instructor with the authority to train and certify individuals in the N.R.A. Basic Pistol Safety Course. Plaintiff has a valid pistol permit issued by the State of Connecticut, and is recognized by the Department of Public Safety to teach the pistol course required to obtain a Connecticut Pistol Permit. In 1969, Plaintiff was assigned as a marine small arms instructor (rifle and pistol) at the U.S. Naval Academy. In 1970, Plaintiff successfully completed the Connecticut Municipal Training Course. From 1969 to 1971, Plaintiff was a law enforcement officer in the State of Connecticut.

The present case arises from Plaintiff's attempts to obtain a concealed weapon's permit in San Diego County. Plaintiff alleges that he obtained and provided to the San Diego County Sheriff the required 8 Hour Firearms Safety and Proficiency Certificate in accordance with California Penal Code § 12050(E)(i). He also alleges that the Firearms Licensing and Permits Unit of the State of California Department of Justice found him eligible to possess firearms. On November 17, 2008, Plaintiff requested a license to carry a concealed weapon from the San Diego County Sheriff's License Division ("SD License Division"), at which time he was interviewed by a licensing supervisor to determine whether he satisfied the licensing criteria. On February 3, 2009, Plaintiff submitted an application for a license to carry a concealed weapon. Plaintiff alleges he was denied a license to carry a concealed weapon by Defendant Gore's predecessor because the SD License Division made a finding that Plaintiff did not have good cause and was not a resident of San Diego–both of which are requirements under Section 12050.

Plaintiff filed his complaint on October 9, 2009, alleging three causes of action. First, Plaintiff argues Section 12050's requirements of (1) "good cause" beyond the interests of self-defense and (2)

durational "residency" violate the Second and Fourteenth Amendments to the U.S. Constitution. Second, Plaintiff alleges that Defendants' subjective application of the "good cause" and "residency" requirements results in an unequal treatment of similarly situated individuals, and therefore violates the Eighth Amendment of the U.S. Constitution. Finally, Plaintiff argues the requirement that individuals reside full time in San Diego County before they can apply for a concealed weapon's permit violates Plaintiff's right to travel under the Fourteenth Amendment to the U.S. Constitution.

On November 12, 2009, Defendant Gore filed the current Motion to Dismiss. [Doc. No. 3]. Plaintiff filed a response on December 7, 2009, and Defendant Gore filed a reply on December 14, 2009. [Doc. Nos. 4, 5]. On December 17, 2009, having determined that the Court can proceed without oral argument, the Court vacated the hearing set for December 21, 2009. [Doc. No. 6].

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. A complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under a cognizable legal claim." SmileCare Dental Group v. Delta Dental Plan of California, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009) (citation omitted).

Despite the deference, the court need not accept "legal conclusions" as true. Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949-50 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S.Ct. at 1950.

**DISCUSSION**

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Supreme

Court's landmark decision in District of Columbia v. Heller, --- U.S. ---, 128 S. Ct. 2783 (2008), resolved some of the hotly debated issues with regard to the Second Amendment, but left many others lingering for future determination. In Heller, after an exhaustive analysis of the text of the Amendment and the founding-era sources of its original public meaning, the Supreme Court stated unequivocally that the Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation." 128 S. Ct. at 2797. However, like most rights, "the right secured by the Second Amendment is not unlimited." Id. at 2816. Thus, the Supreme Court also made it clear that "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. For example, the Supreme Court noted that:

> the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Id. at 2816-17 (internal citations omitted). In a footnote immediately following, the Supreme Court explained: "We identify these presumptively lawful regulatory measures only as example; our list does not purport to be exhaustive." Id. at 2817 n.26.

In Heller, having concluded that the Second Amendment protects an individual right to "keep and bear arms," and noting that "the inherent right of self-defense has been central to the Second Amendment right," the Supreme Court turned to the challenged law before it.[1] Id. at 2817-18. Without deciding what level of scrutiny should be applied (except stating that it would have to be more than "rational basis"), the Supreme Court concluded that the District of Columbia's "absolute prohibition of handguns held and used for self-defense in the home" clearly violated the Second Amendment. Id. at 2817-22.[2]

---

[1] The Supreme Court characterized the challenged law as follows: "the law totally bans handgun possession in the home. It also requires that any lawful firearm in the home be disassembled or bound by a trigger lock at all times, rendering it inoperable." Heller, 128 S. Ct. at 2817.

