UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
TOM G. PALMER, *et al.*                   )
                                          )
                    Plaintiffs,           )
                                          )
        v.                                )      Civil Action No. 09-01482 (HHK)
                                          )
DISTRICT OF COLUMBIA, *et al.*,           )
                                          )
                    Defendants.           )
_____)

DEFENDANTS' RESPONSE TO
PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY AND
ADDITIONAL BRIEFING ON "BEARING ARMS"

Defendants the District of Columbia and Chief Cathy Lanier (collectively "the District"),

by and through undersigned counsel, respectfully submit this brief Response to Plaintiffs' Notice

of Supplemental Authority, filed January 15, 2010, and Additional Briefing on "Bearing Arms."

Plaintiffs notified the Court of *Peruta v. County of San Diego*, ___ F.Supp.2d ___, 2010

WL 143762 (S.D. Cal. Jan. 14, 2010). In that case, the government denied the plaintiff's

application for a concealed-weapon permit, finding that he did not have "good cause" and was

not a resident of San Diego, both requirements under the challenged law. *Id.*, slip op. at 2 (citing

CAL. PENAL CODE § 12050). Plaintiff sued the County and the Sheriff individually, alleging

violations of the Second Amendment, equal protection, and the right to travel. *Id.* at 3.

Notwithstanding that plaintiffs failed to explain how *Peruta* supports their claims, the

case is easily distinguishable. First, the court was not ruling on the merits, merely determining,

as required by the government's motion to dismiss, if the complaint "alleges sufficient facts to

state claims for relief that are plausible on their face . . . ." *Id.* at 18. Second, the court found that

plaintiff "alleged sufficient facts to demonstrate he is a 'resident' of San Diego County . . . ." *Id.*

at 16. Third, and most importantly, the court found that, regardless of the level of scrutiny applied, the government there "failed to either identify an 'important government interest' or demonstrate the required 'fit' between the law and the interest served . . . ." *Id*. at 13. *See also id*. ("The Court is not asked to, and does not, decide whether Section 12050 is constitutional."). These factors are sufficient, alone, to distinguish *Peruta*.


*"Bearing Arms"*

During the hearing on January 22, 2010, the scope of "bearing" arms in the context of the Second Amendment was debated. As the District has argued, plaintiffs' assertion that the Second Amendment's right "to keep and bear arms" guarantees the right to carry arms in public is unsupported by any controlling case law. The fact that the majority in *District of Columbia v. Heller*, ___ U.S. ___, 128 S.Ct. 2783 (Jun. 26, 2008), deemed "bear" to mean "carry" does not aid plaintiffs, as the next sentence of the holding resolves the disputed issue in the instant case: "Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to *carry it in the home*." *Id*. at 2822 (emphasis added). The fact that the *Heller* majority equated "bear" with "carry" in no way implies that the right detailed in *Heller* extends beyond the home.[1]

It strains credulity to suggest that while the Supreme Court was explicit in recognizing a right to handguns in the home for self defense, it deliberately chose to be silent about its apparent

---

[1]     Subsequent case law confirms the narrow nature of *Heller*'s holding. *See, e.g., United States v. Masciandaro*, 648 F.Supp.2d 779, 787 (E.D.Va. 2009) (emphasizing the phrase "in the home" three times in quoting *Heller*'s holding); *State v. Knight*, 218 P.3d 1177, 1189 (Kan. App. 2009) (rejecting defendant's contention that "the *Heller* opinion extends individuals a right to bear arms outside the home."). In contrast, plaintiffs have not cited any case (and the District is aware of none) interpreting *Heller* as broadly as they urge.

belief (as plaintiffs contend) that Mr. Heller also had a right to carry a firearm on the streets outside his home. If the Court had wanted to grant a more expansive right to bear arms, it knew how to say so. Surely the Court could have stated expressly that Mr. Heller had a right to bear arms to defend himself in public and private spaces both. At the same time as the Court was suggesting that prohibitions on concealed carrying of guns were lawful, *id.* at 2816, it could have stated that prohibitions on *open* carrying of guns were *not* lawful. But the Court did no such thing, and its silence speaks volumes. On the contrary, the Court made clear that its list of "presumptively lawful" regulations was not intended to be exhaustive. *Id.* at 2817 & n.26. There is no logical reason why the Court would be so explicit about limitations on the right, while leaving at best a trail of bread crumbs (the purported meaning of "bear") to indicate its intent to vastly extend the *Heller* right to include bearing guns on the public streets.

Plaintiffs' unqualified claim that "throughout the centuries, it has always been well-understood that the state's regulatory interest does not sanction a complete ban on the carrying of handguns[,]" P.Mem.SJ at 7, is not supported by history. Plaintiffs argue that "To 'bear arms,' as used in the Second Amendment, is to 'wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person.'" *Id.* at 8 (quoting *Heller*, 128 S. Ct. at 2793 (quoting *Muscarello v. United States*, 524 U.S. 125, 143 (1998) (Ginsburg, J., dissenting)). But *Muscarello* did not purport to define the scope of any right guaranteed by the Second Amendment. That decision found only that the phrase "uses or carries a firearm," pursuant to 18 U.S.C. § 924(c)(1), "during or in relation to" a "drug trafficking crime" encompasses the knowing possession of firearms in a vehicle, including in a locked glove compartment or trunk. *Muscarello*, 524 U.S. at 127.

