IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TOM G. PALMER, et al., | ) | Case No. 09-CV-1482-HHK |
| | ) | |
| Plaintiffs, | ) | PLAINTIFFS' RESPONSE TO |
| | ) | DEFENDANTS' UNAUTHORIZED |
| v. | ) | SUPPLEMENTAL BRIEF |
| | ) | |
| DISTRICT OF COLUMBIA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

PLAINTIFFS' REPLY TO DEFENDANTS'
UNAUTHORIZED SUPPLEMENTAL BRIEF

COME NOW the Plaintiffs, Tom G. Palmer, George Lyon, Edward Raymond, Amy McVey, and the Second Amendment Foundation, Inc., by and through undersigned counsel, and submit their Memorandum of Points and Authorities in Response to Defendants' Unauthorized Supplemental Brief of January 29, 2010.

Dated: February 5, 2010                    Respectfully submitted,

                                           Alan Gura (D.C. Bar No. 453449)
                                           Gura & Possessky, PLLC
                                           101 N. Columbus Street, Suite 405
                                           Alexandria, VA 22314
                                           703.835.9085/Fax 703.997.7665

                                       By: /s/Alan Gura
                                           Alan Gura

                                           Attorney for Plaintiffs

PLAINTIFFS' RESPONSE TO DEFENDANTS'
UNAUTHORIZED SUPPLEMENTAL BRIEF

PRELIMINARY STATEMENT

Unsatisfied with the course of oral argument held the previous week and with the contents of its earlier pleadings, Defendants ("the District") submitted a new, unauthorized brief on the merits of this case on January 29. Styled as a response to Plaintiffs' *pre-argument* citation of relevant, newly-decided authority, the unauthorized brief is actually a continuation of the oral arguments held January 22, as well as a wholesale substitute motions brief.

The District already had what should have been the last word in briefing the motions, and was afforded ample opportunity to present its views during oral argument. Neither the Court's rules nor scheduling order allow the District to continue filing briefs, at random intervals, as new thoughts occur to it. These new arguments, like the ones previously asserted, lack merit and constrain Plaintiffs to submit a response.

However, in addition to resolving the substantive legal questions presented by this case, this Court should also clarify that its rules and scheduling orders apply to the District of Columbia. There has long been "a feeling both within the Corporation Counsel and among the plaintiffs' bar that the District and its attorneys will not be held to the same standard of conduct demanded of other parties and attorneys in this jurisdiction." *Webb* v. *District of Columbia*, 189 F.R.D. 180, 191 (D.D.C. 1999). One method by which the District excuses itself from the normal operation of this Court's rules and orders is by filing unauthorized sur-replies and other substantive briefs containing new arguments, out of time and without prior authorization. This is not an isolated occurrence.

This practice is disruptive to the Court and to opposing parties, who cannot effectively schedule a case as nothing with the District is ever truly over. And because one never knows when (or if) briefing is ever concluded with the District, choices as to what to include within normally-understood "oppositions" and "replies" are altered as well. Because in counsel's experience, this is becoming a regular practice for the District, the Court should admonish the District to refrain from filing new, unauthorized substantive briefs at random intervals. *Cf.* 28 U.S.C. § 1927. Litigants and counsel are entitled to rely on this Court's rules and orders.

## ARGUMENT

I.  DEFENDANTS MISREPRESENT THE FACTS OF *HELLER*.

The District is well aware of the facts of *District of Columbia* v. *Heller*, 128 S. Ct. 2783 (2008), litigated by undersigned counsel.

The Supreme Court ordered the District to issue Heller a license to carry a gun in his home because Heller requested such a license specifically. District law at the time made it a felony to carry a gun in public without a license, as it still does today. Heller never applied for a permit to carry his gun in public. However, the law also made it a separate misdemeanor offense to carry a registered handgun *inside one's home* without a separate, unavailable permit, and this requirement was challenged as being effectively a handgun possession ban.

The District never issued Heller a home-carrying license. It repealed the law.

The argument that because Heller asked for a home-carry license, the Supreme Court's definition of "bear arms" is limited to the home, lacks merit.

II. DEFENDANTS MISREPRESENT THE FACTS OF *McDONALD*.

Plaintiffs' counsel, who argued *Heller* before the Supreme Court, will also argue *McDonald* v. *City of Chicago*, No. 08-1521, before the Supreme Court on March 2.

*McDonald* will not decide any question related to those raised in the instant case. The Question Presented in *McDonald* is: "Whether the Second Amendment right to keep and bear arms is incorporated as against the States by the Fourteenth Amendment's Privileges or Immunities or Due Process Clauses."

The District of Columbia is not a state. The Second Amendment applies here regardless of how the Supreme Court interprets the Fourteenth Amendment. And no ordinance at issue in *McDonald* relates to the public carrying of arms. Challenged in *McDonald* are Chicago's handgun ban, and several unusual features of Chicago's scheme for firearm registration (but not the concept of registration or the registration system itself).

III. THE ANCIENT LAWS OF ENGLAND OR OF OTHER STATES ARE IRRELEVANT.

Continuing the argument with Plaintiffs' motion for summary judgment, Defendants invoke new arguments about the ancient laws of England or various states. Defendants even cite to Supreme Court amicus briefs to support their new claims.

Aside from the fact that this is inappropriate at this stage of the litigation, it is also irrelevant. *Heller* exhaustively litigated the question of what the right to arms meant throughout early English and American history, and how the Second Amendment relates to the evolution and understanding of this right in history. Briefing on this topic was extraordinarily voluminous. It is not for this Court, on an unauthorized supplemental brief, to reconsider the Supreme Court's work in *Heller*.

