IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOM G. PALMER, et al., | ) Case No. 09-CV-1482-FJS |
| | ) |
| Plaintiffs, | ) REPLY TO DEFENDANTS' NOTICE OF |
| | ) SUPPLEMENTAL AUTHORITY |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, et al., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

REPLAY TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY

COME NOW the Plaintiffs, Tom G. Palmer, George Lyon, Edward Raymond, Amy McVey, and the Second Amendment Foundation, Inc., by and through undersigned counsel, and respond to the Defendants' citation of *Kachalsky* v. *Cacase*, 2011 U.S. Dist. LEXIS 99837 (S.D.N.Y. Sept. 2, 2011). *Kachalsky* is "useful in resolving the pending motions," Def. Notice, Sept. 12, only if the Court would seek an example of how the motions should not be decided.

In *Kachalsky*, the Southern District of New York offered that the right to bear arms does not extend beyond the home, and rejected the definition of "bear" as meaning to "carry." *Kachalsky*, 2011 U.S. Dist. LEXIS 99837 at *70-*71; *contra District of Columbia* v. *Heller*, 554 U.S. 570, 584 (2008) ("[t]o 'bear arms,' as used in the Second Amendment, is to 'wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person.'") (citation omitted); *see also Heller*, 554 U.S. at 604, 626 & 627 ("keep and carry arms.").

*Kachalsky*'s justification for rejecting the Supreme Court's definition of "bear arms" is unavailing. First, *Kachalsky* offered that the Supreme Court's definition of "bear arms" applied only in the context of rebutting an argument that it refers to military duty. *Kachalsky*, 2011 U.S. Dist. LEXIS 99837 at *70-*71. Apparently, the term "bear arms" somehow loses this meaning if the question is not whether the term means something else, but is instead more simply, what do these words mean? Under *Kachalsky*'s logic, in the context of this case (or in *Kachalsky*), "bear arms" might as well have the collectivist definition repudiated by *Heller*.

Respectfully, this is no way to interpret the Constitution, whose words do not change "their normal and ordinary as distinguished from technical meaning," *Heller*, 554 U.S. at 576, depending on the nature of the litigants' dispute. The Supreme Court has rejected the *Alice in Wonderland* approach to statutory interpretation. *Tennessee Valley Auth.* v. *Hill*, 437 U.S. 153, 174 n.18 (1978) ("'When *I* use a word,' Humpty Dumpty said, in rather a scornful tone, 'it means just what *I* choose it to mean -- neither more nor less'") (quoting *Through the Looking Glass*, in THE COMPLETE WORKS OF LEWIS CARROLL 196 (1939)). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Connecticut Nat'l Bank* v. *Germain*, 503 U.S. 249, 253-54 (1992) (citations omitted).

Of course, when the Supreme Court defines a constitutional term in order to resolve a case, that definition cannot be dicta. It is well established that

> When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound . . . the principle of *stare decisis* directs

> us to adhere not only to the holdings of our prior cases, but also to their explications of the governing rules of law . . .

*Seminole Tribe of Fla.* v. *Florida*, 517 U.S. 44, 67 (1996) (citations and internal quotation marks omitted). Thus, a statement that "explains the court's rationale . . . is part of the holding." *United States* v. *Bloom*, 149 F.3d 649, 653 (7th Cir. 1998). In contrast,

> [a] dictum is a statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it.

*Sarnoff* v. *Am. Home Prods. Corp.*, 798 F.2d 1075, 1084 (7th Cir. 1986).

Considering its need to address the District of Columbia's collectivist interpretation, the Court's conclusion that the right to "bear arms" is the right to "carry weapons in case of confrontation" was essential to its resolution of *Heller*. Accordingly, it is part of *Heller*'s holding. The numerous pages describing how that right would be applied outside the home in different contexts only underscore the fact that the matter received the Court's exhaustive consideration, even if it was not literally memorialized in the awarded relief.

*Kachalsky* referenced "pervasive limiting language" in *Heller* allegedly restricting the right to the home, 2011 U.S. Dist. LEXIS 99837 at *71, but of course *Heller* contains no such language. Plaintiffs remain mystified as to how noting that the right is "most acute" in the home, *Heller*, 554 U.S. at 628, or admonishing that the right to arms is secured "most notably for self-defense within the home," *McDonald* v. *City of Chicago*, 130 S. Ct. 3020, 3044 (2010), somehow means that the right applies "only" in the home. Nor is it clear how the Supreme Court's mere description of the laws struck down in *Heller*, "the District's ban on handgun possession in the home [and] its prohibition against rendering

any lawful firearm in the home operable for the purpose of immediate self-defense," *Heller*, 554 U.S. at 635, limit the right's application to only those circumstances.

The more faithful approach was followed by the Seventh Circuit, which explained that "the Second Amendment creates individual rights, *one of which* is keeping operable handguns at home for self-defense. What other entitlements the Second Amendment creates, and what regulations legislatures may establish, *were left open*." *United States* v. *Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (emphasis added). The Seventh Circuit, of course, later affirmed the "right to train at a range," an activity that is plainly conducted outside the home which exists separate and apart from the basic right to keep a firearm. *See Ezell* v. *City of Chicago*, 2011 U.S. App. LEXIS 14108 at *67 (7th Cir. July 6, 2011).

*Kachalsky* acknowledged *Ezell*'s holding, as well as the Supreme Court's observation that the Second Amendment secured a right to use firearms for hunting, at *75-*77, but dismissed these observations because it believed "hunting does not involve handguns" and New York law allowed for hunting. *Id.[1]* This is a non-sequitur. The Second Amendment's protection of hunting falsifies *Kachalsky*'s declaration that the Amendment secures only the right to keep handguns at home, regardless of whether handguns are used in hunting or whether hunting was the subject of the *Kachalsky* litigation.

---

[1] The *Kachalsky* court is simply wrong on this point. *See, e.g.* HANDGUN HUNTER MAGAZINE, available at www.handgunhunter.com (last visited Sept. 14, 2011); "Field & Stream Picks the 25 Best Handguns for Hunters," available at http://www.fieldandstream.com/photos/gallery/gear/hunting-gear/ 2010/06/25-best-handguns-hunting-ever-made (last visited Sept. 14, 2011).

In any event, *Kachalsky* fails, like Defendants failed here (or, for that matter, as did the *Kachalsky* defendants), to offer *any* alternative definition for the term "bear arms" if the term does not mean what the Supreme Court held it meant in *Heller*: As the *Kachalsky* court would not follow the Supreme Court's definition of "bear arms," it should have offered an alternative definition. *Kachalsky* notably failed to address the Supreme Court's consideration of a Second Amendment question outside the home, on the highways, in *United States* v. *Miller*, 307 U.S. 174 (1939) (applying Second Amendment to interstate transportation of a short-barreled shotgun).

*Kachalsky*'s rejection of the Supreme Court's definition of "bear arms," and its failure to otherwise offer an alternative definition of this critical term according to the Second Amendment's original public meaning, will be reviewed de novo by the Second Circuit. In the meantime, this Court is bound by the Supreme Court's decision in *Heller*. At a minimum, should this Court reject *Heller*'s definition of "bear arms," it should supply some alternative based on its assessment of the text's original public meaning.

Dated:  September 14, 2011     Respectfully submitted,

                                                  Alan Gura (D.C. Bar No. 453449)
                                                Gura & Possessky, PLLC
                                                101 N. Columbus Street, Suite 405
                                                Alexandria, VA 22314
                                                703.835.9085/Fax 703.997.7665

                                       By:   /s/Alan Gura
                                                Alan Gura

                                                Attorney for Plaintiffs