--- F.Supp.2d ----, 2012 WL 344760 (C.D.Ill.)
**(Cite as: 2012 WL 344760 (C.D.Ill.))**

Only the Westlaw citation is currently available.

United States District Court, C.D. Illinois.
Michael MOORE, Charles Hooks, Peggy Fechter, Jon Maier, Second Amendment Foundation, Inc., and Illinois Carry, Plaintiffs,
v.
Lisa MADIGAN, in her official capacity as Attorney General for the State of Illinois, and Hiram Grau, in his official capacity as Director of the Illinois State Police, Defendants.

No. 11–cv–03134.
Feb. 3, 2012.

David Jensen, David Jensen PLLC, New York, NY, David Sigale, Law Firm of David Sigale, P.C., Glen Ellyn, IL, for Plaintiff.

Terrence J. Corrigan, David Andrew Simpson, and Karen L. McNaught, Illinois Attorney General, Springfield, IL, for Defendant.

Robert J. Harris, Harris Winick LLP, Chicago, IL, for Amicus, Brady Center to Prevent Gun Violence.

*OPINION*
SUE E. MYERSCOUGH, District Judge:

**\*1** This matter is before the Court on the Motion for Preliminary and/or Permanent Injunction (the "Injunction Motion") of Plaintiffs Michael Moore, Charles Hooks, Peggy Fechter, Jon Maier, Second Amendment Foundation, Inc., and Illinois Carry. *See* d/e 13. The Court also considers Defendants Lisa Madigan and Hiram Grau's Motion to Dismiss. *See* d/e 24. This Court finds that the Illinois "Unlawful Use of Weapons" and "Aggravated Unlawful Use of a Weapon" statutes do not violate Plaintiffs' Second Amendment rights. The United States Supreme Court and the Seventh Circuit have recognized only a Second Amendment core individual right to bear arms inside the home. Further, even if this Court recognized a Second Amendment right to bear arms outside of the home and an interference with that right, the statutes nonetheless survive constitutional scrutiny. Therefore, Plaintiffs cannot show a likelihood of success on the merits of their claim and thus cannot succeed on the Injunction Motion. For reasons further discussed below, the Injunction Motion is DENIED and the Motion to Dismiss is GRANTED.

### I. BACKGROUND

On May 19, 2011, Plaintiffs filed a one-count Amended Complaint alleging that the Illinois Unlawful Use of Weapons ("UUW") statute (720 ILCS 5/24–1) and the Aggravated Unlawful Use of a Weapon ("AUUW") statute (720 ILCS 5/24–1.6) violate the Second Amendment. Specifically, Plaintiffs allege that 720 ILCS 5/24–1(a)(4), 720 ILCS 5/24–1(a)(10), and 720 ILCS 5/24–1.6(a) are unconstitutional as applied because the statutes prohibit the carry of loaded and operable firearms in public and thereby violate Plaintiffs' rights under the Second Amendment as recognized by *District of Columbia v.. Heller,* 554 U.S. 570, 592 (2008), and made applicable to the States by *McDonald v. Chicago,* 130 S.Ct. 3020, 3026 (2010). Plaintiffs argue that the Second Amendment, as interpreted by the Supreme Court, allows Plaintiffs to carry firearms, concealed or otherwise, in public.

Plaintiffs first challenge the Illinois "Unlawful Use of Weapons" statute, 720 ILCS 5/24–1, which criminalizes the carrying or possession of a firearm outside of the home except under certain circumstances. The statute provides, in pertinent part:

(a) A person commits the offense of unlawful use of weapons when he knowingly:

\* \* \*

(4) Carries or possesses in any vehicle or concealed on or about his person except when on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm, except that this subsection (a)(4) does not apply to or affect transportation of weapons that meet one of the following conditions:

(i) are broken down in a non-functioning state; or

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 344760 (C.D.Ill.)
**(Cite as: 2012 WL 344760 (C.D.Ill.))**

(ii) are not immediately accessible; or

(iii) are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card; or ...

\* \* \*

**\*2** (10) Carries or possesses on or about his person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm....

(b) Sentence. A person convicted of a violation of subsection 24–1(a)(1) through (5), subsection 24–1(a)(10), subsection 24–1(a)(11), or subsection 24–1(a)(13) commits a Class A misdemeanor....

Plaintiffs also challenge the Illinois "Aggravated Unlawful Use of a Weapon" statute, 720 ILCS 5/24–1.6, which criminalizes the carrying or possession of a firearm outside of the home when the firearm is loaded and accessible or when the firearm is unloaded but ammunition is immediately accessible. The statute provides, in pertinent part:

(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; or

(2) Carries or possesses on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his or her own land or in his or her own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; and

(3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; or

(B) the firearm possessed was uncased, unloaded and the ammunition for the weapon was immediately accessible at the time of the offense

\* \* \*

(d) Sentence.

(1) Aggravated unlawful use of a weapon is a Class 4 felony; a second or subsequent offense is a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 7 years.

Plaintiffs claim that the UUW and AUUW statutes criminalize the carrying of a functional firearm on one's person in public and, therefore, violate their Second Amendment right to bear arms.

On July 7, 2011, Plaintiffs filed the Injunction Motion. Plaintiffs argue the Supreme Court ruled in *Heller,* 554 U.S. at 592, that the Second Amendment "guarantee[s] the right to possess and carry weapons in case of confrontation." *See* Pls.' Mem. Supp. Prelim. and/or Perm. Inj. (d/e 14) at 1. Plaintiffs cite *McDonald,* 130 S.Ct. at 3026, for the proposition that the Supreme Court incorporated that right "fully" against the States. Plaintiffs further contend that, because Illinois' prohibitions on the carrying of guns necessarily violates Plaintiffs' Second Amendment rights, an injunction must be issued against Defendants according to *Ezell v. City of Chicago,* 651 F.3d 684 (7th Cir.2011).

