IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TOM G. PALMER, et al.,                    )       Case No. 09-CV-1482-FJS
                                          )
            Plaintiffs,                   )       RESPONSE TO DEFENDANTS'
                                          )       NOTICE OF SUPPLEMENTAL
            v.                            )       AUTHORITY
                                          )
DISTRICT OF COLUMBIA, et al.,             )
                                          )
            Defendants.                   )
_____ )

PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE
OF SUPPLEMENTAL AUTHORITY

On February 6, 2012, Defendants cited to this Court the recent decision in *Moore* v.

*Madigan*, No. 3:11-CV-3134, 2012 U.S. Dist. LEXIS 12967 (C.D. Ill., February 3, 2012), *appeal*

*pending*, No. 12-1269 (7th Cir. , filed February 3, 2012).

The decision in *Moore* is poorly reasoned and in plain conflict with Supreme Court and

Seventh Circuit precedents.

1.  *Moore* relied heavily upon the Supreme Court's direction of relief that the District of

Columbia "must issue [Heller] a license to carry [his handgun] *in the home*." *Moore*, at *15-*16

(quoting *District of Columbia* v. *Heller*, 554 U.S. 570, 635 (2008)) (adding emphasis).

The District Court misunderstood the Supreme Court's reference.

Heller challenged, among other provisions, former D.C. Code § 22-4504(a) (2008), which

had provided that carrying handguns *inside one's home* without a permit was a misdemeanor

offense (in contrast to the felony offense of carrying a gun in public). Heller did *not* seek a permit to

publicly carry a handgun. *Parker* v. *District of Columbia*, 478 F.3d 370, 400 (D.C. Cir. 2007),

*aff'd sub nom Heller*. The reference to an in-home carry permit merely tracked Heller's prayer for relief. *See Heller*, 554 U.S. at 630-31.[1]

The D.C. Circuit would be familiar with this aspect of *Heller*.

2.  Most curiously, *Moore* repeatedly cited to the following passage for the proposition that the Second Amendment is limited to the home:

> [T]he Second Amendment creates individual rights, one of which is keeping operable handguns at home for self-defense. What other entitlements the Second Amendment creates, and what regulations legislatures may establish, were left open.

*United States* v. *Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc); *see Moore*, at *16-*17, *19.

The Seventh Circuit's holding that the right to have a gun at home is but "one of" the Second Amendment rights, and that *Heller* "left open" the existence of others, hardly supports a conclusion that a home-bound right is the only one that might exist—it negates the proposition. After all, the Supreme Court held that the "policy choices [taken] off the table" by the Second Amendment "*include* the absolute prohibition of handguns held and used for self-defense in the home," *Heller*, 554 U.S. at 636 (emphasis added). "[S]ince this case represents this Court's first in-depth examination of the Second Amendment, one should not expect it to clarify the entire field . . . ." *Id.* at 635.

3.  *Moore* likewise offered an unlikely reading of the Seventh Circuit's decision in *Ezell* v. *City of Chicago*, 651 F.3d 684 (7th Cir. 2011), offering that *Ezell* "did not make a finding regarding the scope of the Second Amendment outside of the home." *Moore*, at * 18.

Not so. In *Ezell*, the Seventh Circuit explicitly found a "right to acquire and maintain proficiency in [the] use [of firearms]." 651 F.3d at 704. It reached this conclusion in answering the

---

[1]The District of Columbia repealed the provision imposing criminal liability for carrying a gun inside the home without a permit.

question of "whether range training is categorically unprotected by the Second Amendment. *Heller*

and *McDonald* suggest to the contrary." *Id*. Studying the topic, this Court rejected the notion that

"target practice is wholly outside the Second Amendment as it was understood when incorporated as

a limitation on the States." *Id*. at 706. It thus enjoined Chicago's ban on gun ranges as "a serious

encroachment on the right to maintain proficiency in firearm use," *id*. at 708, a right that obviously

few if any people in Chicago can exercise at home.

4.  *Moore*'s reliance on *Heller*'s recitation of presumptively lawful restrictions, for the

proposition that a complete ban on carrying guns outside the home would be constitutional, is a non-

sequitur. History might inform additional presumptively lawful restrictions beyond what the

Supreme Court enumerated. *Heller*, 554 U.S. at 627 n.26. Yet the absence from the Supreme

Court's list of what would be an obvious restriction, coupled with the admonition that "we do not

undertake an exhaustive historical analysis today of the full scope of the Second Amendment," *id*. at

626, indicates that the right is not so easily limited to the home.

5.  Also erroneous, plainly, is *Moore*'s statement that *McDonald* applied against the states

only "the right to possess a handgun in the home for self-defense." *Moore*, at *17.  *McDonald*'s

holding is otherwise: "in [*Heller*], we *held* that the Second Amendment protects the right to keep

and bear arms for self-defense . . . we hold that the Second Amendment right is fully applicable to

the States." *McDonald*, 130 S. Ct. at 3026  (emphasis added); *id*. at 3058 (Second Amendment

"fully applicable to the States") (Thomas, J., concurring in part and concurring in judgment).

*Heller*'s holding that the right to bear arms is defined as the right to "carry" them is binding

on this Court. That holding was based on an extensive review of historical authorities, including

numerous early cases, state constitutions, and treatises that referenced and/or specifically applied the

right to bear arms outside the home. There is absolutely nothing in the text, history, or tradition of the Second Amendment that would counsel its being limited to the home—and overwhelming evidence to the contrary.

Rejecting the collectivist vision of the Second Amendment that was based on a popular misreading of *United States* v. *Miller*, 307 U.S. 174 (1939), the Supreme Court made clear that it would not  acquiesce in the elimination of Second Amendment rights by a too-casual reading of its precedent, no matter how frequently lower courts repeated the error. *Heller*, 554 U.S. at 624 n.24. Decisions such as  *Moore* will not be sustained on appeal.

Dated:  March 7, 2012                           Respectfully submitted,

                                                Alan Gura (D.C. Bar No. 453449)
                                                Gura & Possessky, PLLC
                                                101 N. Columbus Street, Suite 405
                                                Alexandria, VA 22314
                                                703.835.9085/Fax 703.997.7665


                                        By:  /s/Alan Gura_____
                                                Alan Gura

                                                Attorney for Plaintiffs