IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOM G. PALMER, et al., ) | Case No. 09-CV-1482-FJS |
| ) | |
| Plaintiffs, ) | NOTICE OF SUPPLEMENTAL |
| ) | AUTHORITY |
| v. ) | |
| ) | |
| DISTRICT OF COLUMBIA, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

NOTICE OF SUPPLEMENTAL AUTHORITY

Two recent decisions regarding the scope of Second Amendment rights are directly relevant to this matter. They warrant review.

1.   *Woollard* v. *Sheridan*

On March 2, 2012, the United States District Court for the District of Maryland struck down the discretionary aspects of Maryland's regulatory scheme for licensing the carrying of handguns for self-defense. Requiring individuals seeking to bear arms prove a sufficient reason to do so was held incompatible with the Second Amendment right to bear arms. *Woollard* v. *Sheridan*, No. L-10-2068, 2012 U.S. Dist. LEXIS 28498 (D. Md. March 2, 2012). The *Woollard* decision is attached hereto as Exhibit A.

*Woollard* observed that the Second Amendment is *not* limited to the home, as *Heller*'s language regarding the home as a place of especially heightened Second Amendment interests inherently means that Second Amendment interests also exist outside the home. *Woollard* also found instructive the Supreme Court's holding that the right to bear arms extends to protection from "public violence," that it secures such plainly out-of-home activity as hunting and militia training, and that the right is rooted in the interest in self-defense, which applies wherever the "self" may be. *Woollard*, at \*16-\*17.

*Woollard* also interpreted the Supreme Court's admonition that restrictions on the carrying of guns in "sensitive places" are "presumptively lawful" as confirmation that there is an actual right to carry guns, which is curtailed in some locations. *Woollard*, at *20-*21 & n. 8.

*Woollard* concluded: "[T]he Court finds that the right to bear arms is not limited to the home. The signposts left by recent Supreme Court and Fourth Circuit case law all point to the conclusion that Woollard's 'claim to self-defense—asserted by him as a law-abiding citizen . . . — does implicate the Second Amendment, albeit subject to lawful limitations.'" *Woollard*, at *21 (quotation omitted).

The Court then struck down Maryland's requirement that applicants for handgun carry licenses show a "good and substantial need" to exercise their right to bear arms, Md. Code Ann., Pub. Safety § 5-306(a)(5)(ii).

> Those who drafted and ratified the Second Amendment surely knew that the right they were enshrining carried a risk of misuse, and states have considerable latitude to channel the exercise of the right in ways that will minimize that risk. *States may not, however, seek to reduce the danger by means of widespread curtailment of the right itself.* "[E]ven the most legitimate goal may not be advanced in a constitutionally impermissible manner." *Carey* v. *Brown*, 447 U.S. 455, 464-65 (1980).
>
> At bottom, this case rests on a simple proposition: If the Government wishes to burden a right guaranteed by the Constitution, it may do so provided that it can show a satisfactory justification and a sufficiently adapted method. The showing, however, is always the Government's to make. *A citizen may not be required to offer a "good and substantial reason" why he should be permitted to exercise his rights. The right's existence is all the reason he needs.*

*Woollard*, at *33-*34 (emphasis added).

The District's law here at issue is even more restrictive than Maryland's unconstitutional provision. At least in theory, if only very rarely in practice, Marylanders could obtain a permit to carry a handgun by satisfying the authorities of a "good and substantial reason" for exercising their constitutional rights. District residents do not even have that hope.

Here, the District's law is at maximum breadth. The City Council simply rejects a portion of the Bill of Rights to which it objects on public policy grounds. Although this law would fail Second Amendment scrutiny under intermediate review just as did the Maryland provision at issue in *Woollard*, there is no need to apply any particular means-ends scrutiny at all. Rather, just as the D.C. Circuit and Supreme Court disposed of the city's unlamented functional firearms ban, here, it is enough to recognize the existence of the right itself.

2.  *United States* v. *Weaver*

On March 6, 2012, the United States District Court for the Southern District of West Virginia denied a motion to dismiss indictments under 18 U.S.C. §§ 371 and 922(h) for conspiring to possess and possessing firearms while employed by a prohibited person. *United States* v. *Weaver*, No. 2:09-CR-0222, 2012 U.S. Dist. LEXIS (S.D. W. Va. March 6, 2012). The *Weaver* decision is attached hereto as Exhibit B.

In *Weaver*, the government alleged that individuals carrying firearms in public were acting under the employ of a prohibited person, as part of a motorcycle gang. The Defendants argued they had a Second Amendment right to carry guns for self-defense, and that Section 922(h) violated that right on a number of theories. The government responded by arguing, *inter alia*, that because the conduct occurred outside the home, the Second Amendment did not apply.

Although the Court upheld the indictments against a Second Amendment challenge, it began the analysis by forcefully rejecting the government's claim that the right was inapplicable.

> The Supreme Court itself has acknowledged a Second Amendment right to protect oneself not only from private violence, but also from public violence . . . The *Heller* Court additionally mentioned militia membership and hunting as key purposes for the existence of the right to keep and bear arms. Confining the right to the home would unduly eliminate such purposes from the scope of the Second Amendment's guarantee.

*Weaver*, at \*10-\*11 (citations omitted).

"Furthermore, the Court [found] entirely persuasive" Judge Niemeyer's separate opinion in *United States* v. *Masciandaro*, 638 F.3d 458 (4th Cir. 2011), that would have found the existence of a Second Amendment right to carry a gun in public for self-defense. *Weaver*, at *11-*13. "The Court joins in Judge Niemeyer's conclusion and holds that the Second Amendment, as historically understood at the time of ratification, was not limited to the home." *Weaver*, at *13. A footnote immediately followed:

> The fact that courts may be reluctant to recognize the protection of the Second Amendment outside the home says more about the courts than the Second Amendment. Limiting this fundamental right to the home would be akin to limiting the protection of First Amendment freedom of speech to political speech or college campuses.

*Weaver*, at *13-*14 n.7.

*Weaver* demonstrated that the enjoyment of a right to bear arms by law-abiding, responsible people is not incompatible with laws addressing the use of firearms by a criminal enterprise. But Plaintiffs are not interested in securing the operation of a motorcycle gang. They want only to exercise a fundamental constitutional right.

Dated:  March 7, 2012                     Respectfully submitted,

                                                              Alan Gura (D.C. Bar No. 453449)
                                                              Gura & Possessky, PLLC
                                                              101 N. Columbus Street, Suite 405
                                                              Alexandria, VA 22314
                                                              703.835.9085/Fax 703.997.7665

                                                 By:  /s/Alan Gura
                                                             Alan Gura

                                                 Attorney for Plaintiffs