UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

TOM G. PALMER, *et al.*                              )
                                                     )
                        Plaintiffs,                  )
                                                     )
        v.                                           )        Civil Action No. 09-01482 (FJS)
                                                     )
DISTRICT OF COLUMBIA, *et al.*,                      )
                                                     )
                        Defendants.                  )
_____)

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM

Pursuant to Fed. R. Civ. P. 56(b) and LCvR 7(a), defendants the District of Columbia and

Chief Cathy Lanier (collectively "the District"), by and through undersigned counsel,

respectfully submit this Supplemental Memorandum in support of their Motion.

## I. Introduction

The parties completed dispositive briefing here over two-and-a-half years ago. And while

no facts material to the instant matter have changed, nor have any of the District's arguments, the

District files the instant memorandum to show that compelling, persuasive case law that has

arisen in the intervening period supports the District's motion. Of those courts to have addressed

the issue, a clear majority find that the Second Amendment does *not* encompass a general right

to carry a firearm in public.

Moreover, the briefing from two pending Seventh Circuit appeals—and the extensive

historical analysis conducted as part of that briefing—demonstrate that the right to carry an

operable firearm in public is not within the scope of the Second Amendment.

<u>II. Discussion</u>

Illinois, like the District of Columbia, generally prohibits the carrying of operable firearms in public, as does the City of Chicago. Recent, unsuccessful challenges to Illinois law demonstrate that the Second Amendment does *not* encompass a right to carry an operable firearm in public, as this Court should find in the instant matter.

As the District has previously noted, *see* Doc. No. 27, the United States District Court for the Central District of Illinois, in *Moore v. Madigan*, ___ F.Supp.2d ___, 2012 WL 344760 (C.D. Ill. Feb. 3, 2012), upheld against Second Amendment challenge Illinois statutes which prohibit the carrying of loaded and operable firearms in public.[1] The United States District Court for the Southern District of Illinois did the same in *Shepard v. Madigan*, ___ F.Supp.2d ___, 2012 WL 1077146 (S.D. Ill. Mar. 30, 2012). *See* Doc. No. 32.

*Moore* and *Shepard* are currently on appeal to the Seventh Circuit. *See* No. 11-3134, No. 11-405 (7th Cir.).[2] Those district court decisions—and the briefs in support thereof—demonstrate that the District's similar restrictions survive Second Amendment challenge.

Illinois has generally prohibited the open carrying of operable firearms since 1961, some 18 years after the enactment of the District's prohibition. Illinois Br. at 3; *cf. Brown v. United States*, 66 A.2d 491, 493 (App. D.C. 1949) ("[T]he original statute as passed in 1932 forbade only the carrying of an unlicensed pistol when concealed on the person. It was eleven years

---

[1]     Counsel for the instant plaintiffs is also counsel for the plaintiffs in *Moore*.

[2]     The appeals are not consolidated, but the Seventh Circuit "ordered that arguments in the two appeals be held before the same panel on the same day and . . . indicated that defendants were free to file a single, consolidated brief in the two appeals." Brief of Defendants-Appellees, *Moore v. Madigan*, Nos. 12-1269 and 12-1788 (7th Cir.) ("Illinois Brief"), at 2 (May 9, 2012) (copy attached as Ex. No. 1). Argument has been scheduled for June 8, 2012. *See* Order (Doc. No. 17), *Moore v. Madigan*, No. 12-1269 (7th Cir. May 9, 2012).

before Congress by amendment included the open carrying of an unlicensed pistol in the statute.") (citing 57 Stat. 586, ch. 296 (Nov. 4, 1943)).

