No. 12-1269

═══════════════════════════════

In the United States Court of Appeals
for the Seventh Circuit

═══════════════════════════════

MICHAEL MOORE, CHARLES HOOKS, PEGGY FECHTER, JON MAIER,
SECOND AMENDMENT FOUNDATION, INC., AND ILLINOIS CARRY,

Plaintiffs-Appellants,

v.

LISA MADIGAN, in her Official Capacity as Attorney General of the
State of Illinois, and HIRAM GRAU, in his Official Capacity as
Director of the Illinois State Police,

Defendants-Appellees.

───────────────────────────────

Appeal from a Judgment of the United States District Court for the
Central District of Illinois, The Hon. Sue E. Myerscough, District Judge
District Court No. 3:11-CV-3134

APPELLANTS' REPLY BRIEF

David G. Sigale*
Law Firm of David G. Sigale, P.C.
739 Roosevelt Road, Suite 304
Glen Ellyn, IL 60137
630.452.4547/630.596.4445


*Counsel of Record

Alan Gura
Gura & Possessky, PLLC
101 N. Columbus St., Ste.405
Alexandria, VA 22314
703.835.9085/703.997.7665


David D. Jensen
David Jensen PLLC
111 John Street, Suite 230
New York, NY 10038
212.380.6615/917.591.1318

CORPORATE DISCLOSURE STATEMENT
Fed. R. App. Proc. 26.1, Circuit Rule 26.1

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Michael Moore, Charles Hooks, Peggy Fechter, Jon Maier, Second Amendment Foundation, Inc., Illinois Carry.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Gura & Possessky, PLLC
Law Firm of David G. Sigale, P.C.
David Jensen PLLC

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and

None.

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

None.

/s/ David G. Sigale_____
David G. Sigale

# TABLE OF CONTENTS

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

I.   THE SECOND AMENDMENT SECURES A FUNDAMENTAL
     RIGHT TO CARRY ARMS IN PUBLIC FOR SELF-DEFENSE.. . . . . . . . . .  2

II.  THE PROHIBITION AGAINST CARRYING "DANGEROUS AND UNUSUAL
     WEAPONS" REFERRED TO THE MANNER OF CARRYING WEAPONS, AND
     WAS NOT UNDERSTOOD TO BAN ALL GUN CARRYING.. . . . . . . . . . . 5

III. WHILE THE GOVERNMENT MAY REGULATE THE PUBLIC CARRYING OF
     FIREARMS, IT MAY NOT MAINTAIN THE COMPLETE PROHIBITION
     THAT IS CURRENTLY IN FORCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.  BECAUSE THE GOVERNMENT IS ENGAGING IN PROHIBITION RATHER
     THAN REGULATION, ITS MEANS-END/INTEREST BALANCING
     ARGUMENT IS MISPLACED AND INAPPROPRIATE.. . . . . . . . . . . . . . 12

V.   IF ANY LEVEL OF SCRUTINY IS APPROPRIATE FOR ANALYZING THE
     STATE'S CATEGORICAL BAN, IT IS STRICT SCRUTINY OR "NOT
     QUITE" STRICT SCRUTINY, BUT NOTHING LESS RIGOROUS. . . . . . . 16

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

Cases

*Bateman* v. *Perdue*, No. 5:10-CV-265-H,
    2012 U.S. Dist. LEXIS 47336 (E.D.N.C. Mar. 29, 2012). . . . . . . . 4

*Cohens v. Virginia*,
    19 U.S. (6 Wheat.) 264 (1821) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*District of Columbia* v. *Heller*,
    554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Ezell* v. *City of Chicago*,
    651 F.3d 684 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . 2, 8, 15, 17

*Heller* v. *District of Columbia*,
    2011 U.S. App. LEXIS 20130 (D.C. Cir. Oct. 4, 2011) . . . . . . . . . 19

*McDonald* v. *City of Chicago*,
    130 S. Ct. 3020 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 14

