IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TOM G. PALMER, et al., | ) | Case No. 09-CV-1482-FJS |
| | ) | |
| Plaintiffs, | ) | SUPPLEMENTAL BRIEF RE: |
| | ) | STANDING |
| v. | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

SUPPLEMENTAL BRIEF RE: STANDING

Pursuant to the Court's request at argument today, Plaintiff Second Amendment Foundation, Inc. submits this brief regarding standing.

As the Court acknowledged, there is no serious question that the individual plaintiffs have standing. Each individual plaintiff has been denied handgun registration for the purpose of carrying or, as in Mr. Raymond's case, been denied an application, and each has refrained from carrying handguns owing to a reasonable expectation of the law's enforcement against them.

Standing not being in dispute with respect to these plaintiffs, the standing inquiry should cease as to SAF. *NB* v. *Dist. Of Columbia*, 682 F.3d 77, 82 (D.C. Cir. 2012) ("if one party has standing in an action, a court need not reach the issue of the standing of other parties when it makes no difference to the merits of the case") (quoting *Comcast Corp.* v. *FCC*, 579 F.3d 1, 6 (D.C. Cir. 2009)); *Animal Legal Defense Fund* v. *Glickman*, 154 F.3d 426, 445 (D.C. Cir. 1998) (en banc). "In cases where, as here, plaintiffs seek injunctive and declaratory relief, so long as 'at least one individual plaintiff . . . has demonstrated standing,' a court 'need not consider whether the other individual and corporate plaintiffs have standing to maintain the suit.'" *Woollard* v. *Sheridan*, 2010 U.S. Dist. LEXIS 137031 at *2 n.1 (D. Md. Dec. 29, 2010) (avoiding challenge to SAF's standing)

(citing *Village of Arlington Heights* v. *Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 & n.9 (1977) and *Watt* v. *Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981)) (other citations omitted); *Schrader* v. *Holder*, 831 F. Supp.2d 304, 309 (D.D.C. 2011), *appeal pending*, No. 11-5352 (D.C. Cir. argument set Oct. 10, 2012) (avoiding challenge to SAF's standing); *Ezell* v. *City of Chicago*, 651 F.3d 684, 696 n.7 (7th Cir. 2011) (avoiding challenge to SAF's standing); *Gay Men's Health Crisis* v. *Sullivan*, 733 F. Supp. 619, 631 (S.D.N.Y. 1989) ("[b]ecause at least some of the organizational plaintiffs have alleged facts sufficient to establish standing, we need not consider the standing of each plaintiff individually").

The D.C. Circuit recently applied this rule in a case involving SAF. *Dearth* v. *Holder*, 641 F.3d 499 (D.C. Cir. 2011). In *Dearth*, the lower court had ruled that neither individual plaintiffs nor SAF had standing. The issue of SAF's standing was fully briefed on appeal, as it had been below, and was specifically noted as the third of three questions presented on appeal.

The D.C. Circuit reversed. After finding that the remaining individual plaintiff had standing, the D.C. Circuit observed, "Nor because the SAF raises no issue not also raised by Dearth, need we decide whether it has standing." *Dearth*, 641 F.3d at 503 n.*** (citation omitted).

Last week, on remand, a court of this District held that "the Circuit did not disturb the trial court's ruling that the SAF did not have standing." *Dearth* v. *Holder*, 2012 U.S. Dist. LEXIS 138697 at *9 n.4 (D.D.C. Sept. 27, 2012), *appeal pending*. That is not correct. The D.C. Circuit's review was *de novo*. *Dearth*, 641 F.3d at 501. And the words "affirmed in part" do not appear in the D.C. Circuit's opinion. The trial court's order—all of it reviewed *de novo*—was reversed in its entirety, and the Court merely offered that it did not "need" to decide the issue of SAF's standing in line with the clearly established rule of avoiding unnecessary standing decisions.

SAF will invite the D.C. Circuit to clarify whether it intended to affirm the denial of SAF's standing without opinion. In the meantime, the posture of *this* case is that no decision on standing has been rendered save for the Court's observation at argument that the individual plaintiffs have standing. Accordingly, in line with the substantial body of precedent, *supra*, confirming that there is no need to conduct an examination of SAF's standing, the Court should not address the issue.

Should the Court nevertheless wish to address the issue, SAF clearly has both representational and organizational standing.

"There is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth* v. *Seldin*, 422 U.S. 490, 511 (1975). When an organization is forced to spend resources, devoting its time and energy to dealing with certain conduct, it has standing to challenge that conduct. *See, e.g.*, *Havens Realty Corp.* v. *Coleman*, 455 U.S. 363 (1982).