[2] Because Heller involved a challenge to a District of Columbia statute, the Supreme Court there did not have to decide whether the Second Amendment also applied to the states. See id. at 2812-13. No party has raised this issue in the present case either. Accordingly, because it appears that both

## I. Right to Bear Arms

### A. Parties' arguments

Plaintiff's first cause of action alleges that Section 12050's requirements of (1) "good cause" beyond the interests of self-defense and (2) durational residency violate the Second and Fourteenth Amendments.[3] Defendant moves to dismiss this cause of action, arguing that the Supreme Court in Heller, 128 S. Ct. 2816-17, expressly stated that the right secured by the Second Amendment is not unlimited, and that it certainly does not prohibit states from regulating the carrying of concealed weapons. Defendant argues that, unlike possession of a gun for protection within a residence–which

---

parties agree that the Second Amendment applies in this case, the Court will proceed on that assumption, without deciding the issue at this time. The Court does note, however, that it is aware of the pre-Heller Ninth Circuit case law on this issue, as well as the post-Heller trend. Compare Fresno Rifle & Pistol Club, Inc., 965 F.2d 723, 731 (9th Cir. 1992) (concluding that until such time as United States v. Cruikshank, 92 U.S. 542 (1876), and Presser v. Illinois, 116 U.S. 252 (1886), are overturned, "the Second Amendment limits only federal action") with Nordyke v. King, 563 F.3d 439, 457 (9th Cir. 2009), reh'g en banc granted, 575 F.3d 890 (concluding that "the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment and applies it against the states and local governments"). It should also be noted that after rehearing Nordyke en banc, the Ninth Circuit vacated its submission of the case pending the Supreme Court's disposition of Maloney v. Rice, 08-1592; McDonald v. City of Chicago, No. 08-1521; and N.R.A. v. City of Chicago, No. 08-1497.

[3] Section 12050(a)(1) provides, in pertinent part:

(A) The sheriff of a county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying satisfies any one of the conditions specified in subparagraph (D) and has completed a course of training as described in subparagraph (E), may issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person in either one of the following formats:

>    (i) A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

>    (ii) Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

. . . .

(D) For the purpose of subparagraph (A), the applicant shall satisfy any one of the following:

>    (i) Is a resident of the county or a city within the county.

>    (ii) Spends a substantial period of time in the applicant's principal place of employment or business in the county or a city within the county.

was the issue in <u>Heller</u>–carrying a concealed firearm presents a recognized "'threat to public order.'" (Def. MTD, at 3 (quoting <u>People v. Hale</u>, 43 Cal. App. 3d 353, 356 (1974).)[4]

Plaintiff agrees that the constitutional right to "keep and bear arms" is not unlimited, and therefore concedes that some regulations are permissible under the Second Amendment. However, also relying on <u>Heller</u>, Plaintiff argues that at the center of the Second Amendment is an individual right "to possess and carry weapons in case of confrontation, self-defense, or other traditionally lawful purposes, unconnected with service in a militia." (Pl. Opp., at 3.) Thus, to be armed and ready in case of confrontation, Plaintiff argues the Second Amendment requires that a person be allowed to carry a weapon "that is immediately capable of being used for its intended purpose." (<u>Id.</u> at 4.) According to Plaintiff, by imposing the "good cause" requirement, Section 12050 violates the Second Amendment. In the alternative, Plaintiff argues the application of Section 12050's "good cause" and "residency" requirements violates the Second Amendment because law abiding citizens who desire to carry concealed firearms solely for self-defense purposes and/or those that are not full-time residents of San Diego County are deemed by the sheriff not to satisfy the statute's requirements.

B.   Analysis

The Supreme Court's decision in <u>Heller</u> made it clear–for the first time–that the Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation." 128 S. Ct. at 2797. It also made clear that this right is not unlimited. <u>Id.</u> at 2816-17. Accordingly, while <u>Heller</u> does not preclude Second Amendment challenges to laws regulating firearm possession outside of home, "<u>Heller</u>'s *dicta* makes pellucidly clear that the Supreme Court's holding should not

---

[4] In addition, Defendant argues there is no constitutionally protected interest in a concealed weapon's permit because, in light of the extremely broad discretion delegated to the sheriff under Section 12050, there is no legitimate claim of entitlement to such a permit. (Def. Reply, at 2.) However, because Defendant raised this issue for the first time in the reply, Plaintiff had no opportunity to respond and the Court has not received the benefit of full briefing. Accordingly, the Court will not consider this in deciding the Motion to Dismiss. See <u>Sogeti USA LLC v. Scariano</u>, 606 F. Supp. 2d 1080, 1086 (D. Ariz. 2009) ("The Court will not grant a motion to dismiss on the basis of argument first raised in a reply."(citing <u>U.S. ex rel. Giles v. Sardie</u>, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000))); <u>see also</u> <u>Sanchez v. City of Santa Ana</u>, 915 F.2d 424, 430 (9th Cir. 1990) ("As a general rule, an appellant may not raise an argument for the first time in a reply brief." (citation omitted)). In any event, the cases relied on by Defendant for the proposition that there is no protected interest in a concealed weapon's permit all predate <u>Heller</u>, which held–for the first time–that the Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation." 128 S. Ct. at 2797. The validity of those cases post-<u>Heller</u> is not clear.

be read by lower courts as an invitation to invalidate the existing universe of public weapons regulations." United States v. Masciandaro, 648 F. Supp. 2d 779, 788 (E.D. Va. 2009).