The decision was not about "bearing" arms at all, but about whether the word "carry" in a specific criminal statute could be properly construed to include weapons in the vehicle used by the suspect. *See United States v. Joseph*, 169 F.3d 9, 14 (D.C. Cir. 1999) ("[*Muscarello*]'s holding, hence, was confined to determining that the word's 'primary' meaning, involving conveyance and moving, created a proper basis for a conviction . . . ."); *Id.* ("the *Muscarello* opinion repeatedly emphasized the centrality of the concept of conveyance to its decision.").[2]

The same history that the *Heller* Court relied on to determine the contours of the right to keep and bear arms makes clear that the right has *not* been universally understood to include a right to carry in public. Indeed, there are numerous examples in *Heller* itself of historical prohibitions on the carrying of weapons in public. *See Heller*, 128 S.Ct. 2783, at n.10 ("no Person should bear any Arms within London and the Suburbs") (quoting J. Brydall, *Privilegia Magnatud apud Anglos* 14 (1704)); *id.* at n.15 ("[t]he Prohibition contained . . . in this Act, of having, keeping, bearing, or wearing any Arms or War-like Weapons . . . shall not extend . . . to any Officers or their Assistants, employed in the Execution of Justice . . .") (quoting 3 Geo., 34, § 3, in 7 ENG. STAT. AT LARGE 126 (1748)). *Cf. Williams v. Commonwealth*, 261 S.W.2d 807, 808 (Ky. 1953) ("At common law or by very early statute in England, people were prohibited from going armed that they might not terrorize the King's subjects."). *See also, e.g.*, Lucilius A. Emery, "The Constitutional Right to Keep and Bear Arms," 28 HARV. L. REV. 473 (1915) ("[I]t

---

[2]        It should go without saying that there is no hint in *Muscarello* of approval of any broad Second-Amendment right to carry guns in public. The Court, if anything, implied the opposite, foreshadowing *Heller*'s definition of the "core" right, implicating self-defense in the home. *See Muscarello*, 524 U.S. at 132 (citing, with approval, comments of the provision's "chief legislative sponsor" that the law seeks "to persuade the man who is tempted to commit a Federal felony to leave his gun at home.'") (quoting 114 CONG. REC. 22231 (1968) (Rep. Poff)). Justice Ginsberg's dissent carries a similar implication. *Id.* at 140 ("I would read the words ["carries a firearm"] to indicate not *merely keeping arms on one's premises* or in one's vehicle, but bearing them in such manner as to be ready for use as a weapon.") (emphasis added).

was as early as 1328 declared by the Statute of Northampton, 2 Edw. III, ch. 3, that no man should 'go nor ride armed by night or by day in fairs, markets, nor in the presence of the justices or other ministers, nor in no part elsewhere upon pain,' etc. Such conduct was probably regarded as tending to terrify peaceful people and to provoke breaches of the peace.").

Even leaving aside the extensive jurisprudence of Illinois, there are a number of examples in American history of "complete bans" on the carrying of weapons. *See, e.g.,* Brief of Thirty-Four Professional Historians and Legal Historians as *Amici Curiae* in Support of Respondents, at 17, *McDonald v. City of Chicago*, No. 08-1521 (U.S., filed Jan. 6, 2010) (early Wyoming law made it unlawful for anyone "to bear upon his person, concealed or openly, any fire-arm or other deadly weapon, within the limits of any city, town or village.") (quoting 1876 WYO. COMP. LAWS ch. 52, § 1); *id.* (discussing Dodge City, Kansas' ban on the carrying of pistols and other dangerous weapons) (citing Dodge City, Kan., Ord. No. 16, § XI (Sept. 22, 1876)).[3]

The Supreme Court will hear arguments in *McDonald* in March, another opportunity for it to address the scope of the right protected by the Second Amendment. However, neither the language nor logic of *Heller* suggest that a majority of the Court was ready to embrace the far broader constitutional right urged by plaintiffs in the instant matter.


DATE: January 29, 2010                    Respectfully submitted,

                                          PETER J. NICKLES
                                          Attorney General for the District of Columbia

                                          GEORGE C. VALENTINE
                                          Deputy Attorney General, Civil Litigation Division

---

[3]     *Available online at* http://www.chicagoguncase.com/wp-content/uploads/2010/01/08-1521-bsac-thirty-four-professional-historians.pdf (last accessed Jan. 26, 2010).

_____/s/ Ellen A. Efros_____
ELLEN A. EFROS, D.C. Bar No. 250746
Chief, Equity Section I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 442-9886
Facsimile: (202) 727-0431


_____/s/ Andrew J. Saindon_____
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity I Section
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 727-0431
andy.saindon@dc.gov