3

Nor do state law violations of constitutional rights diminish the existence of those rights. What matters are precedents addressing such violations, and as recounted in Plaintiffs' submissions, precedent repeatedly confirms that the right to bear arms cannot be completely eradicated as done here by the District. This line of cases begins, with respect to the Second Amendment, with *State* v. *Nunn*, 1 Ga. 243 (1846), striking down a handgun carrying ban, and includes three additional cases for the same proposition endorsed by the Supreme Court in *Heller*.

Although there is no need to repeat Plaintiffs' briefing on this point, some of the District's new claims on the topic warrant a response. The District, at 4, cites *Williams* v. *Commonwealth*, 261 S.W.2d 807, 808 (Ky. 1953) for the proposition that "[a]t common law or by very early statute in England, people were prohibited from going armed that they might not terrorize the King's subjects."

Somehow, the District omits the next sentence: "That was never the law in this country . . ." *Id.*

*Williams* then explained that only prohibitions on *concealed* carry could be enacted as a regulation on the manner of carrying, and indeed, *Williams* concluded that the prohibition did not extend to carrying guns in a car's locked glove compartment – an offense similar to that for which Plaintiff Raymond was arrested and prosecuted.

Three years later, Kentucky's Supreme Court held that people have a constitutional right to openly carry handguns. *Holland* v. *Commonwealth*, 294 S.W.2d 83, 85 (Ky. 1956). Indeed, until it was amended, Kentucky's constitution barred restrictions on concealed carrying of handguns as well. *Bliss* v. *Commonwealth*, 12 Ky. 90 (1822).

IV.     THE DISTRICT MISREPRESENTS POST-*HELLER* PRECEDENT.

The District misrepresents *State* v. *Knight*, 218 P.3d 1177 (Kan. App. 2009) and *United States* v. *Masciandaro*, 648 F. Supp. 2d 779 (E.D.Va. 2009) to support their contention that there is no right to bear arms outside one's home.

Knight's Second Amendment claim did not fail because he was carrying a gun outside his home, but because he was a convicted felon carrying a concealed handgun without a license, and "the *Heller* Court considered concealed firearms prohibitions to be presumptively constitutional under the Second Amendment." *Knight*, 218 P.3d at 1190. Had Knight been carrying his handgun openly, or if he had a commonly-available Kansas concealed handgun license, or had Knight not been a convicted felon, under Kansas law he would have committed no crime at all while carrying his firearm outside his home.

Similarly, Masciandaro's "concealed-carry permit had expired, [and he] carried the firearm at issue in this case 'about his person' and in a concealed manner" in violation of Virginia law. *Masciandaro*, 648 F. Supp. 2d at 785 n.7. Although the *Masciandaro* court went further, relying on the Supreme Court's language regarding Mr. Heller's home-carry license, it was apparently unaware of the factual circumstance discussed *supra* regarding the District's unusual law at the time. Again, Heller never requested a license to carry the gun in public, he challenged only a law requiring an in-home license. The Supreme Court's license language tracked the law at issue, nothing more.

V.   THE DISTRICT CANNOT OFFER ANOTHER ALTERNATIVE DEFINITION OF "BEAR ARMS" AS USED IN THE SECOND AMENDMENT.

The definition of "bear arms" as used in the Second Amendment is what it is, and it was required by the District's heavily litigated position that "bear arms" meant soldiering. The Supreme Court could not decide the case without addressing the District's argument, and it could not address the District's argument without defining the meaning of the word "bear." That definition is not dicta, it was required to support the Court's decision because the District forced the Court to define the term.

The Supreme Court's language in *Heller* is unambiguous and controlling:

> In *Muscarello* v. *United States*, 524 U.S. 125, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (1998), in the course of analyzing the meaning of "carries a firearm" in a federal criminal statute, JUSTICE GINSBURG wrote that "[s]urely a most familiar meaning is, as the Constitution's Second Amendment . . . indicate[s]: 'wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person.'" *Id.*, at 143, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (dissenting opinion) (quoting Black's Law Dictionary 214 (6th ed. 1998)). We think that JUSTICE GINSBURG accurately captured the natural meaning of "bear arms."

*Heller*, 128 S. Ct. at 2793

There is nothing logical about limiting this definition to the carrying of arms in the home, especially as Mr. Muscarello was not carrying his firearm inside the house, and considering the various right to bear arms cases relied upon by the Supreme Court which plainly described carrying guns outside the home. The "sensitive places," and time, place, and manner language employed by the Supreme Court likewise indicates that the right extends beyond one's home. Should the District wish to return to the Supreme Court to reargue the meaning of "bear arms," it would meet with the same result. But that re-argument cannot occur here.

CONCLUSION

This Court has afforded the District ample, fair opportunity to be heard, according to well-defined rules and an unambiguous scheduling order. It should now admonish the District to file no further unauthorized briefs without leave of this Court, and enter summary judgment for Plaintiffs.

Dated: February 5, 2010                     Respectfully submitted,

                                            Alan Gura (D.C. Bar No. 453449)
                                            Gura & Possessky, PLLC
                                            101 N. Columbus Street, Suite 405
                                            Alexandria, VA 22314
                                            703.835.9085/Fax 703.997.7665

                                By:  /s/Alan Gura
                                            Alan Gura

                                            Attorney for Plaintiffs