**\*3** At the August 4, 2011 hearing on the Injunc-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 344760 (C.D.Ill.)
**(Cite as: 2012 WL 344760 (C.D.Ill.))**

tion Motion, Defense counsel stated that they do not contest Plaintiffs' assertion that Lisa Madigan and Hiram Grau are properly named as Defendants. *See* Prelim. Inj. Hr'g Tr. (d/e 37) at 33–34, Aug. 4, 2011. Additionally, Defendants offered as evidence reports about the efficacy of firearms control. *Id.* at 4. Plaintiffs objected to the reports' relevance under Federal Rule of Evidence 401, and this Court reserved ruling. *Id.* This Court now finds that the reports offered by Defendants at the August 4, 2011 hearing are relevant to the Injunction Motion in that they affect this Court's analysis of whether the UUW and AUUW statutes survive constitutional scrutiny. Therefore, the Court accepts the reports into evidence and now rules on the remaining issues.

## II. JURISDICTION & VENUE

The federal question posed by Plaintiffs' claimed violation of their Second Amendment rights gives this Court subject matter jurisdiction. *See* 28 U.S.C. § 1331. Personal jurisdiction and venue requirements are satisfied because the relevant acts occurred in this judicial district. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980) (stating that personal jurisdiction exists where a defendant "purposefully avail[ed] [himself or herself] of the privilege of conducting activities" in the forum state); 28 U.S.C. § 1391(b) (providing that venue in non-diversity cases is proper in a judicial district where any defendant resides, if all defendants reside in the same State).

## III. STANDING

"Standing exists when the plaintiff suffers an actual or impending injury, no matter how small; the injury is caused by the defendant's acts; and a judicial decision in the plaintiff's favor would redress the injury." *See Ezell,* 651 F.3d at 695 (quoting *Bauer v. Shepard,* 620 F.3d 704, 708 (7th Cir.2010)) (internal quotation marks omitted). By asserting that the Second Amendment gives them a right to carry firearms in public and that Illinois' UUW and AUUW statutes deprive them of that right, the four individual Plaintiffs have clearly alleged injury and causation. Because a decision enjoining enforcement of the UUW and AUUW statutes would redress Plaintiffs' alleged injury, Plaintiffs have also satisfied the requirement that a judicial decision in their favor would redress their injury.

Just as the four individual Plaintiffs have standing to seek injunctive relief, so, too, do associational Plaintiffs Second Amendment Foundation, Inc., and Illinois Carry. Second Amendment Foundation, Inc. and Illinois Carry have members who assert that they would carry firearms in Illinois but for the UUW and AUUW statutes. These two organizations meet the requirements for associational standing because: "(1) their members would otherwise have standing to sue in their own right; (2) the interests the associations seek to protect are germane to their organizational purposes; and (3) neither the claim asserted nor the relief requested requires the participation of individual association members in the lawsuit." *Ezell,* 651 F.3d at 696 (citing *United Food & Commercial Workers Union Local 751 v. Brown Group,* 517 U.S. 544, 553 (1996); *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 343 (1977); *Disability Rights Wisconsin v. Walworth County Board of Supervisors,* 522 F.3d 796, 801–02 (7th Cir.2008)).

## IV. MOTION FOR PRELIMINARY INJUNCTION

**\*4** This Court first considers Plaintiffs' Injunction Motion, rather than Defendants' Motion to Dismiss, because the Parties have more fully briefed the constitutionality of the challenged statutes with respect to the Injunction Motion and presented oral argument on the Injunction Motion at the August 5, 2011 hearing.

Plaintiffs argue that the Supreme Court in *Heller* determined that individuals have a Second Amendment right to carry firearms, concealed or visible, in public and, therefore, the Illinois UUW and AUUW statutes violate the Second Amendment by prohibiting individuals from carrying functioning firearms in public. *See* Pls.' Mem. Supp. Prelim. and/or Perm. Inj. at 1–3 (citing *Heller,* 554 U.S. at 584; 720 ILCS 5/24–1; 720 ILCS 5/24–1.6). To prevent further violations of these alleged rights, Plaintiffs seek a preliminary injunction or, in the alternative, a permanent injunction.

A party seeking a preliminary injunction must initially demonstrate that: (1) the claim has some likelihood of succeeding on the merits; (2) no adequate remedy at law exists; and (3) irreparable harm will result if preliminary relief is denied. *See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc.,* 549 F.3d 1079, 1086 (7th Cir.2008). If the moving party fails to demonstrate any one of these three initial requirements, a court must deny the request for a preliminary injunc-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 344760 (C.D.Ill.)
**(Cite as: 2012 WL 344760 (C.D.Ill.))**

tion. *Id.* If, however, the moving party meets the initial threshold, the court then "weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Id.* In balancing the harm to each party, a court should also consider whether the preliminary injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20 (2008); *Judge v. Quinn,* 612 F.3d 537, 546 (7th Cir.2010).

**A. Plaintiffs Cannot Establish a Likelihood of Success on the Merits of Their Claim.**

To establish a likelihood of success on the merits, Plaintiffs must demonstrate that they have "some prospect of prevailing on the merits" of their claim. *Hoosier Energy Rural Electric Cooperative, Inc. v. John Hancock Life Insurance Co.,* 582 F.3d 721, 730 (7th Cir.2009). While the UUW and AUUW statutes do not completely ban firearm possession, these statutes prevent Plaintiffs from carrying firearms outside of their homes or places of business except when the firearm is non-functioning, not immediately accessible, or unloaded and enclosed in a case. *See* 720 ILCS 5/24–1(a)(4). Plaintiffs contend they are likely to prevail on their challenge to the UUW and AUUW statutes because the Second Amendment gives them the right to carry firearms—concealed or otherwise—outside of their homes.

In determining whether Plaintiffs are likely to succeed on the merits of their claim, this Court will follow the framework for considering Second Amendment challenges that the Seventh Circuit adopted in *Ezell. See Ezell,* 651 F.3d at 701 (noting that the Third, Fourth, and Tenth Circuits have adopted a similar framework); *see also Justice v. Town of Cicero,* No. 10–C–5331, 2011 WL 5075870, at *9 (N.D.Ill. Oct. 25, 2011) (applying the framework adopted in *Ezell* ).