In an extensive historical exegesis, Illinois and *amici* demonstrate that the Second Amendment's right to keep and bear arms, as understood at the time of ratification, did not include a right to carry firearms in public for self-defense. Illinois Br. at 8–14; Brief *Amici Curiae* of the City of Chicago, *et al.*, *Moore v. Madigan*, Nos. 12-1269 and 12-1788 (7th Cir.) ("Chicago Br."), at 7–14 (May 16, 2012) (copy attached as Ex. No. 2).[3]

As early as 1328, the Statute of Northampton stated that no man should "go nor ride armed by night or by day in fairs, markets, nor in the presence of justices or other ministers, nor in no part elsewhere . . . ." 2 Edw. III, ch. 3; Illinois Br. at 10; Chicago Br. at 9; Brady Center Br. at 16.[4] *See also* A Statute forbidding Bearing of Armour, 7 Edw. III, c. 2 (1313) ("The King forbids the coming armed to Parliament, &c.").[5] A subsequent statute prohibited the possession

---

[3]     Joining Chicago on the brief were the Legal Community Against Violence, the Major Cities Chiefs Association, the Board of Education of the City of Chicago, and the Chicago Transportation Authority. *Id*. Also submitting a brief as *amici curiae* were Brady Center to Prevent Gun Violence, International Brotherhood of Police Officers, Major Cities Chiefs Association, National Association of Women Law Enforcement Executives, National Black Police Association, and Police Foundation ("Brady Center Br.") (copy attached as Ex. No. 3).

[4]     Many of the historic sources cited are available online through Google Books at http://books.google.com. An extensive discussion of the understanding and interpretation of the Statute of Northampton, in the context of the Second Amendment, may also be found in Patrick J. Charles, *The Faces of the Second Amendment Outside the Home: History Versus Ahistorical Standards of Review*, 60 CLEV. ST. L. REV. (forthcoming 2012), *available online at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1938950&download=yes (last visited May 22, 2012) and Patrick J. Charles, *Scribble Scrabble, the Second Amendment, and Historical Guideposts: A Short Reply to Lawrence Rosenthal and Joyce Lee Malcolm*, 105 NORTHWESTERN UNIV. L. REV. COLLOQUY 227 (2011), *available online at* http://www.law.northwestern.edu/lawreview/colloquy/2011/6/LRColl2011n6Charles.pdf (last visited May 22, 2012).

[5]     *See* http://www.legislation.gov.uk/aep/Edw2/7/0/contents (last visited May 24, 2012). The District notes that the instant plaintiffs have previously argued that "[t]he ancient laws of England or of other States are irrelevant." Doc. No. 15 at 3.

of guns by anyone "not having lands and tenements or some other estate of inheritance in his own or his wife's right of the clear yearly value of one hundred pounds . . . other than the son and heir apparent of an esquire or other person of higher degree  . . . ." An Act for the Better Preservation of the Game, 22 & 23, Charles II, c. 25, § 3 (1670), in Sir William David Evans, 7 *A Collection of Statutes* 224 (London, 3d ed. Thomas Blenkarn 1836).[6]

Centuries of British case law confirm that it was illegal to carry arms in public. *See* Illinois Br. at 10 (citing *Sir John Knight's Case* 87 Eng. Rep. 75, 76 (K.B. 1686), in which the Chief Justice noted that not only was the public carrying of weapons prohibited by the Statute of Northampton, it was "likewise a great offence at the common law."); *Id.* at 11 (citing *Semayne's Case*, 77 Eng. Rep. 194, 195 (K.B. 1603) ("every one may assemble his friends and neighbors to