*People v. Aguilar*,
    944 N.E.2d 816 (Ill. App. 1st Dist. 2011). . . . . . . . . . . . . . . . . . . . 10

*People v. Bush*,
    414 Ill. 441 (1953). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*People v. Mimes*,
    953 N.E.2d 55 (Ill. App. 1st Dist. 2011). . . . . . . . . . . . . . . . . . . . 10

*Presser* v. *Illinois*,
    116 U.S. 252 (1886). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Rex v. Knight*,
    3 Mod. Rep. 117, 87 Eng. Rep. 73 (K.B. 1686). . . . . . . . . . . . . . 6, 7

*Robertson* v. *Baldwin*,
 165 U.S. 275 (1896). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Chester*,
 628 F.3d 673 (4th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Cruikshank*,
 92 U.S. 542 (1876) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Marzzarella*,
 614 F.3d 85 (3rd Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Masciandaro*,
 638 F.3d 458 (4th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Reese*,
 627 F.3d 792 (10th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Skoien*,
 614 F.3d 638 (7th Cir. 2010) (en banc). . . . . . . . . . . . . . . 2, 12, 16

*United States v. Weaver*, No. 2:09-CR-00222,
 2012 U.S. Dist. LEXIS 29613 (S.D. W. Va. Mar. 7, 2012). . . . . 4, 5

*United States v. Williams*,
 616 F.3d 685 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Yancey*,
 621 F.3d 681 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Woollard* v. *Sheridan*, No. L-10-2068,
 2012 U.S. Dist. LEXIS 28498 (D. Md. Mar. 2, 2012). . . . . . . . . . 4

## Statutes and Rules

2 Edw. 3, ch. 3 (1328). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

20 Rich. 2, ch. 1 (1396). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

7 Rich. 2, ch. 13 (1383). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

720 ILCS 5/7-1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## Other Authorities

Brief of Brady Center, as *Amicus Curiae*,
     *United States* v. *Skoien*, No. 08-3770 . . . . . . . . . . . . . . . . . . . . . . . 19

David I. Caplan*, The Right of the Individual to Bear Arms:
     A Recent Judicial Trend,* 4 DET. C. L. REV. 789 (1982). . . . . . . . 7

G. Jacob, NEW LAW DICTIONARY (10th Ed. 1782). . . . . . . . . . . . . . . . . . . 7

Oral Argument, Seventh Cir. Nos. 08-4241, 4243, 4244,
     available at http://www.ca7.uscourts.gov/tmp/
     IC11NVL1.mp3 (last visited May 23, 2012). . . . . . . . . . . . . . . . 13

William Blackstone, *Commentaries* (1769).. . . . . . . . . . . . . . . . . . . . . . 8

APPELLANTS' REPLY BRIEF

SUMMARY OF ARGUMENT

Much, if not most of the material submitted by Defendants and their *amici* has already been anticipated—and fully addressed—in Plaintiffs' opening brief. The remainder is clearly foreclosed by circuit and Supreme Court precedent.

At bottom, Defendants and their *amici* simply cannot refute the plain fact that the right to "bear" arms, as historically understood in this country, includes the right to carry handguns for defensive purposes outside one's home. That right is the starting point of any legislative program designed to *regulate* the right in the interest of public safety—but it is the end of Defendants' total prohibition on bearing arms.

Because the right to carry defensive arms outside the home is within the Second Amendment's original public meaning, and as "the Second Amendment right is fully applicable to the States," *McDonald* v. *City of Chicago*, 130 S. Ct. 3020, 3026 (2010), Defendants' policy choice to totally prohibit the public carrying of firearms is "off the table." *District of Columbia* v. *Heller*, 554 U.S. 570, 636 (2008).

1

The statistical debate, though interesting, is entirely irrelevant. It does not matter whether the people's policy choice is alleged to be unwise or outdated. This Court cannot utilize means-ends scrutiny—a mechanism for weighing a regulation against a right—to determine whether a right exists in the first place. To the extent any level of scrutiny could be applied to analyze a complete prohibition of a constitutional right, the standard of review is strict scrutiny, or the "not quite" strict scrutiny used in *Ezell* v. *City of Chicago*, 651 F.3d 684 (7th Cir. 2011).