SAF educates, researches, and publishes about gun control and its consequences. It has to educate its members, and the public, about the government's enforcement of gun laws. When people have questions about the government's firearms policies, they turn to SAF. *See* Gottlieb Decl., Dkt. 5-9. The government's enforcement of the challenged provisions thus directly impacts the organization. *Fair Employment Council* v. *BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994); *Haitian Refugee Ctr.* v. *Gracey*, 809 F.2d 794, 799 (D.C. Cir. 1987). Accordingly, SAF has organizational standing in this case to sue on its own behalf.

Moreover, SAF has representational standing.

> An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*United Food & Commercial Workers Union Local 751* v. *Brown Group*, Inc., 517 U.S. 544, 553 (1996) (citation omitted). Although the individual plaintiffs here are SAF members, the presence of an organization's members is not required. The third prong of representational standing under *United Food* suggests as much, and at least two appellate cases, one involving SAF, the other, in this circuit, so demonstrate as well.

In *Fraternal Order of Police* v. *United States* ("FOP"), 152 F.3d 998 (1998), the court faced the question of whether chief law enforcement officers ("CLEOs"), who were members of the FOP, could assert the rights of their employees. Answering this question in the positive, the D.C. Circuit found the FOP satisfied all three prongs of representational standing. "[T]he presence of CLEOs as members gives the Order standing to makes these claims as well." *FOP*, 152 F.3d at 1002. But as evident in the caption, no individual CLEOs were party plaintiffs.

More recently, in *Ezell*, a challenge to Chicago's gun range ban, the Seventh Circuit was satisfied that SAF

> ha[s] many members who reside in Chicago and easily meet[s] the requirements for associational standing: (1) [its] members would otherwise have standing to sue in their own right; (2) the interests the association[] seek[s] to protect are germane to [its] organizational purposes; and (3) neither the claim asserted nor the relief requested requires the participation of individual association members in the lawsuit.

*Ezell*, 651 F.3d at 696 (citing *United Food*, 517 U.S. at 553; *Hunt* v. *Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)) (other citation omitted). Plainly, SAF has standing here as well for the same reasons.[1]

---

[1] The Court referenced the standing discussion in *Kachalsky* v. *Cacase*, 817 F. Supp.2d 235, 251 (S.D.N.Y. 2011), *appeal pending*, No. 11-3642 (2nd Cir., argued Aug. 22, 2012), wherein SAF was found to lack standing for not specifying that the plaintiffs were SAF members. *Kachalsky* cited *FW/PBS* v. *City of Dallas*, 493 U.S. 215, 235 (1990) for this proposition, but this reliance was misplaced. The referenced page merely states that none of the petitioners had standing to challenge certain laws. *FW/PBS* did not appear to involve any issue of representational standing, apart from a

Beyond the legal issue, the Court also inquired as to why, if individuals have standing, an organization would nonetheless join as a plaintiff. Several reasons exist for organizations to pursue relief alongside individuals in civil rights cases. Chief among them: (1) when the organization sues to vindicate its own interests to the extent these may differ from those of any individual members; (2) in the event that individual plaintiffs cannot continue participation, owing to death, relocation, incapacitation, etc., the case can proceed without substituting additional individuals, to the extent the organization is acting in a representational capacity; (3) even if the plaintiffs all have complete unity of interest at the outset, as a party plaintiff, the organization may continue playing a direct role in the case to vindicate its interests and those of its entire membership in the event the specific individual plaintiffs perceive that their interests have diverged; (4) to avoid attempts at having the case narrowed to the specific facts, real or alleged, related to the participating individuals, when disputed matters may impact many individuals in different ways; and (5) civil rights litigation is constitutionally-protected political expression, *see NAACP* v. *Button*, 371 U.S. 415, 429-30 (1963).

As a matter of law, because the individuals have standing, the standing inquiry should cease. And in any event, SAF plainly has organizational as well as representational standing.

Dated: October 1, 2012                             Respectfully submitted,

                                                                Alan Gura (D.C. Bar No. 453449)
                                                                Gura & Possessky, PLLC
                                                                101 N. Columbus Street, Suite 405
                                                                Alexandria, VA 22314
                                                               703.835.9085/Fax 703.997.7665

                                                      By:  /s/Alan Gura_____
                                                                Alan Gura
                                                                Attorney for Plaintiffs

---

brief musing, in dicta, that "it is not clear" that motel owners have prudential rights to vindicate their patron's associational rights in 10-hour rentals. *FW/PBS*, 493 U.S. at 297.