In the present case, Plaintiff's complaint challenges constitutionality of Section 12050's requirements of "good cause" and "residency" as they relate to his ability to obtain a concealed weapon's permit. This precise issue was not directly addressed by the Supreme Court in Heller, which involved a challenge to District of Columbia's prohibition on the possession of a loaded firearm *in the home*. 128 S. Ct. at 2817-22. Thus, the Court must determine whether Section 12050's application to Plaintiff's request for a permit withstands the appropriate level of constitutional scrutiny.[5]

### *1. Presumptive constitutionality of concealed weapon bans*

As a threshold matter, the Court rejects Defendant's contention that the Supreme Court in Heller *held* that prohibitions on carrying of concealed weapons are presumptively constitutional. First, because this precise question was not before the Supreme Court, any pronouncements to that effect would generally be considered *dicta*, even if persuasive.[6] Moreover, the Supreme Court in Heller expressly stated that it was leaving the determination of the scope of "permissible" Second Amendment restrictions for a later time. Id. at 2816-18, 2821 ("[T]here will be time enough to expound upon the historical justifications for the exceptions we have mentioned if and when those exceptions come before us.").

---

[5] The level of scrutiny is necessary to determine whether the application of Section 12050 violates the Second Amendment as applied through the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment, which appears to be implicated by Plaintiff's first cause of action, provides that "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. The Equal Protection Clause of the Fourteenth Amendment, which is the basis for Plaintiff's second cause of action, provides that: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." Id. These two provisions of the Constitution both stem from the "American ideal of fairness" and are "not mutually exclusive." Bolling v. Sharpe, 347 U.S. 497, 499 (1954). However, depending on the circumstances, these clauses serve slightly different purposes. As one court has explained, "Substantive Due Process generally provides a constitutional safeguard against arbitrary laws to all citizens, but Equal Protection[] ensures that a certain class, which might be as small as a single individual, will not be treated differently under the law from people similarly situated." United States v. Miller, 604 F. Supp. 2d 1162, 1168 n.7 (W.D. Tenn. 2009).

[6] "Dictum," the singular form of "dicta," is a remark "by the way" and is a shortened version of "obiter dictum," which is a Latin phrase often translated as "something said in passing." BLACK'S LAW DICTIONARY 519, 1177 (9th ed. 2009). *Black's Law Dictionary* defines "obiter dictum" as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." Id. at 1177.

Finally, a closer examination of the cases and authorities relied upon by the Supreme Court suggests that it did not intend to make *all* concealed weapon bans presumptively constitutional. The Supreme Court's entire pronouncement on the validity of concealed weapon bans was:

> Like most rights, the right secured by the Second Amendment is not unlimited. . . . . For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. See, e.g., State v. Chandler, [5 La. Ann. 489, 489-90 (1850)]; Nunn v. State,[1 Ga. 243, 251 (1846)]; see generally [2 J. KENT, COMMENTARIES ON AMERICAN LAW *340, n. 2 (O. Holmes ed., 12th ed. 1873)]; THE AMERICAN STUDENTS' BLACKSTONE 84, n. 11 (G. Chase ed. 1884).

Id. at 2816. Both Chandler and Nunn, the two cases relied upon by the Supreme Court, concerned prohibitions on carrying of concealed weapons where the affected individuals had alternate ways to exercise their Second Amendment rights–by *openly* carrying those weapons. See Chandler, 5 La. Ann. at 489-90 (noting that the law against carrying of concealed weapons was "absolutely necessary" and that "[i]t interfered with no man's right to carry arms . . . 'in full view,' which places men upon an equality"); Nunn, 1 Ga. at 251 ("We are of the opinion, then, that so far as the act of 1837 seeks to suppress the practice of carrying certain weapons *secretly*, that it is valid, inasmuch as it does not deprive the citizen of his *natural* right of self-defence, or of his constitutional right to keep and bear arms. But that so much of it, as contains a prohibition against bearing arms *openly*, is in conflict with the Constitution, and *void* . . . ." (emphases in original)). The applicability of these cases is questionable where, as here, the State expressly *prohibits* individuals such as Plaintiff from openly carrying a loaded firearm in public places. See CAL. PENAL CODE § 12031(a)(1).[7]

---

[7] Section 12031(a)(1) provides:

> A person is guilty of carrying a loaded firearm when he or she carries a loaded firearm on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area of unincorporated territory.