***5** First, "the threshold inquiry in some Second Amendment cases will be a 'scope' question: Is the restricted activity protected by the Second Amendment in the first place?" *Ezell,* 651 F.3d at 701. If Defendants can establish that the activity regulated by the challenged law is not within the scope of the Second Amendment, then "the activity is categorically unprotected, and the law is not subject to further Second Amendment review." *Id.* at 702–03.

If the regulated activity is protected, then the Court will engage in a "second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Id.* at 703. In the second inquiry, the Court must determine what level of constitutional scrutiny to apply. "[T]he rigor of this judicial review will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right." *Id.*[FN1]

> FN1. In *Ezell,* the court stated that its two-step approach to Second Amendment challenges did not undermine the court's earlier decisions in *United States v. Skoien,* 614 F.3d 638, 643 (7th Cir .2010), or *United States v. Williams,* 616 F.3d 685, 691–93 (7th Cir.2010), "both of which touched on the historical 'scope' question before applying a form of intermediate scrutiny." *Ezell,* 651 F.3d at 701.

Accordingly, this Court will first analyze whether the activity restricted by the UUW and AUUW statutes—carrying loaded, uncased, and immediately accessible firearms outside of one's home or place of business—is protected by the Second Amendment.

**1. The UUW and AUUW Statutes Do Not Restrict Activity Protected by the Second Amendment.**

Plaintiffs argue that the Second Amendment protects a general right to carry guns that includes a right to carry operable guns in public. However, neither the United States Supreme Court nor any United States Court of Appeals has recognized such a right.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Heller,* the Supreme Court held that the Second Amendment "protects the right to keep and bear arms for the purpose of self-defense" and that a District of Columbia law that "banned the possession of handguns in the home" violated that right. *McDonald,* 130 S.Ct. at 3021 (citing *Heller,* 554 U.S. 570). Writing for the majority in *Heller,* Justice Scalia extensively examined the text and historical background of the Second Amendment and found that the Second Amendment "guarantee[s] the individual right to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 344760 (C.D.Ill.)
**(Cite as: 2012 WL 344760 (C.D.Ill.))**

possess and carry weapons in case of confrontation" unconnected with service in a militia. 554 U.S. at 592. However, the Court's characterization of the right concluded with strong limiting language: "Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. For example, the Court explained, "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." *Id.* The Court further explained that although it did not undertake an "exhaustive historical analysis" of the full scope of the Second Amendment, "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626–27 (stating that this list of "presumptively lawful regulatory measures" is not intended to be exhaustive). Finally turning to the District of Columbia law at issue in the case, the Court concluded:

>  **\*6** In sum, we hold that the District's ban on handgun possession *in the home* violates the Second Amendment, as does its prohibition against rendering any lawful firearm *in the home* operable for purpose of immediate self-defense. Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it *in the home.*

*Heller,* 554 U.S. at 635 (emphasis added).

The Supreme Court's holding in *Heller* is narrow: that the Second Amendment gives qualified individuals (*i.e.* mentally competent persons who are not felons) the right to possess lawful firearms "in the home" for purposes of self-defense. *Id.* at 626, 635. The Court emphasized the limited nature of its holding, stating that "whatever else [the Second Amendment] leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms *in defense of hearth and home.* " *Id.* at 635 (emphasis added). The Seventh Circuit, in an *en banc* opinion, has stated that the language of *Heller* "warns readers not to treat *Heller* as containing broader holdings than the Court set out to establish: that the Second Amendment creates individual rights, one of which is keeping operable handguns at home for self-defense. What other entitlements the Second Amendment creates, and what regulations legislatures may establish, were left open." *Skoien,* 614 F.3d at 640.

In *McDonald,* a plurality of the Supreme Court found that the right to possess a handgun in the home for self-defense recognized in *Heller* was applicable to the states through the Due Process Clause of the Fourteenth Amendment. *McDonald,* 130 S.Ct. at 3050 ("In *Heller,* we held that the Second Amendment protects the right to possess a handgun in the home for the purpose of self-defense.... We therefore hold that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in *Heller.*").

Together, the *Heller* and *McDonald* opinions emphasize that the core of the Second Amendment right is the right of the individual to bear arms in the home for the purpose of self-defense. Neither *Heller* nor *McDonald* recognizes a Second Amendment right to bear arms outside of the home. To the contrary, the *Heller* Court specifically limited its holding to possession in the home and warned courts not to extend that holding beyond what the Court set out to establish. *Heller,* 554 U.S. at 626–27, 635; *see also Skoien,* 614 F.3d at 640.

The Seventh Circuit has not specifically considered the question of whether the Second Amendment right articulated in *Heller* includes a general right to bear arms outside of the home. Most recently, the court considered whether a city-wide ban on firing-range training, where such training was a prerequisite for lawful gun ownership, burdened the core of the Second Amendment right to possess firearms for self-defense in the home. *See Ezell,* 651 F.3d at 689–90. The court's finding that the ban burdened the core of the Second Amendment right was based on its reasoning that the ban, by effectively precluding lawful gun ownership, severely interfered with "the right to keep and bear arms for defense of self, family, and home" articulated in *Heller. Id.* at 704. The court did not make a finding regarding the scope of the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 344760 (C.D.Ill.)
**(Cite as: 2012 WL 344760 (C.D.Ill.))**

Second Amendment outside of the home. However, the Seventh Circuit's characterization of the scope of that right in *Ezell* and *Skoien* supports the conclusion that the Second Amendment right, as recognized by the Supreme Court, does not extend outside of the home. As noted earlier, the court in *Skoien* stated that the *Heller* decision set out a narrow holding: "that the Second Amendment creates individual rights, one of which is keeping operable handguns at home for self-defense." *Skoien,* 614 F.3d at 640.