---

[6]     In 1603, the English and Scottish crowns were unified under James I (ruling as James VI in Scotland). *See, generally*, *The Court of King James the First, by Godfrey Goodman, Bishop of Gloucester* (John S. Brewer, ed., London, Richard Bentley, 1839) (*available online at* http://archive.org/details/courtkingjamesf00goodgoog). Prior to unification, King James signed a number of measures prohibiting the public carrying of firearms in Scotland without his express permission. *See* Concerning shooting and bearing of culverins and dags, Scot. Parl. Acts iii 29, c.23 (Dec. 1567) ("no manner of person or persons of whatsoever estate, condition or degree they be of bear, wear or use any culverins, dags, pistols or any other such firearm upon their persons or in their company with them, privately or openly, outwith houses . . . under the pain [of cutting off their right hand]"); The [penalty] of bearers, users or shooters [with pistols], culverins, handguns or engines of fire work, Scot. Parl. Acts iv 134, c.19 (Dec. 16, 1597) ("the contravenors thereof to be punished according to the [penalties] contained therein, and moreover by confiscation of all their goods moveable . . . the one half thereof to appertain to the apprehender for his travails and labours and the other half to be applied to our sovereign lord's use"); Regarding bearers and shooters with hackbuts and pistols, Scot. Parl. Acts iv 228, c.14 (Nov. 15, 1600) ("the bearers and wearers of hackbuts and pistols and other firearms who have neither committed slaughter nor mutilation or other odious violence therewith, but only borne and worn them upon their persons or in their companies contrary to his highness's laws and acts of parliament, may be [pursued criminally] providing always that such as shall be pursued . . . shall not incur the corporal punishment prescribed by the former acts by amputation of the right hand, but only to be punished by warding of their persons, escheat of their goods movable, or payment of such a pecuniary penalty and sum of money"). The statutes of James VI of Scotland may be found (and searched) online at *http://www.rps.ac.uk/static/statutes_jamesvi.html* (last visited May 23, 2012).

defend his house against violence: but he cannot assemble them to go with him to the market, or elsewhere for his safeguard against violence"). *See also* Lucilius A. Emery, "The Constitutional Right to Keep and Bear Arms," 28 HARVARD L. REV. 473 (Mar. 1915) ("The guaranty does not appear to have been of a common-law right, like that of trial by jury.").

Similarly, British law-enforcement officers have been authorized for hundreds of years to arrest anyone found carrying arms in public. *See* Illinois Br. at 12:

> [I]f any Person shall Ride or go Arm'd offensively, before Her Majesties Justices, or any other her Officers or Ministers, in the time of executing their Office, or in Fairs or Markets or elsewhere, by Day or by Night, in affray of Her Majesties Subjects, and Breach of the Peace; or wear or carry any Daggers, Guns or Pistols Charged; the Constable upon Sight thereof, may seize and take away their Armour and Weapons, and have them apprized as forfeited to Her Majesty; and may also carry the Persons wearing them before a Justice, to give Surety to keep the Peace.

*Id.* (quoting Robert Gardiner, *The Compleat Constable* 18 (London, Tho. Bever 3d ed. 1708) (citing, *inter alia*, 2 Edw. III, ch. 3)). *See also* Chicago Br. at 12.

This was the understanding that prevailed at the time of the founding of the American colonies, as evidenced by early statutes and the common law. *See* Illinois Br. at 13–14; Chicago Br. at 10–12.

As the above discussion makes clear, there was no common-law right to carry operable firearms in public. Hence, because constitutional rights "are enshrined with the scope they were understood to have when the people adopted them [,]" *Heller*, 554 U.S. at 634–35, the Second Amendment does not encompass the right to the public carrying of operable firearms.

In addition to *Moore* and *Shepard*, most courts to have faced the question have declined to find that the Second Amendment encompasses a right to carry an operable firearm in public. *See Moore*, 2012 WL 344760, at * 7 (collecting cases); *Piszczatoski v. Filko*, ___ F.Supp.2d ___, 2012 WL 104917, *1 (D.N.J. Jan. 12, 2012); *Jennings v. McCraw*, No. 5:10-cv-00141-C (N.D.

Tex. Jan. 19, 2012), *slip op.* at 12 ("the Second Amendment does not confer a right that extends beyond the home").[7] *See also Williams v. State*, 10 A.3d 1167, 1177 (Md. 2011) ("[I]t is clear that prohibition of firearms in the home was the gravamen of the certiorari questions in both *Heller* and [*McDonald v. Chicago*, ___ U.S. ____, 130 S. Ct. 3020 (June 28, 2010)] and their answers. If the Supreme Court, in this dicta, meant its holding to extend beyond home possession, it will need to say so more plainly."), *cert. denied*, ___ U.S. ___, 132 S. Ct. 93 (Oct. 3, 2011).