ARGUMENT

I.  THE SECOND AMENDMENT SECURES A FUNDAMENTAL RIGHT TO CARRY ARMS IN PUBLIC FOR SELF-DEFENSE.

Nothing in Defendants' brief, or those of their *amici*, supports the notion that *Heller* expressly limited the Second Amendment right to the home. That claim has already been addressed, Plaintiffs' Br., at 12-14, 29-30, and in any event is foreclosed by an *en banc* opinion of this Court that explicitly stated that the question of Second Amendment rights outside the home was "left open" by the Supreme Court. *United States* v. *Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc).

2

For purposes of this reply, it only bears emphasizing that the Supreme Court does not read *Heller*'s holding as being limited to the home:

> [I]n [*Heller*], we *held* that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense, *and* we struck down a District of Columbia law that banned the possession of handguns in the home.

*McDonald*, 130 S. Ct. at 3026 (emphasis added). Certainly, the Supreme Court never excluded "bear" from the status enjoyed by "keep." *Self-defense*, not home possession, is the "*central component* of the right itself." *Heller*, 554 U.S. at 599. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *Id.* at 592. Self-defense is often exercised outside one's home, as by "bearing" arms.

Plaintiffs filed their opening brief on March 2, 2012. By that month's end, three federal courts acknowledged that the Second Amendment secures the right to carry handguns in public for self-defense. The District of Maryland held that handgun carry licensees cannot be required to demonstrate a "good and substantial reason" for carrying a handgun, as "the right to bear arms is not limited to the home."

3

*Woollard* v. *Sheridan*, No. L-10-2068, 2012 U.S. Dist. LEXIS 28498, at

21 (D. Md. Mar. 2, 2012), *appeal pending*, No. 12-1437 (4th Cir. filed

Apr. 2, 2012) (citation omitted). Days later, the Southern District of

West Virginia concluded that "the Second Amendment, as historically

understood at the time of ratification, was not limited to the home."

*United States* v. *Weaver*, No. 2:09-CR-00222, 2012 U.S. Dist. LEXIS

29613,at *13 (S.D. W. Va. Mar. 7, 2012) (citation and footnote omitted).

Later that month, the Eastern District of North Carolina struck down

that state's laws forbidding the carrying or transportation of firearms

and ammunition during declared "states of emergency."

> It cannot be seriously questioned that the emergency declaration
> laws at issue here burden conduct protected by the Second
> Amendment. Although considerable uncertainty exists regarding
> the scope of the Second Amendment right to keep and bear arms,
> it undoubtedly is not limited to the confines of the home.

*Bateman* v. *Perdue*, No. 5:10-CV-265-H, 2012 U.S. Dist. LEXIS 47336,

at *10-*11 (E.D.N.C. Mar. 29, 2012).

Of course, there is no denying the truth of the matter that some

courts have reached a contrary conclusion. Yet one federal court went

so far as to declare that "[t]he fact that courts may be reluctant to

recognize the protection of the Second Amendment outside the home

says more about the courts than the Second Amendment." *Weaver*, 2012 U.S. Dist. LEXIS 29613 at *14 n.7. Plaintiffs submit that the arguments for erasing a textually-enumerated right are unpersuasive.

## II. THE PROHIBITION AGAINST CARRYING "DANGEROUS AND UNUSUAL WEAPONS" REFERRED TO THE MANNER OF CARRYING WEAPONS, AND WAS NOT UNDERSTOOD TO BAN ALL GUN CARRYING.

Defendants do not disprove the basic point, documented exhaustively in Plaintiffs' opening brief, at 36-40, that the common law did not condemn the mere carrying of "dangerous and unusual weapons," but only that carrying of weapons that was done in an unacceptably dangerous or threatening manner.