Although this statute contains a number of exceptions, see People v. Flores, 169 Cal. App. 4th 568, 576 (2008), its overall effect cannot be compared to the *unrestricted* right to carry weapons openly as recognized in both Chandler and Nunn. Accordingly, in the present case, the issue is best addressed by determining whether Section 12050's requirements, and their application, meet the appropriate level of constitutional scrutiny, rather than by a categorical approach advocated by Defendant. But see United States v. Hall, No. 2:08-00006, 2008 WL 3097558, at *1 (S.D. W. Va. Aug. 4, 2008) ("The court concludes that the prohibition, as in West Virginia, on the carrying of a concealed weapon without a permit, continues to be a lawful exercise by the state of its regulatory authority notwithstanding the Second Amendment.").

The other authorities cited by the Supreme Court further undermine Defendant's position. Thus, in *Commentaries on American Law*, James Kent states that "[t]here has been a great difference of opinion on the question" of whether a prohibition on carrying of concealed weapons was constitutional. 2 KENT, *supra*, at *340 n.(b). Likewise, in *The American Students' Blackstone*, George Chase first notes that "it is generally held that statutes prohibiting the carrying of *concealed* weapons are not in conflict with [the Second Amendment], since they merely prohibit the carrying of arms in a particular manner." THE AMERICAN STUDENTS' BLACKSTONE, *supra*, at 84, n.11. However, he immediately points out that "[i]n some states . . . a contrary doctrine is maintained." Id. These pronouncements are directly at odds with Defendant's contention that Heller expressed constitutional approval for *all* concealed weapon bans. (See Def. MTD, at 3-4.)

Finally, Defendant's reliance on Hall, 2008 WL 3097558, is misplaced. In that case, the district court for the Southern District of West Virginia denied the defendant's second motion to suppress made after the Supreme Court's decision in Heller. Hall, 2008 WL 3097558, at *2. In reaffirming its prior ruling, the court noted that "the prohibition, as in West Virginia, on the carrying of a concealed weapon without a permit, continues to be a lawful exercise by the state of its regulatory authority notwithstanding the Second Amendment." Id. at *1. However, unlike California, West Virginia is an "open carry" state, and therefore allows individuals to carry weapons openly. See OFFICE OF THE ATT'Y GEN., WEST VIRGINIA FIREARM LAWS 1 (October 2009), attached to Pl. Opp., Ex. B.[8] Thus, just like in Chandler and Nunn, but unlike California, there is a ready alternative available to the affected individuals–the ability to carry weapons openly if they cannot obtain a concealed weapon's permit.

For the foregoing reasons, the Court is convinced the Heller decision cannot stand for the broad proposition that *all* concealed weapon bans are presumptively constitutional. Accordingly, the

---

[8] The Court can properly take judicial notice of the documents appearing on a governmental website, such as the Office of the Attorney General handbook attached to Plaintiff's Opposition. See, e.g., Paralyzed Veterans of Am. v. McPherson, No. C 06-4670 SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008) (noting that the information on government agency websites has often been treated as a proper subject for judicial notice and citing cases from numerous circuits). Accordingly, because accuracy of the document attached to Plaintiff's Opposition "cannot reasonably be questioned" and because there is no objection to its accuracy by Defendant, the Court will take judicial notice of it. See FED. R. EVID. 201(b).

Court will proceed to determine whether Section 12050's application to Plaintiff's request for a permit withstands the appropriate level of constitutional scrutiny.

### 2. *Level of scrutiny*

The Supreme Court in <u>Heller</u>, while not designating any specific level of scrutiny for evaluating Second Amendment restrictions, explicitly rejected the "rational basis" test. According to the Supreme Court, the rational basis test "could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right," such as "the right to keep and bear arms." 128 S. Ct. at 2818 n.27 (citation omitted). "If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect." <u>Id.</u> The <u>Heller</u> majority also rejected an "interest-balancing inquiry" suggested by the dissent that "'asks whether the statute burdens a protected interest in a way or to an extent that is out of proportion to the statute's salutary effect upon other important governmental interests." <u>Id.</u> at 2821. According to the Supreme Court, such a "freestanding" approach, which is subject to future judges' assessments of the constitutional guarantee's usefulness, "is no constitutional guarantee at all." <u>Id.</u>

With these standards out, the Court must choose between "strict scrutiny"–typically reserved for laws that restrict certain fundamental rights, <u>see</u> <u>Reno v. Flores</u>, 507 U.S. 292, 301-02 (1993)–and some form of "intermediate scrutiny."[9] Following <u>Heller</u>, courts have not been uniform in the level of scrutiny that should be applied to Second Amendment restrictions. Some courts have applied strict scrutiny,[10] others have used intermediate scrutiny,[11] and still others have either formulated their own

---

[9] When a fundamental right is recognized, substantive due process forbids infringement of that right "*at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." <u>Flores</u>, 507 U.S. at 301-02 (citations omitted) (emphasis in original). On the other hand, intermediate scrutiny allows the State to regulate the right at issue if necessary to further an important governmental interest. <u>See</u> <u>Sell v. United States</u>, 539 U.S. 166, 178-80 (2003).