**\*7** In concluding that the Second Amendment right in *Heller* is limited to the right to bear arms in the home for self-defense, this Court notes that many courts in other jurisdictions have reached a similar conclusion regarding the *Heller* decision. *See Piszczatoski v. Filko,* No. 10–06110, 2012 WL 104917, at \*1 (D.N.J. Jan. 12, 2012) (finding that the Second Amendment does not include a general right to carry handguns outside the home); *Kachalsky v. Cacace,* No. 10–cv–5413, 2011 WL 3962550, at \*19, \*23 (S.D.N.Y. Sept. 2, 2011) (stating that the *Heller* Court's "emphasis on the Second Amendment's protection of the right to keep and bear arms for the purpose of 'self-defense in the home' permeates the Court's decision and forms the basis for its holding" and finding that both concealed and open carry of firearms in public are "outside the core Second Amendment concern articulated in *Heller:* self-defense in the home"); *Osterweil v. Bartlett,* No. 1:09–cv–825, 2011 WL 1983340, at \*6 (N.D.N.Y. May 20, 2011); *Gonzales v. Village of West Milwaukee,* No. 09–cv–0384, 2010 WL 1904977, at \*4 (E.D.Wis. May 11, 2010) ("The Supreme Court has never held that the Second Amendment protects the carrying of guns outside the home."); *Moreno v. N.Y. City Police Department,* No. 10–cv–6269, 2011 WL 2748652, at \*3 (S.D.N.Y. May 7, 2011) (noting that "*Heller* has been narrowly construed, as protecting the individual right to bear arms for the specific purpose of self-defense within the home"); *United States v. Tooley,* 717 F.Supp.2d 580, 596 (S.D.W.Va.2010) ("[P]ossession of a firearm outside of the home or for purposes other than self-defense in the home are not within the 'core' of the Second Amendment right as defined by *Heller.* "); *People v. Aguilar,* 408 Ill.App.3d 136, 143 (2011) ("[T]he decisions in *Heller* and *McDonald* were limited to interpreting the [S]econd [A]mendment's protection of the right to possess handguns in the home, not the right to possess handguns outside the home."); *People v. Dawson,* 403 Ill.App.3d 499, 508 (2010) ("[T]he *Heller* Court ultimately limited its holding to the question presented—that the [S]econd [A]mendment right to bear arms protected the right to possess a commonly used firearm, in the home for self-defense purposes."); *Williams v. State,* 10 A.3d 1167, 1178 (Md.2011) ( "If the Supreme Court ... meant its holding [in *Heller* and *McDonald* ] to extend beyond home possession, it will need to say so more plainly."); *Little v. United States,* 989 A.2d 1096, 1101 (D.C.2010) (holding that because the appellant was not in his home, he was "outside of the bounds identified in *Heller, i.e.,* the possession of a firearm in one's private residence for self-defense purposes"); *Mack v. Unites States,* 6 A.3d 1224, 1236 (D.C.2010) (stating that "*Heller* did not endorse a right to carry weapons outside the home. Nor has the Court done so in its more recent decision in *McDonald.*"); *State v. Knight,* 218 P .3d 1177, 1189 (Kan.Ct.App.2009) (reasoning that a statute which criminalized the possession of a concealed firearm in public was outside the province of the Second Amendment, because the Supreme Court's decision in *Heller* "turned solely on the issue of handgun possession in the home"); *but see People v. Mimes,* 953 N.E.2d 55, 73 (Ill.App.Ct.2011) (finding that the Second Amendment right is not limited to the home because the "inherent right to self-defense" that is central to the *Heller* decision "does not disappear outside the home" but, nonetheless, holding that the challenged Illinois AUUW statute survives intermediate scrutiny and does not violate the Second Amendment).

**\*8** In addition to emphasizing that the core of the Second Amendment right is the right to bear arms in the home for the purpose of self-defense, the Supreme Court in *Heller* clearly affirmed the government's power to regulate and restrict possession of firearms outside of the home. *Heller,* 554 U.S. at 626–27 (approving of 19th-century prohibitions on carrying concealed weapons and stating that "nothing in our opinion should be taken to cast doubt ... on laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions on the qualifications on the commercial sale of arms"). The *Heller* Court's approval of 19th-century bans on concealed carry and other longstanding firearm regulations further indicates that *Heller* recognizes a Second Amendment right to bear arms that is specific to possession in the home for self-defense and does not extend to possession outside of the home. *See id.*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 344760 (C.D.Ill.)
**(Cite as: 2012 WL 344760 (C.D.Ill.))**

The Seventh Circuit and other courts have applied the *Heller* Court's language to uphold various federal gun laws, including bans on gun possession by certain types of criminal offenders and bans on possession of certain types of weapons. *See Skoien,* 614 F.3d at 639 (upholding 18 U.S.C. § 922(g)(9), which bans possession of firearms by a person convicted of a misdemeanor crime of domestic violence); *United States v. Yancey,* 621 F.3d 681, 682 (7th Cir.2010) (upholding 18 U.S.C. § 922(g)(3), which bans possession of firearms by certain users of unlawful controlled substances); *United States v. Williams,* 616 F.3d 685, 692–93 (7th Cir.2010) (upholding 18 U.S.C. § 922(g)(1), which bans possession of firearms by a convicted felon); *see also United States v. Booker,* 644 F.3d 12, 13 (1st Cir.2011) (upholding 18 U.S.C. § 922(g)(9)); *United States v. Chester,* 628 F.3d 673, 680 (4th Cir.2010) (same); *United States v. Reese,* 627 F.3d 792, 800–01 (10th Cir.2010) (upholding 18 U.S.C. § 922(g)(8), which bans possession of firearms by individuals subject to a domestic protection order); *United States v. Mazzarella,* 614 F.3d 85, 89 (3d Cir.2010) (upholding 18 U.S.C. § 922(k), which bans possession of firearms with an obliterated serial number).