The District of Columbia Court of Appeals has similarly interpreted the Supreme Court's analysis, declining to extend the scope of the Second Amendment beyond the home. *Sims v. United States*, 963 A.2d 147, 150 (D.C. 2008); *Mack v. United States*, 6 A.3d 1224, 1236 (D.C. 2010); *Little v. United States*, 989 A.2d 1096, 1101 (D.C. 2010).

## III. Conclusion

The right to carry an operable firearm in public is not within the scope of the Second Amendment. And even if it were, a right to carry an operable firearm in public is surely not within the 'core' of the right enunciated in *Heller*, 554 U.S. at 634–35. Thus, even if Second Amendment scrutiny were applied (and the District contends it need not be), the District's prohibition on public carrying survives such scrutiny.[8]

---

[7]     Decision available online at http://www.bradycenter.org/xshare/1.19.12_Order.pdf (last visited May 22, 2012).

[8]     "At its core, the Second Amendment protects the right of law-abiding citizens to possess non-dangerous weapons for self-defense in the home." *United States v. Marzzarella*, 614 F.3d 85, 92 (3rd Cir. 2010) (footnote omitted); *accord United States v. Masciandaro*, 638 F.3d 458, 470 (4th Cir. 2011) ("as we move outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self defense."); *United States v. Reese*, 627 F.3d 792, 800 (10th Cir. 2010). *See also United States v. Booker*, 644

As the Fourth Circuit wisely noted, the danger of firearms "would rise exponentially as one moved the right from the home to the public square. If ever there was an occasion for restraint, this would seem to be it. There is much to be said for a course of simple caution." *Masciandaro*, 638 F.3d at 476. Since *McDonald*, the Supreme Court has repeatedly declined the opportunity to decide whether the scope of the Second Amendment extends beyond the home,[9] or provide any further clarification of the extent of the Second Amendment.[10]

Because the Second Amendment does not protect the right to carry operable firearms in public, this Court should reject the instant challenge.

DATE: May 24, 2012              Respectfully submitted,

                              IRVIN B. NATHAN
                              Attorney General for the District of Columbia

                              ELLEN A. EFROS
                              Deputy Attorney General
                              Public Interest Division


                              _____/s/ Grace Graham_____
                              GRACE GRAHAM, D.C. Bar No. 472878
                              Chief, Equity Section
                              441 Fourth Street, NW, 6th Floor South
                              Washington, DC 20001
                              Telephone: (202) 442-9784

---

F.3d 12, 25 n.17 (1st Cir. 2011) ("While we do not attempt to discern the "core" Second Amendment right vindicated in *Heller*, we note that *Heller* stated that the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.").

[9]     *See Williams v. Maryland*, *cert. denied*, ___ U.S. ___, 132 S. Ct. 93 (Oct. 3, 2011); *Masciandaro v. United States*, *cert. denied*, 132 S. Ct. 756 (Nov. 28, 2011).

[10]     *See Fincher v. United States*, *cert. denied*, 555 U.S. 1174 (Feb. 23, 2009); *Marzzarella v. United States*, *cert. denied*, 131 S.Ct. 958 (Jan 10, 2011); *Reese v. United States*, *cert. denied*, 131 S.Ct. 2476 (May 16, 2011); *Skoien v. United States*, *cert. denied*, 131 S.Ct. 1674 (Mar. 21, 2011); *Delacy v. California*, *cert. denied*, 132 S.Ct. 1092 (Jan. 17, 2012); *Chein v. California*, *cert. denied*, 132 S.Ct. 755 (Nov. 28, 2011).

Facsimile: (202) 741-8892
Email: grace.graham@dc.gov


_____/s/ Andrew J. Saindon_____
ANDREW J. SAINDON, D.C. Bar No. 456987
Assistant Attorney General
Equity Section I
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 730-1470
E-mail: andy.saindon@dc.gov