Defendants argue that based on the Statute of Northampton, 2 Edw. 3, ch. 3 (1328), pre-Second Amendment English common-law shows a history of the people being forbidden from carrying arms. Indeed, the Statute of Northampton was re-enacted in 1396 by King Richard II (7 Rich. 2, ch. 13 (1383); 20 Rich. 2, ch. 1 (1396)). *Amicus* City of Chicago cites to Lord Edward Coke and William Hawkins for the same proposition. Chicago Br. at 10.

But notwithstanding the Statute of Northampton's language, English common law did not treat the matter so cut-and-dry, and

5

interpreted the Statute in a way that clearly favored the right of the citizen to carry arms. In *Rex v. Knight*, 3 Mod. Rep. 117, 87 Eng. Rep. 73 (K.B. 1686), the defendant was charged with violating the Statute of Northampton by "walk[ing] about the streets armed with guns, and go[ing] into the church of St. Michael, in Bristol, in the time of divine service, with a gun, to terrify the King's subjects." *Id*. at 118, 87 Eng. Rep. at 74. Under the judge's instruction that an essential element of the crime of violating the Statute of Northampton was "go[ing] armed to terrify the King's subjects," the jury acquitted the accused. *Id*. at 117, 87 Eng. Rep. at 74. The court further noted that the Statute of Northampton was "but an affirmance" of the common law. Id. at 118, 87 Eng. Rep. at 74.

Interestingly, the same court alleged an elitist statutory policy that the carrying of arms implied that "the King [was] not able or willing to protect his subjects." *Id*. In other words, the carrying of arms was not forbidden as a matter of public safety or crime reduction, but because doing so might hurt the King's public image. Of course, the King wanted to preserve his own power, and looking weak may have encouraged revolt or usurpation. Nevertheless, the court imposed a

6

judicial gloss on the Statute, that for a conviction the prosecution must prove that the carrying of arms was "to terrify the King's subjects" *Id.*, or "with evil intent" – "malo animo." *Rex v. Knight*, Comb. at 39, 90 Eng. Rep. at 330, in order to preserve the common law principle of allowing "Gentlemen to ride armed for their Security." *Id.* Since the term "Gentleman" included "one, who, without any title, bears a coat of arms, or whose ancestors have been freemen," G. Jacob, NEW LAW DICTIONARY (10th Ed. 1782)), this would include in America all members of the militia; that is, "all citizens capable of bearing arms." *See Presser* v. *Illinois*, 116 U.S. 252, 265 (1886)); *see also* David I. Caplan, *The Right of the Individual to Bear Arms: A Recent Judicial Trend,* 4 DET. C. L. REV. 789 (1982). Again, Plaintiffs have cited numerous American sources employing this rule, many of them referenced in *Heller*.

Defendants also seek support in Blackstone, but their reliance is misplaced. While Blackstone spoke of English citizens using force as a last resort, the fact remains that English citizens *were* allowed to use deadly force. Whether someone was required to attempt retreat before implementing deadly force naturally presupposes that such persons were allowed to carry the instruments of deadly force in the first place.

7

*See*, *e.g.*, 4 William Blackstone, *Commentaries*, p.184 (1769).  Put simply, Defendants are arguing the wrong issue, and the issue they are arguing supports Plaintiff's position.

Unhelpfully, *amicus* Chicago cites to ancient statutes that had nothing to do with alleged crime or self-defense, but only with prohibiting the shooting of firearms as a means of fire prevention, or to prevent clearly gratuitous or unsafe firearms use. This material did not sway this Court in *Ezell*, 651 F.3d at 705, nor was it useful in *Heller*, 554 U.S. at 631.

Of course, *none* of this refutes the Supreme Court's statement in *Heller* that "we find that [the elements of the operative clause of the Second amendment] guarantee the individual right to possess *and carry* weapons in case of confrontation. This meaning is strongly confirmed by the historical background of the Second Amendment." *Heller*, 554 U.S. at 592 (emphasis added).