[10] <u>See, e.g.</u>, <u>United States v. Engstrum</u>, 609 F. Supp. 2d 1227, 1231-35 (D. Utah 2009) (applying strict scrutiny and upholding 18 U.S.C. § 922(g)(9), which prohibits individuals convicted of domestic violence crimes from possessing firearms).

[11] <u>See, e.g.</u>, <u>United States v. Skoien</u>, 587 F.3d 803, 810-14 (7th Cir. 2009) (applying intermediate scrutiny and noting that the standard of review would "fluctuate with character and degree of the challenged law's burden on the right and sometimes also with the specific iteration of the right"); <u>United States v. Miller</u>, 604 F. Supp. 2d 1162, 1169-72 (W.D. Tenn. 2009) (applying

tests or have upheld a challenged regulation without specifying a standard of review.[12]

At this stage of the proceedings, the Court need not decide which heightened level of scrutiny applies because the government has failed to meet its burden even if the Court applies the more lenient standard of "intermediate scrutiny." Under both "strict scrutiny" and "intermediate scrutiny" the burden is on the government to show that the challenged law is constitutional, by demonstrating that the law is either "narrowly tailored to serve a compelling state interest," Flores, 507 U.S. at 301-02 (citations omitted), or necessary to further an important governmental interest, Sell, 539 U.S. at 178-80. In the present case, apart from arguing that Section 12050 is within one of the "presumptively lawful" restrictions recognized in Heller and that it passes "rational basis" standard of review, the government has made little effort to defend the statute's constitutionality under either of the heightened levels of scrutiny.

### 3. *Application to Plaintiff's case*

Accordingly, taking Plaintiff's allegations as true, his first cause of action for violation of the Second Amendment appears to state a claim upon which relief can be granted. Twombly, 550 U.S. at 570. Plaintiff alleges that he was denied a license to carry a concealed weapon by Defendant Gore's predecessor because the SD License Division made a finding that Plaintiff did not have good cause and was not a resident of San Diego–both of which are requirements under Section 12050. As an initial matter, Plaintiff challenges the "good cause" requirement as violating his Second Amendment right "to possess and carry weapons in case of confrontation." See Heller, 128 S. Ct. at 2797. The Supreme Court has explained that the natural meaning of "bear arms" is to "'wear, bear, or carry ... upon the person or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person.'" Id. at 2793 (quoting Muscarello v. United States,

---

intermediate scrutiny and upholding 18 U.S.C. § 922(g)(1), which prohibits possession of firearms by felons).

[12] See, e.g., United States v. Marzzarella, 595 F. Supp. 2d 596, 604-06 (W.D. Pa. 2009) (fashioning a standard of review akin to content-neutral "time, place, and manner" test and upholding 18 U.S.C. § 922(k), which prohibits possession of a firearm if the individual has knowledge that the firearm's serial number has been obliterated, removed, or altered); People v. Flores, 169 Cal. App. 4th 568, 573-77 & n.5 (upholding defendant's convictions for possession of a firearm by a person prohibited from possessing a firearm (Cal. Penal Code § 12021(c)(1)), carrying a concealed firearm (Cal. Penal Code § 12025(a)(2)), and carrying a loaded firearm in a public place (Cal. Penal Code § 12031(a)(1)); and suggesting, but not deciding, that a mid-level standard of scrutiny analogous to the "undue burden" standard should apply).

524 U.S. 125, 143 (1998)). Accordingly, by imposing a "good cause" requirement before a concealed weapon's permit can be issued, the State undoubtedly infringes Plaintiff's right to "possess and carry weapons in case of confrontation." See id. at 2797. For such infringement to pass constitutional muster, Defendant must at the very least demonstrate that it is necessary to further an important governmental interest. See Sell, 539 U.S. at 178-80. In the present case, Defendant has made very little effort to either identify an "important governmental interest" or demonstrate the required "fit" between the law and the interest served.[13] Accordingly, Defendant's Motion to Dismiss for failure to state a claim Plaintiff's challenge to the "good cause" requirement of Section 12050 fails. Cf. Skoien, 587 F.3d at 814-15 (vacating and remanding where "the government has made little effort to discharge its burden of demonstrating the relationship between § 922(g)(9)'s means and its end").