Relying on the *Heller* Court's implicit approval of 19th-century laws prohibiting concealed carry of weapons (*see Heller,* 554 U.S. at 626), many courts have held that laws restricting or banning concealed carry of weapons outside of the home do not encroach upon activity protected by the Second Amendment. *See Kachalsky,* 2011 WL 3962550, at *23 (upholding New York Penal Law § 400.00(2)(f), which allows concealed carry permits to be issued only "when proper cause exists" and finding that both concealed and open carry of firearms in public are "outside the core Second Amendment concern articulated in *Heller:* self-defense in the home"); *United States v. Hart,* 726 F.Supp.2d 56, 60 (D.Mass.2011) ("*Heller* does not hold, nor even suggest, that concealed weapons laws are unconstitutional."); *Richards v. County of Yolo,* No. 2:09–cv–01235, 2011 WL 1885641, at *3 (E.D.Cal. May 16, 2011) (upholding a county ban on concealed carry because "the Second Amendment does not create a fundamental right to carry a concealed weapon in public"); *Dorr v. Weber,* 741 F.Supp.2d 993, 1005 (N.D.Iowa 2010) (finding that "a right to carry a concealed weapon under the Second Amendment has not been recognized to date"); *Mack,* 6 A.3d at 1236 (stating that "*Heller* did not endorse a right to carry weapons outside the home" and "did not recognize a right to carry concealed weapons"); *Knight,* 218 P.3d at 1190 (concluding that the *Heller* Court considered concealed firearms prohibitions to be "presumptively constitutional").

**\*9** Moreover, in *Kachalsky v. Cacace,* the Southern District of New York upheld New York's handgun licensing scheme, which allows issuance of a license to carry a handgun in public only after a licensing officer's discretionary determination that "proper cause exists for the issuance thereof," which New York state courts have interpreted to mean "a special need for self-protection distinguishable from that of the general community or of persons engaged in the same profession." *Kachalsky,* 2011 WL 3962550, at *1 (quoting N.Y.P.L. § 400.00(2)(f)). The court held that the Second Amendment right defined in *Heller* does not extend to invalidate regulations such as N.Y.P.L. Section 400.00(2)(f). *Kachalsky,* 2011 WL 3962550, at *20. The court explained that "the language of *Heller* makes clear that the Court recognized 'not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose,' 554 U.S. at 626, but rather a much narrower right—namely the 'right of law-abiding, responsible citizens to use arms in defense of hearth and home,' *id.* at 635." *Kachalsky,* 2011 WL 3962550, at *20. The court further stated that "*Heller's* limiting language makes clear that the Supreme Court did not disturb its prior ruling in *Robertson v. Baldwin,* 165 U.S. 275, 17 S.Ct. 326, 41 L.Ed. 715 (1897), where it 'recognized that the Second Amendment right to keep and bear arms is not infringed by laws prohibiting the carrying of concealed weapons.' " *Kachalsky,* 2011 WL 3962550, at *20 (quoting *Dorr,* 741 F.Supp.2d at 1005). Because New York's law did not interfere with the right of individuals to bear arms in the home for the purpose of self-defense, the court found that the law did not impose a burden on conduct falling within the scope of the Second Amendment and rejected the plaintiffs' challenge under the first prong of the two-prong Second Amendment analysis. *Kachalsky,* 2011 WL 3962550, at *23.

Additionally, the District of New Jersey recently heard a similar constitutional challenge to a New Jersey law governing issuance of permits to carry handguns outside of one's home or place of business. *See Piszczatoski,* 2012 WL 104917, at *1. The New

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 344760 (C.D.Ill.)
**(Cite as: 2012 WL 344760 (C.D.Ill.))**

Jersey law requires a permit applicant to demonstrate, among other things, a "justifiable need to carry a handgun," first to a police officer and then to a Superior Court judge. *Piszczatoski,* 2012 WL 104917, at *3. The plaintiffs argued that the law encroaches upon a fundamental right to carry operable handguns for self-defense under the Second Amendment. *Id.* The court upheld the law, finding that "[t]he Handgun Permit Law does not on its face burden protected conduct because the Second Amendment does not include a general right to carry handguns outside the home." *Piszczatoski,* 2012 WL 104917, at *1. The court reasoned that *Heller* "repeatedly and specifically limited itself to the home," and much of its reasoning "refers to the need for self-defense specifically in the home." *Piszczatoski,* 2012 WL 104917, at *7. The court concluded: "If the Supreme Court majority had intended to create a broader general right to carry for self-defense outside the home, *Heller* would have done so explicitly." *Id.*

***10** This Court agrees with the *Piszczatoski* court's conclusion that the Supreme Court in *Heller* and *McDonald* did not explicitly recognize a general right to carry firearms in public. The *Heller* Court's emphasis on the right to bear arms "in defense of hearth and home" and the Court's express approval of regulations prohibiting concealed carry of weapons in public reflect that the Court in *Heller* did not recognize a Second Amendment right to possess operable firearms in public. *Heller,* 554 U.S. at 635 (stating that "whatever else [the Second Amendment] leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."). Because the Supreme Court has not recognized such a right, the Illinois UUW and AUUW statutes' prohibition of carrying loaded, uncased, and immediately accessible firearms in public does not violate the Second Amendment as defined by the Supreme Court. The UUW and AUUW statutes, because they permit home possession, do not interfere with the core of the Second Amendment right, which is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller,* 554 U.S. at 635.

Because Illinois' UUW and AUUW statutes do not interfere with possession of arms in the home, these statutes are distinguishable from the regulation challenged in *Ezell.* In *Ezell,* the Seventh Circuit enjoined the City of Chicago from enforcing a ban on live ammunition firing ranges within the City where the City also mandated firing-range training as a prerequisite to lawful gun ownership. *Ezell,* 651 F.3d at 689–90. The *Ezell* court found that because *Heller* and *McDonald* established that the right to possess firearms for self-defense in one's home is a core Second Amendment right, there is implicitly "a corresponding right to acquire and maintain proficiency in [firearm] use." *See Ezell,* 651 F.3d at 704. Because the range ban severely encroached on "an important corollary to the meaningful exercise of the core right to possess firearms for self-defense," the court applied a heightened scrutiny analysis and concluded that the plaintiffs' Second Amendment claim had a strong likelihood of success on the merits. *See Ezell,* 651 F.3d at 708–10.