III.   WHILE THE GOVERNMENT MAY REGULATE THE PUBLIC CARRYING OF FIREARMS, IT MAY NOT MAINTAIN THE COMPLETE PROHIBITION THAT IS CURRENTLY IN FORCE.

Defendant's argument regarding using self-defense as a last resort may be an issue for another day, but any requirements or restrictions

of when a person is allowed to use deadly force in self-defense is a regulation on the use of a firearm. Plaintiffs have never disputed that the State may pass constitutional regulations regarding firearms. *See*, *e.g.*, *Heller*, 554 U.S. at 595 (right to carry arms for *any sort* of confrontation not protected) (emphasis in original). In fact, as to the self-defense issue, Illinois already has laws on the books. 720 ILCS 5/7-1(a) states that:

> A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony.

Additionally, Illinois has no requirement of retreat. *See. e.g.*, *People v. Bush*, 414 Ill. 441 (1953).[1]  This law renders Defendants' "stand your ground" argument superfluous as well as misplaced, as well as any sensationalistic references to the lamentable Zimmerman-Martin affair *See* Brady Br. at 8.

---

[1] Illinois also allowed the open carry of firearms until 1961, when the Criminal Code of that year was enacted.

Defendants and their *amici* focus on previous cases upholding prohibitions on concealed carry. *See*, *e.g. Robertson* v. *Baldwin*, 165 U.S. 275, 281-282 (1896). But they do not effectively address the heavily-documented legal reality that historic prohibitions on concealed carrying of arms was only upheld as a manner regulation, with courts frequently noting that a total ban on carrying would not be allowed. Plaintiffs' Br., 31-35.

Even the Illinois cases cited by *amicus* Chicago do not support Defendants' position. In the first, *People v. Mimes*, 953 N.E.2d 55 (Ill. App. 1st Dist. 2011), the Court acknowledged that *Heller* was not limited to the home. In the other, *People v. Aguilar*, 944 N.E.2d 816 (Ill. App. 1st Dist. 2011), *petition for leave to appeal allowed*, 949 N.E.2d 1099 (Ill. 2011), the dissent had to be the lone voice correctly noting that *Heller* was not limited to the home and that the AUUW statute at issue violated the Second Amendment, but more notably, the Illinois Supreme Court granted a Petition for Leave to Appeal on December 4, 2011, so that case is still pending.

Further, Plaintiff's Amended Complaint in this case does not solely challenge the State's ban on concealed carry. In fact, Plaintiffs'

Complaint at Paragraph 4 specifically states:

> Plaintiffs do not seek to establish how the State of Illinois should
> regulate the carry of handguns in public. For example, Plaintiffs do
> not seek to establish that the State should enact a licensing
> program, or any particular licensing program, nor do Plaintiffs
> contend that the State should in some other manner amend its laws.

SA at 2.

Further, the Plaintiffs' prayer for relief, in relevant part, requests

the following:

> declaratory judgment that 720 ILCS 5/24-1(a)(4), 720 ILCS 5/24-
> 1(a)(10), and 720 ILCS 5/24-1.6(a) are invalid in that and to the
> extent that they are applied to prohibit private citizens who are
> otherwise qualified to possess handguns from carrying handguns for
> self-defense;

Separate Appendix, p.10.

Should the State decide, as a policy matter, that the way it would

prefer to regulate the carrying of firearms is by allowing open public

carry, then that would remove the complete prohibition on public

carrying now in place. Plaintiffs suspect the State and Defendants

would not wish to implement such a policy choice, and do not wish an

open carry environment, but the purpose of this lawsuit is to end

unconstitutional conduct, not to tell the State how to regulate. In the

meantime, this Court should not be swayed by Defendants' and *amici*'s

11

repeated assertions that this case is about concealed carry, because it is not. The Second Amendment secures a right to carry firearms. Defendants ban this activity completely, and that is not constitutional.