Plaintiff's challenge to the requirements of Section 12050 as applied by Defendants also survives the Motion to Dismiss. Plaintiff alleges that he satisfies the "good cause" requirement because he needs to carry a gun for self-defense, seeing as he is sixty years old and travels to high crime areas for his job. (Pl. Opp., at 5-7.) Plaintiff also alleges that he satisfies the "residency" requirement because he resides in San Diego at least four months out of the year, even though he does so in a motor home. (Id. at 8-10.) Taking Plaintiff's allegations as true, Defendants' application of

---

[13] The Court does note that California law provides a number of exceptions, some of which significantly undermine portions of Plaintiff's claims. For example, Section 12026(b) of the Penal Code provides that no permit or license is necessary to possess, keep, or carry, "either openly or concealed, a pistol, revolver, or other firearm capable of being concealed upon the person within the citizen's or legal resident's place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident." Because this exemption also applies to anyone who is "temporarily within this state," nothing prevents Plaintiff from carrying a gun while inside of his motor home. See CAL. PENAL CODE § 12026(b); accord id. § 12031(l) ("Nothing in this section shall prevent any person from having a loaded weapon, if it is otherwise lawful, at his or her place of residence, including any temporary residence or campsite."). Likewise, Section 12031(j) allows carrying of a loaded firearm "by a person who reasonably believes that the person or property of himself or herself or of another is in immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property." However, this exemption is limited to the "brief interval" between the notification of the local law enforcement agency and its arrival for assistance. Id. § 12031(j).

Plaintiff's first cause of action is broader than any of these exceptions. What Plaintiff seeks is enforcement of what he believes is the right guaranteed by the Second Amendment, as interpreted in Heller, to carry a weapon that is "immediately capable of being used for its intended purpose," both in his motor home and while on public property. (Pl. Opp., at 4-5.) At least at this stage of the proceedings, even with the above exceptions in mind, the Court cannot say that as a matter of law, Plaintiff's first cause of action either lacks cognizable legal theory, or alleges insufficient facts under a cognizable legal theory. See SmileCare Dental Group, 88 F.3d at 783.

Section 12050's requirements appears to infringe upon Plaintiff's right to "possess and carry weapons in case of confrontation." See Heller, 128 S. Ct. at 2797. As already noted, for such infringement to be in accord with the Second Amendment, Defendant must at the very least demonstrate that it is necessary to further an important governmental interest. See Sell, 539 U.S. at 178-180. Seeing as Defendant has failed to either identify an "important governmental interest" or demonstrate the required "fit" between the law and the interest served, the Motion to Dismiss Plaintiff's challenge to the "good cause" and "residency" requirements as applied by Defendants also fails. Cf. Skoien, 587 F.3d at 814-15.

### 4. Conclusion

It is important to keep in mind the narrow issue before the Court at this stage of the proceedings. The Court is not asked to, and does not, decide whether Section 12050 is constitutional. Rather, the question is whether Plaintiff's complaint contains "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. The Court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. al-Kidd, 580 F.3d at 956 (citation omitted). In the present case, because Plaintiff's complaint alleges sufficient facts to state a claim for relief and because Defendant's Motion to Dismiss does little to identify an "important governmental interest" or to demonstrate the required "fit" between the law and the interest served, the Court **DENIES** Defendant's Motion to Dismiss as it relates to Plaintiff's first cause of action for violation of the Second Amendment.

## II. Equal Protection

### A. Parties' arguments

Plaintiff's second cause of action alleges that Defendant Gore's application of Section 12050's "good cause" and "residency" requirements violates the Equal Protection Clause of the Fourteenth Amendment. Defendant argues there is no equal protection violation because the government can legitimately treat differently persons dissimilarly situated. Moreover, because no suspect classification or fundamental right is involved, Defendant argues the Court should apply rational basis to Plaintiff's challenge. According to Defendant, Plaintiff's second cause of action should be dismissed because it is both rational and reasonable to deny a permit to an individual, such as Plaintiff, who only occasionally visits San Diego and who voluntarily places himself in dangerous situations and places.

Plaintiff opposes the application of "rational basis" standard of review as contrary to the Supreme Court's decision in Heller. According to Plaintiff, with heightened level of scrutiny applied, there is no justification for treating Plaintiff differently than other residents of San Diego County. First, Plaintiff argues that, as used in Section 12050, "residency" refers to something temporary in nature, as opposed to the fixed nature of "domicile."[14] Thus, because he resides full-time in his motor home and rents space at Campland on the Bay for at least four months during the year, Plaintiff alleges he satisfies the "residency" requirement of Section 12050. (Pl. Opp., at 11-13.) Second, Plaintiff argues he meets the "good cause" requirement because he needs a gun to protect himself and his wife when he travels on business and when they travel to remote areas in their motor home. (Id. at 13-14.)

B. Analysis

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citation omitted). "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." Id. at 440 (citations omitted). This general rule gives way, however, where a statute classifies by race, alienage, or national origin, or impinges on personal rights protected by the Constitution. Id. When that is the case, the challenged law is subjected to strict scrutiny and will be upheld only if it is "suitable tailored to serve a compelling state interest." Id. Moreover, laws that classify based on other characteristics beyond the individual's control, such as gender and illegitimacy, are subject to a somewhat heightened review, and will be upheld only if "substantially related to a sufficiently important governmental interest." Id. at 440-41 (citations omitted).