The ordinance challenged in *Ezell* implicated the core of the Second Amendment right to possess firearms in the home for self-defense in a way that the Illinois UUW and AUUW statutes do not. The ordinance in *Ezell* prohibited citizens from satisfying a prerequisite to lawful gun ownership and, thereby, severely encroached upon the right to possess guns for purposes of self-defense in the home guaranteed by *Heller. See Ezell,* 651 F .3d at 708. By contrast, the instant UUW and AUUW statutes do not limit possession of weapons for the purpose of self-defense in the home and only restrict possession outside of the home under limited circumstances. *See* 720 ILCS 5/24–1(a)(4), (10); 720 ILCS 5/24–1 .6(a). Additionally, unlike the ordinance at issue in *Ezell,* neither the UUW statute nor the AUUW statute burdens anything that could be considered a necessary corollary to that right because the statutes do not, for example, prevent qualified individuals from purchasing a firearm, obtaining proficiency in firearm use, or transporting a firearm. *See Ezell,* 651 F.3d at 708–10. Therefore, the UUW and AUUW statutes do not infringe upon the core Second Amendment right recognized by the Supreme Court in *Heller. See Heller,* 554 U.S. at 635.

***11** This Court finds further support for its conclusion in recent decisions of the Illinois Appellate Court, which has also concluded that *Heller* and *McDonald* affirm a Second Amendment right to bear arms in the home but not outside of the home. *See People v. Williams,* No. 1–09–1667, 2011 WL 6351861, at *4 (Ill.App.Ct. Dec. 15, 2011) (finding that the AUUW statute "does not implicate the fundamental right announced by *Heller* and ... *McDonald,*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 344760 (C.D.Ill.)
**(Cite as: 2012 WL 344760 (C.D.Ill.))**

the right to possess a loaded handgun in the home for self-protection"); *Aguilar,* 408 Ill.App.3d at 143; *Dawson,* 403 Ill.App.3d at 508; *but see Mimes,* 953 N.E.2d at 73 (finding that the Second Amendment right as defined by *Heller* and *McDonald* is not limited to the home but ultimately holding that the AUUW statute's ban on the carrying of an uncased, loaded, and accessible firearm in public nevertheless passed constitutional scrutiny). The Illinois Appellate Court has held repeatedly that the Illinois UUW and AUUW statutes do not violate the Second Amendment. *See Williams,* 2011 WL 6351861, at *2 (holding that the AUUW statute did not violate the defendant's Second Amendment rights); *People v. Montyce H.,* No. 1–10–1788, 2011 WL 5903448, at *5 (Ill.App.Ct. Nov. 18, 2011) (same); *Mimes,* 953 N.E.2d at 77 (same); *People v. Ross,* 407 Ill.App.3d 931, 939–40 (2011) (same); *Aguilar,* 408 Ill.App.3d at 142–50 (same); *Dawson,* 403 Ill.App.3d at 510 (holding that U.S. Supreme Court cases "do not define the fundamental right to bear arms to include activity barred by the AUUW statute").

This Court concludes that the Illinois UUW and AUUW statutes do not infringe upon a core right protected by the Second Amendment. Further, the Supreme Court has not recognized a right to bear firearms outside the home and has cautioned courts not to expand on its limited holding. *See Heller,* 554 U.S. at 635 (holding only that a ban that prohibits competent individuals from possessing operable handguns for self-defense in their homes violated the Second Amendment). Rather, the Supreme Court has validated the government's prerogative to implement firearm prohibitions. *See id.* at 626–27 (stating that "nothing in our opinion should be taken to cast doubt ... on laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions on the qualifications on the commercial sale of arms"). Firearm regulation is the prerogative of legislatures, subject only to constitutional dictates judged by the courts. The absence of any controlling authority which finds that the UUW or AUUW statutes violate the Second Amendment prevents Plaintiffs from showing any likelihood of success on the merits.

**2. The UUW and AUUW Statutes Survive Constitutional Scrutiny.**

Alternatively, assuming, *arguendo,* that there is a right to bear arms outside of the home, such a right is not a core Second Amendment right as defined by the *Heller* Court, which defined the core of the right as the right to bear arms in the home for self-defense. *See Heller,* 554 U.S. at 635; *see also Skoien,* 614 F.3d at 640. However, even if this Court were to assume that such a right exists and that the UUW and AUUW statutes interfere with that right, Plaintiffs would still be unable to show a likelihood of success on the merits of their claim because the UUW and AUUW statutes survive constitutional scrutiny.

*12 This Court notes that the Supreme Court has not articulated the appropriate level of scrutiny that courts must apply to Second Amendment challenges, but the Supreme Court has indicated that rational basis review is not appropriate. *See Heller,* 554 U.S. at 629 n. 27 ("Obviously, [a rational basis] test could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or the right to keep and bear arms."). As discussed earlier, the Seventh Circuit has stated that the level of scrutiny to be applied "will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right." *Ezell,* 651 F.3d at 703, 708. The court explained that "laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified" than those placing a "severe burden" on the right. *Ezell,* 651 F.3d at 708.

The Seventh Circuit's approach explains why the court applied heightened, but "not quite strict," scrutiny in the *Ezell* decision but applied only intermediate scrutiny in the *Skoien* decision. In *Skoien,* an en banc decision, an individual asserted that 18 U.S.C. § 922(g)(9) violated his Second Amendment right to bear arms because it barred him from possessing a weapon on account of his conviction for misdemeanor domestic violence. *Skoien,* 614 F.3d at 639. The court applied intermediate scrutiny and upheld the law, finding that the goal of the law, "preventing armed mayhem," was an important governmental objective and the government had established a substantial relation between the statute and its objective. *Skoien,* 614 F.3d at 641–42. In *Ezell,* the Seventh Circuit enjoined the City of Chicago from enforcing a ban on live ammunition firing ranges within the City where the City also mandated firing-range training as a prerequisite to lawful gun ownership. *Ezell,* 651 F.3d at 689–90. Because the range ban severely encroached

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 344760 (C.D.Ill.)
**(Cite as: 2012 WL 344760 (C.D.Ill.))**

on "an important corollary to the meaningful exercise of the core right to possess firearms for self-defense," the court found that the City's ban was subject to a heightened scrutiny analysis—one that was "more rigorous" than the intermediate scrutiny applied in *Skoien* but was "not quite" strict scrutiny. *See Id.* at 708. The *Ezell* court emphasized that heightened scrutiny was appropriate because the plaintiffs' claim, unlike the claim in *Skoien,* was brought by a "law-abiding, responsible citizen" and involved "the central self-defense component of the right" as described in *Heller,* 554 U.S. at 635. *Ezell* 651 F.3d at 708.