IV.  BECAUSE THE GOVERNMENT IS ENGAGING IN PROHIBITION RATHER THAN REGULATION, ITS MEANS-END/INTEREST BALANCING ARGUMENT IS MISPLACED AND INAPPROPRIATE.

As noted above, the *Heller* Court noted that the right to carry arms for *any sort* of confrontation is not protected (*Heller*, 554 U.S. at 595), but the corollary is that the right to carry arms for *some sort* of confrontation **is** protected. The Court did not define the parameters of this protection ("But since this case represents this Court's first in-depth examination of the Second Amendment, one should not expect it to clarify the entire field . . . ." *Id.* at 635), but *Heller* adamantly did not limit the right to the home ("We described [in *United States* v. *Cruikshank*, 92 U.S. 542 (1876) the right protected by the Second Amendment as 'bearing arms for a lawful purpose' " *Heller*, 554 U.S. at 620); *See also Skoien*, 614 F.3d at 640 (7[h] Cir. 2010) (". . . the Second Amendment creates individual rights, one of which is keeping operable handguns at home for self-defense.")), Defendants' and *amici*'s misstatements to the contrary.

The Defendants and *amici* argue about policy decisions of the Illinois lawmakers, and ask this Court to simply defer to their judgment. However, this sort of deferential treatment to a prohibition of the exercise of fundamental rights is not allowed (". . . the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller*, 554 U.S. at 636).

Judge Easterbrook expressed the point well during the *McDonald* arguments—and counsel for Chicago agreed:

| Judge Easterbrook: | Do you think the outcome of this case turns on whether John Lott is right in "More Guns, Less Crime?" |
|---|---|
| Ms. Loose: | I do not, your honor. |
| Judge Easterbrook: | I can't imagine that as a subject of constitutional adjudication. |

Oral Argument, Seventh Cir. Nos. 08-4241, 4243, 4244, at 28:11, available at http://www.ca7.uscourts.gov/tmp/IC11NVL1.mp3 (last visited May 23, 2012).

It is undisputed the State may regulate the use of firearms within constitutional boundaries. But a prohibition dressed up as a regulation is still a prohibition, and that the State may not do. The Defendants,

13

plus the Brady Center and other *amici*, may wish to engage this Court in a debate about social science, but that is only (perhaps) relevant when discussing a regulation on protected activity. Since that is not what this case is about, the (disputed) social science and statistics have no place in the discussion.[2]  The Second Amendment does not "require judges to assess the costs and benefits of firearms restrictions and thus to make difficult empirical judgments in an area in which they lack expertise." *McDonald*, 130 S. Ct. at 3050.

*Amicus* Brady Center cites to *United States* v. *Masciandaro*, 638 F.3d 458, 475 (4th Cir. 2011), and how it declined to find carrying part of the Second Amendment right for fear that "miscalculating" would lead to a hypothetical "tragic act of mayhem." However, the

---

[2] This is partly so Judges, who may not be social science experts on the issue at hand, do not have the burden of weighing the back-and-forth of disputed studies touted by one side or the other.  *Amicus* Brady Center argues about the NRA's citations to studies that contradict and refute its own cited studies: "That is an argument for a legislature, not a court, and even if it were relevant the NRA's claims and studies are deeply flawed."  *Amicus* Brief of Brady Center, *et al* at 10.  If it is not an argument for a Court, why is *amicus* nonetheless urging this Court's deference to its own studies, and rejection of NRA's studies?

*Masciandaro* Court, in declining to get involved in the issue for fear of the consequences, and in deferring to the denial of constitutional rights, did so without apparent concern for what "miscalculating" would mean to the crime victim who was unable to defend herself or her loved ones from armed attack. Apparently, the fear of the hypothetical criminal was enough for the Fourth Circuit to defer to the government. In so doing, that Court ignored the Supreme Court's statements in *Cohens* v. *Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821) that even when a case approaches the edge of the Constitution the Court, with all its doubts and difficulties, must accept jurisdiction and exercise its best judgment.