Contrary to Defendant's arguments, the Supreme Court in Heller explicitly rejected "rational basis" as the applicable standard of review for Second Amendment restrictions. See 128 S. Ct. at 2818 n.27. Accordingly, the Court has to apply one of the heightened levels of scrutiny to Plaintiff's

---

[14] Plaintiff urges the Court to adopt the definition of "residency" used in Section 349(c) of the California Election Code, which provides that: "The residence of a person is that place in which the person's habitation is fixed for some period of time, but wherein he or she does not have the intention of remaining. At a given time, a person may have more than one residence." The Court need not decide this issue, however, because as noted below, even if the Court adopts the definition suggested by Defendant, Plaintiff appears to be a "resident" of San Diego County. See infra Part II.B.1.

challenge to Section 12050. In the present case, the Court need not decide which specific standard controls because Defendant's Motion to Dismiss fails even if the Court applies "intermediate scrutiny." As already noted in Part I above, Defendant has made very little effort to either identify an "important governmental interest" or show how the challenged law is "substantially related" to that interest. Cf. Skoien, 587 F.3d at 814-15. Thus, as long as Plaintiff can demonstrate that he is "similarly situated" to other San Diego County residents and was "treated differently" by Defendants, his second cause of action for violation of the Equal Protection Clause would survive the motion to dismiss.

### 1. *Similarly situated*

Defendant urges the Court to find that Plaintiff is not "similarly situated" to other San Diego County residents because his residence in San Diego is only temporary. In this regard, Defendant asks the Court to adopt the definition of "residency" used in Section 17014(a) of the Revenue and Taxation Code, which defines a resident as "[e]very individual who is in this state for other than a temporary or transitory purpose." Defendant's argument is undercut, however, by the California Code of Regulations, which clarifies the meaning of "temporary or transitory purpose" as used in Section 17014(a):

> Whether or not the purpose for which an individual is in this State will be considered temporary or transitory in character will depend to a large extent upon the facts and circumstances of each particular case. It can be stated generally, however, that if an individual is simply passing through this State on his way to another state or country, or is here for a brief rest or vacation, or to complete a particular transaction, or perform a particular contract, or fulfill a particular engagement, which will require his presence in this State for but a short period, he is in this State for temporary or transitory purposes, and will not be a resident by virtue of his presence here.
>
> If, however, an individual is in this State to improve his health and his illness is of such a character as to require a relatively long or indefinite period to recuperate, or he is here for business purposes which will require a long or indefinite period to accomplish, or is employed in a position that may last permanently or indefinitely, or has retired from business and moved to California with no definite intention of leaving shortly thereafter, he is in the State for other than temporary or transitory purposes, and, accordingly, is a resident taxable upon his entire net income even though he may retain his domicile in some other state or country.

CAL. CODE REGS. tit. 18, § 17014 (2009). In the present case, Plaintiff alleges that: (1) he and his wife have maintained and had nearly exclusive use of a single room in a residence located at 3151 Driscoll Drive, San Diego for the past 15 years, where they have kept a wardrobe and other personal items; (2) they have resided regularly in San Diego since 2007, including continuously living in San Diego for two months between February 2007 and April 2007, as well as five months between November 15,

2008 and April 15, 2009; and (3) he has a California identification card identifying San Diego as his place of residence. (Compl. ¶¶ 17-22; Pl. Opp., at 8-10, 11-13, Ex. D.) Given these facts, which the Court must accept as true at this stage of the proceedings, Plaintiff's presence in San Diego appears to be more than "temporary or transitory" even under the definition urged by Defendant. Accordingly, Plaintiff alleged sufficient facts to demonstrate he is a "resident" of San Diego County and therefore is "similarly situated" to other San Diego County residents.

### 2. *Treated differently*

According to Plaintiff, he was denied a license to carry a concealed weapon by Defendant Gore's predecessor because the SD License Division made a finding that Plaintiff's need for self-defense was not a "good cause" and because his residency in a motor home did not meet the "residency" requirement. Taking these allegations as true, Plaintiff alleges sufficient facts to demonstrate he was treated differently than other similarly situated individuals.

### 3. *Conclusion*

For the foregoing reasons, because Plaintiff's complaint alleges sufficient facts to state a claim for relief and because Defendant's Motion to Dismiss does little to identify an "important governmental interest" or to demonstrate the required "fit" between the law and the interest served, the Court **DENIES** Defendant's Motion to Dismiss as it relates to Plaintiff's second cause of action for violation of the Equal Protection Clause.

## III. Right to Travel

### A. Parties' arguments

Plaintiff's third cause of action alleges that Defendants' requirement of full-time residence violates his right to travel under the Fourteenth Amendment. Defendant moves to dismiss this cause of action, arguing that Section 12050 does not actually deter the right to travel, impeding travel is not one of its primary objectives, and it does not use any classification which serves to penalize the exercise of that right. On the other hand, Plaintiff argues Defendants' application of the statute does actually deter his right to travel because "San Diego residents, such as Plaintiff, must stay fulltime in San Diego in order to have any sort of opportunity to apply and be granted a concealed carrying weapons permit." (Pl. Opp., at 15.)