However, the heightened scrutiny analysis applied in the *Ezell* case is not the appropriate standard to apply in this case because the Illinois UUW and AUUW statutes, which do not prohibit home possession, do not come as close to the core of the Second Amendment right as the law challenged in *Ezell.* In *Ezell,* the range ban infringed upon the core of the right because it prohibited citizens from satisfying a prerequisite to lawful gun ownership—thereby preventing citizens from lawfully possessing guns in the home for self-defense. *See Ezell,* 651 F.3d at 708. By contrast, the UUW and AUUW statutes do not restrict possession of weapons for the purpose of self-defense in the home and only restrict possession outside of the home under limited circumstances. *See* 720 ILCS 5/24–1(a)(4), (10); 720 ILCS 5/24–1.6(a). Additionally, unlike the ordinance at issue in *Ezell,* neither the UUW statute nor the AUUW statute burdens a necessary corollary to that right because the statutes do not, for example, prevent qualified individuals from purchasing a firearm, transporting a firearm, or obtaining proficiency in firearm use. *See Ezell,* 651 F.3d at 708–10 (finding that a city ordinance that banned firing ranges while simultaneously requiring firing-range training as a prerequisite to lawful firearm possession burdened a "necessary corollary" to the right to bear arms in the home for self-defense). Accordingly, the UUW and AUUW statutes are not subject to the heightened level of scrutiny applied in *Ezell. See Ezell,* 651 F .3d at 703.

**\*13** Because neither the heightened scrutiny applied in *Ezell* nor rational basis review is the appropriate standard, this Court will apply intermediate scrutiny in this case. This Court notes that a majority of courts considering Second Amendment challenges since the *Heller* decision have applied intermediate scrutiny. *See Skoien,* 614 F.3d at 641–42 (applying intermediate scrutiny to 18 U .S.C. § 922(g)(9), which bars possession of a weapon by individuals convicted of misdemeanor domestic violence); *see also Mazzarella,* 614 F.3d at 89 (applying intermediate scrutiny to a law prohibiting possession of handguns with obliterated serial numbers); *Chester,* 628 F.3d at 680 (applying intermediate scrutiny to 18 U.S.C. § 922(g)); *Reese,* 627 F.3d at 800–01 (same).

In applying intermediate scrutiny, this Court will consider: (1) whether the contested law serves an important governmental objective; and (2) whether the statute is substantially related to that governmental objective. *See Skoien,* 614 F.3d at 641. In determining whether such a substantial relationship exists, this Court may consider both logic and data. *See id.* at 642 (finding that "both logic and data establish[ed] a substantial relationship" between the statute and the governmental objective at issue).

Illinois' UUW statute prohibits individuals from bearing firearms outside of one's home, legal dwelling, or place of business, except under certain circumstances. *See* 720 ILCS 5/24–1(a)(4). The statute provides, among other things, that individuals with valid Firearm Owner's Identification ("FOID") cards may lawfully possess firearms in public so long as the firearm is broken down in a non-functioning state, not immediately accessible, or unloaded and enclosed in a case. *See* 720 ILCS 5/24–1(a)(4)(iii). The AUUW statute makes it a felony to possess a firearm outside of one's home, legal dwelling, or place of business when one of the following factors is present: "(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; or (B) the firearm possessed was uncased, unloaded and the ammunition for the weapon was immediately accessible at the time of the offense...." 720 ILCS 5/24–1.6(a)(3)(A), (B).

Defendants' asserted basis for enacting the UUW and AUUW statutes is public safety. *See* Defs.' Resp. to Pls.' Mot. (d/e 26) at 13. In *Skoien,* the Seventh Circuit recognized that public safety is a valid governmental interest. *Skoien,* 614 F.3d at 641–42. The court specifically stated that "no one doubts that the goal of § 922(g), preventing armed mayhem, is an important governmental objective." *Id.* at 642. As such, the first factor in the intermediate scrutiny test—whether the challenged law serves an important

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 344760 (C.D.Ill.)
**(Cite as: 2012 WL 344760 (C.D.Ill.))**

governmental objective—is satisfied for both the UUW and AUUW statutes.

The second factor—whether the statute is substantially related to an important governmental interest—must also be satisfied. Defendants assert that the UUW and AUUW statutes are substantially related to the government's interest in public safety because the statutes make it "more difficult to discharge firearms in public, thereby reducing the risk that guns will fire to deadly effect, either purposefully or accidentally." See Defs.' Resp. to Pls.' Mot. at 13. Defendants also argue that empirical evidence supports their assertion that the UUW and AUUW statutes are related to public safety goals, citing preliminary studies that indicate that the passage of "right to carry" laws in other states corresponds with a measurable increase in crime. See id. (citing John J. Donohue, *Guns, Crime and the Impact of State Right to Carry Laws,* 73 Fordham L.Rev. 623, 630–39 (2004); *Concealed Carry Killers,* Violence Policy Center (2009), http://www.vpc.org/ccwkillers.htm).

**\*14** This Court need not decide whether a ban on the possession of loaded, uncased, and accessible firearms in public truly reduces the risk of gun violence in public. This Court need only determine whether there is a substantial relationship between the UUW and AUUW statutes and the statutes' intended effect of ensuring public safety. Under intermediate scrutiny, the fit between the challenged law and the law's objective must be "reasonable, not perfect." *Reese,* 627 F.3d 792, 801 (quoting *Marzzarella,* 614 F.3d at 98); *see also Mimes,* 953 N.E.2d at 76.