Of course, the residents of Chicago are closer to the exercise of Second Amendment rights precisely because this Court followed *Cohens* and did not give into the speculative fear-mongering offered by the City of Chicago. *See Ezell,* 651 F.3d at 709:

> In the district court, the City presented no data or expert opinion to support the range ban, so we have no way to evaluate the seriousness of its claimed public-safety concerns. Indeed, on this record those concerns are entirely speculative and, in any event, can be addressed through sensible zoning and other appropriately tailored regulations.

This Court has already shown its willingness to address Second Amendment concerns, and should follow its analysis in *Ezell* in this case.

V.   IF ANY LEVEL OF SCRUTINY IS APPROPRIATE FOR ANALYZING THE STATE'S CATEGORICAL BAN, IT IS STRICT SCRUTINY OR "NOT QUITE" STRICT SCRUTINY, BUT NOTHING LESS RIGOROUS.

Contrary to the arguments advanced by *amicus* Brady Center, *Heller* did not reject heightened scrutiny for analyzing Second Amendment claims; *Heller* requires it. *Heller*, 554 U.S. at 628, fn 27 (specifically rejecting "rational basis" as a permissible level of scrutiny for Second Amendment challenges). It is true that some Courts have employed intermediate scrutiny, *See*, *e.g.*, *Skoien*, 614 F.3d at 641-42; *United States v. Chester*, 628 F.3d 673, 682-83 (4th Cir. 2010); *United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010); *United States v. Yancey*, 621 F.3d 681, 683 (7th Cir. 2010); *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 98 (3rd Cir. 2010). However all those cases involved federal disqualification under 18 U.S.C. § 922. The first three involved domestic violence misdemeanants, the fourth a habitual drug user, the fifth a convicted felon, and the last a firearm with the serial number illegally removed.

16

All six cases, therefore, were criminal prosecutions.

Instead, this case is closer to the situation in *Ezell*, in that the ban on public carrying is analogous to the City of Chicago's stricken ban on firing ranges. In *Ezell*, this Court found firing range training to be sufficiently close to the core right of self-defense[3] that "not quite" strict scrutiny was used to analyze plaintiffs' challenge. The Court noted that:

> Here, in contrast, the plaintiffs are the "law-abiding, responsible citizens" whose Second Amendment rights are entitled to full solicitude under *Heller*, and their claim comes much closer to implicating the core of the Second Amendment right. The City's firing-range ban is not merely regulatory; it prohibits the "law-abiding, re-sponsible citizens" of Chicago from engaging in target practice in the controlled environment of a firing range. This is a serious encroachment on the right to maintain proficiency in firearm use, an important corollary to the meaningful exercise of the core right to possess firearms for self-defense.

*Ezell*, 651 F.3d at 708.

The State statutes at issue here are likewise complete prohibitions on the exercise of the core Second Amendment right of self-defense by law-abiding citizens.

---

[3] Especially when coupled with the City's simultaneous requirement that those City residents who wished to possess a firearm in their home for self-defense must first obtain range training.

17

Though Defendants and *amici* urge, at most, intermediate scrutiny as employed in *Skoien*, this Court in *Ezell* specifically distinguished its use of intermediate scrutiny in *Skoien* by noting the plaintiff in *Skoien* was not a responsible, law-abiding citizen, as opposed to the *Ezell* and *Heller* plaintiffs, and this Court found the right implicated in *Skoien* was not "the central self-defense component of the right." *Id*. In this case, Plaintiffs are the law-abiding citizens favored in *Heller* and *Ezell*, and the challenged statutes directly infringe on the Plaintiffs' core right of self-defense.