//

B. <u>Analysis</u>

The constitutional "right to travel"[15] embraces at least three different components: (1) it protects the right of a citizen of one State to enter and to leave another State; (2) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and (3) for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State. <u>Saenz v. Roe</u>, 526 U.S. 489, 500 (1999). However, not all regulations that merely have an effect on travel raise an issue of constitutional dimension. Rather, "[a] state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." <u>Soto-Lopez</u>, 476 U.S. at 903 (plurality) (internal quotation marks and citations omitted).

In all cases, the analysis is informed by the same guiding principle–the right to travel "protects residents of a State from being disadvantaged, or from being treated differently, simply because of the timing of their migration, from other similarly situated residents." <u>Id.</u> at 904 (citations omitted). Whenever a state law burdens the right to travel, the court must apply strict scrutiny and ask whether the challenged law is "necessary to further a compelling state interest." <u>Id.</u> at 904-05 & n.4 (citations omitted); <u>accord</u> <u>Saenz</u>, 526 U.S. at 499 (citing <u>Shapiro v. Thompson</u>, 394 U.S. 618, 634 (1969)). Accordingly, in the present case, the Court must engage in a two-step analysis: (1) determine whether Defendants' alleged requirement of full-time residence penalizes certain individuals, such as Plaintiff, with respect to their right to travel; and (2) if it does, Plaintiff "must prevail" unless Defendant can demonstrate that the requirement is "necessary to accomplish a compelling state interest." <u>See</u> <u>Soto-Lopez</u>, 476 U.S. at 906 (plurality) (citations omitted); <u>Saenz</u>, 526 U.S. at 499 (citation omitted).

    *1. Does the requirement of full-time residence "penalize" Plaintiff?*

Not all waiting periods and residency conditions are impermissible. <u>Soto-Lopez</u>, 476 U.S. at 903-06 (plurality). Rather, it is important to distinguish between "bona fide residence requirements, which seek to differentiate between residents and nonresidents," and "residence requirements, such

---

[15] Although the Supreme Court has made it clear that the "right to travel" exists, it has struggled in identifying the precise constitutional source of that right. <u>See, e.g.</u>, <u>Att'y Gen. of New York v. Soto-Lopez</u>, 476 U.S. 898, 902-03 (1986) (plurality) (noting that the right has been inferred from federal structure of Government, and found variously in Privileges & Immunities Clause of Article IV, Commerce Clause, and Privileges & Immunities Clause of the Fourteenth Amendment).

as durational, fixed date, and fixed point residence requirements, which treat established residents differently based on the time they migrated into the State." Id. at 903 n.3 (citations omitted).

In the present case, Plaintiff alleges he is being penalized because Defendants' requirement of full-time residence "actually deters" him from traveling and spending time outside of San Diego. (Pl. Opp., at 15.) It is well-established "that a State may not impose a penalty upon those who exercise a right guaranteed by the Constitution." Harman v. Forssenius, 380 U.S. 528, 540 (1965) (citation omitted); accord Dunn v. Blumstein, 405 U.S. 330, 340-41 (1972). "Constitutional rights would be of little value if they could be ... indirectly denied, or manipulated out of existence." Harman, 380 U.S. at 540 (internal quotation marks and citations omitted). Taking Plaintiff's allegations as true, it appears the "residency" requirement as applied by Defendants does actually deter individuals such as Plaintiff from exercising their right to travel in that they are being "penalized" for traveling and spending time outside of San Diego by not being able to obtain a concealed weapon's permit.

### 2. *Does the requirement of full-time residence pass "strict scrutiny"?*

Whenever a state law burdens the right to travel, the court must apply strict scrutiny and ask whether the challenged law is "necessary to further a compelling state interest." Soto-Lopez, 476 U.S. at 904-05 & n.4 (plurality) (citations omitted); accord Saenz, 526 U.S. at 499 (citing Shapiro, 394 U.S. at 634). The heavy burden of justification is on the State, and the court will closely scrutinize the challenged law in light of its asserted purposes. Dunn, 405 U.S. at 343. In the present case, Defendant has failed either to identify a "compelling state interest" or to demonstrate that the challenged law is "necessary" to further that interest. Accordingly, the Court **DENIES** Defendant's Motion to Dismiss as it relates to Plaintiff's third cause of action for violation of his right to travel.

## CONCLUSION

For the foregoing reasons, because Plaintiff's complaint alleges sufficient facts to state claims for relief that are plausible on their face, the Court **DENIES** the Motion to Dismiss in its entirety.

**IT IS SO ORDERED.**

**DATED: January 14, 2010**

*[signature]*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**