This Court finds that Defendant's assertions and supporting evidence are sufficient to establish a substantial relationship between the means employed by the UUW and AUUW statutes and the government's asserted interest in public safety. One may reasonably conclude that prohibiting the possession of loaded, uncased, and immediately accessible firearms in public will make it more difficult for individuals to discharge firearms in public and will thereby diminish the public's risk of injuries and death by gunfire. *See Skoien,* 614 F.3d at 641–42 (stating that courts may look to logic in order to find a substantial relationship between a regulation and its objective); *see also Montyce H.,* 2011 WL 5903448, at \*6–7 (citing *Mimes,* 953 N.E.2d at 76–77 (applying intermediate scrutiny and finding that the fit between the challenged provisions of the AUUW statute and the government's important interest in public safety is "absolutely reasonable" in part because the statute's prohibition of carrying loaded and accessible firearms in public "is justified by the potential deadly consequences to innocent members of the general public when someone carrying a loaded and accessible gun is either mistaken about his need for self-defense or just a poor shot")). Empirical evidence supports this conclusion. *See* Defs.' Resp to Pls.' Mot. at 13 (citing *Donahue,* at 630–39; Violence Policy Center, *supra* ). Because there is a substantial relationship between Illinois' public safety objective and the statutes at issue, this Court finds the UUW and AUUW statutes are constitutional under an intermediate scrutiny analysis. *See Skoien,* 614 F.3d at 641. Plaintiffs cannot, therefore, show any prospects of prevailing on the merits of their challenge to the UUW and AUUW statutes, and their preliminary injunction motion must be denied. *See Girl Scouts of Manitou Council, Inc.,* 549 F.3d at 1086 ("If the court determines that the moving party has failed to demonstrate any one of [the] three threshold requirements, it must deny the [preliminary] injunction.").

**B. Inadequacy of a Legal Remedy, Irreparable Harm, and Balancing of Harms**

Because this Court has determined that Plaintiffs have failed to demonstrate a likelihood of success on the merits, this Court may deny the injunction without analyzing the remaining preliminary injunction factors. *See Girl Scouts of Manitou Council, Inc.,* 549 F.3d at 1086. Nevertheless, this Court will briefly address the remaining threshold factors—inadequacy of a legal remedy and irreparable harm. *See id.* Rather than analyze inadequacy of a legal remedy and irreparable harm as separate factors, courts may consider the two factors jointly. *See Ezell,* 651 F.3d at 697. This Court will do so and then briefly discuss the balancing of harms factor.

**\*15** The Second Amendment's central component is the right to possess firearms for self-defense in the home, and infringements of this right cannot be compensated by money damages. *Ezell,* 651 F.3d at 699 (citing *Heller,* 554 U.S. at 592–95). As such, harm resulting from a Second Amendment violation is "properly regarded as irreparable and having no adequate remedy at law." *Ezell,* 651 F.3d at 699.

Had Plaintiffs been able to prove a violation of

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 344760 (C.D.Ill.)
**(Cite as: 2012 WL 344760 (C.D.Ill.))**

their Second Amendment right to bear arms, Plaintiffs would have necessarily been able to establish irreparable harm and a lack of adequate legal remedy. However, Plaintiffs' inability to prove a Second Amendment violation prevents them from establishing these elements.

Furthermore, the State undoubtedly has the authority to regulate firearms in order to ensure public safety. *See Heller,* 554 U.S. at 626–27. Striking down the UUW and AUUW statutes would jeopardize Illinois' public safety objectives. By contrast, continued enforcement of the statutes poses no harm to Plaintiffs, as the statutes do not violate Plaintiffs' Second Amendment rights. The public's significant interest in general safety outweighs Plaintiffs' interest in carrying firearms outside of the home for Plaintiffs' own safety. To the extent it is necessary to analyze factors aside from the likelihood of success on the merits, the Court finds the foregoing preliminary injunction factors militate against issuing injunctive relief.

### V. MOTION TO DISMISS

A motion to dismiss is subject to review under the standard set forth in Federal Rule of Civil Procedure 12(b)(6). When reviewing a motion to dismiss, a court looks at the sufficiency of the complaint and not whether the plaintiff has a winning claim. *See McCormick v. City of Chicago,* 230 F.3d 319, 323–26 (7th Cir.2000). Still, a complaint must do more than merely "avoid foreclosing possible bases for relief." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir.2008) (internal quotation marks omitted). A complaint "must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Id.* (internal quotation marks omitted). "Rule 12(b)(6) should be employed only when the complaint does not present a legal claim." *Smith v. Cash Store Management, Inc.,* 195 F.3d 325, 327 (7th Cir.1999) (internal quotation marks omitted).

Plaintiffs' Amended Complaint contains a single cause of action. It alleges that the UUW and AUUW statutes violate Plaintiffs' Second Amendment right to carry firearms, concealed or otherwise, outside their homes. *See* Am. Compl. at 10. Because this Court has determined that individuals do not have a Second Amendment right to bear arms outside of the home, this Court finds that the UUW and the AUUW statutes—which only regulate firearm possession outside of the home—do not infringe on Plaintiffs' Second Amendment rights. *See Heller,* 554 U.S. at 635 (holding only that the Second Amendment affords individuals a right to bear arms "in the home" and explaining that the Second Amendment "elevates above all other interests the right of ... citizens to use arms in defense of hearth and home"). Therefore, Plaintiffs' Amended Complaint does not present a viable Second Amendment claim.

**\*16** Alternatively, as discussed earlier in this Opinion, even if this Court were to assume that there is a Second Amendment right to bear arms outside of the home and the challenged statutes interfere with that right, the statutes survive constitutional scrutiny. Consequently, Plaintiffs' Second Amendment challenge to the UUW and AUUW statutes is not sufficient to state a claim. *See* Fed.R.Civ.P. 12(b)(6). Plaintiffs' claim must be dismissed. *See Tamayo,* 526 F.3d at 1084.

### VI. CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Preliminary and/or Permanent Injunction (d/e 13) is DENIED and Defendants' Motion to Dismiss (d/e 24) is GRANTED. This case is CLOSED.

IT IS SO ORDERED.

C.D.Ill.,2012.
Moore v. Madigan
--- F.Supp.2d ----, 2012 WL 344760 (C.D.Ill.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.