*Amicus* District of Columbia's urging that the government be allowed to regulate firearms is not a point of dispute between the parties. Plaintiffs concede some measure of regulation will be allowed.[4] However, D.C.'s assertion that the purpose of the Second Amendment

---

[4] Though Plaintiffs take issue with assertions such as that made by *Amicus* City of Chicago that "These [statutes at issue] are a valuable component of effective policing strategies aimed at keeping guns out of the hands of gang members and other criminals before shootings occur." (City of Chicago, *et al Amicus* Brief at 3). Such statements equate all law-abiding citizens with criminals. The state can criminalize *any* conduct, and use it as a pretext to arrest people.

was to protect the militia is the same argument the Supreme Court

rejected in *Heller*. The Supreme Court rejected the argument again in

*McDonald*, when the City of Chicago attempted to rehash it. It is truly

disingenuous for the District of Columbia to keep trotting the argument

out to the lower Courts as if *Heller*'s holding of an individual Second

Amendment right had not happened (D.C. *Amicus* Brief at 8). The

District does this in arguing for a low level of scrutiny, but its (and

Brady Center's ) citations to pre-*Heller* state court cases is hollow, since

those cases do not operate from a presumption either that (1.) the

Second Amendment right is individual or fundamental, or (2.) that the

Second Amendment applies to those state courts.

The proposal of a "reasonable regulation" test (Defendants' Br. at 40,

Brady Center Brief at 4; D.C. Brief at 13) has been rejected by this

Court twice: in both *Skoien* and *Ezell*. If this proposal sounds familiar,

that is because the identical argument was just presented to this Court,

sitting *en banc*. *See* Brief of Brady Center, as *Amicus Curiae*, *United

States* v. *Skoien*, No. 08-3770. It was also the backbone of Defendant's

arguments in *Ezell*. The third time is not the charm. *See also Heller* v.

*District of Columbia*, 2011 U.S. App. LEXIS 20130, at *27-*28 (D.C.

19

Cir. Oct. 4, 2011) ("[t]he District . . . argues we should adopt a

"reasonable regulation test." . . . *Heller [I]* clearly does reject any kind

of 'rational basis' *or reasonableness test.* . .") (emphasis added).

## CONCLUSION

The judgment below should be reversed, and the case remanded

with instructions to enter a permanent injunction consistent with

Plaintiffs' prayer for relief.

Dated:   May 23, 2012            Respectfully submitted,

                     By:   /s/ David G. Sigale
Alan Gura                  David G. Sigale*
Gura & Possessky, PLLC     Law Firm of David G. Sigale, P.C.
101 N. Columbus St., Suite 304   739 Roosevelt Road, Suite 304
Alexandria, VA 22314       Glen Ellyn, IL 60137
703.835.9085/703.997.7665  630.452.4547/630.596.4445

David D. Jensen            Attorneys for Plaintiffs-
David Jensen PLLC          Appellants Michael Moore,
111 John Street, Suite 230   Charles Hooks, Jon Maier,
New York, NY 10038         Peggy Fechter, Second Amendment
212.380.6615/917.591.1318  Foundation, Inc., and Illinois Carry

*Counsel of Record

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATIONS, TYPEFACE REQUIREMENTS, AND
TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Fed. R.
   App. P. 32(a)(7)(B) because this brief contains 4,028 words,
   excluding the parts of the brief excluded by Fed. R. App. P.
   32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App.
   P. 32(a)(5) and Circuit Rule 32(b), and the type style
   requirements of Fed. R. App. P. 32(a)(6) because this brief has
   been prepared in proportionately spaced typeface using
   WordPerfect X4 in 14 point Century Schoolbook font.


       /s/ Alan Gura
       Alan Gura
       Attorney for Plaintiffs-Appellants
       Dated: May 23, 2012

☑

# CERTIFICATE OF SERVICE
## Certificate of Service When All Case Participants Are CM/ECF Participants

I hereby certify that on ___May 23, 2012_____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ ___David G. Sigale_____

☐

# CERTIFICATE OF SERVICE
## Certificate of Service When Not All Case Participants Are CM/ECF Participants

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

counsel / party:                                        address:

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

s/_____

[ Reset ]      [ Save ]      [ Print ]