IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TOM G. PALMER, et al., | ) | Case No. 09-CV-1482-FJS |
| | ) | |
| Plaintiffs, | ) | RESPONSE TO DEFENDANTS' |
| | ) | NOTICE OF SUPPLEMENTAL |
| v. | ) | AUTHORITY |
| | ) | |
| DISTRICT OF COLUMBIA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE
OF SUPPLEMENTAL AUTHORITY

Defendants' citations to *Thorne* v. *United States*, No. 11-CF-492, 2012 D.C. App. LEXIS 518 (D.C. Nov. 15, 2012), and *Kachalsky* v. *County of Westchester*, No. 11-3642, 2012 U.S. App. LEXIS 24363 (2d Cir. Nov. 27, 2012), are unavailing. At least with respect to *Kachalsky*, the citation is also self-defeating.

1.   *Thorne* v. *United States*

In *Thorne*, the Second Amendment claims were raised for the first time on appeal. Accordingly, rather than study the matter at length, the court applied the plain error standard and refused to consider the matter further, beyond noting the court's belief that the right to carry issue remains an open question. "[A]n error is plain if 'the error was so egregious and obvious as to make the trial judge and prosecutor derelict in permitting it, despite the defendant's failure to object.'" *Thorne*, 2012 D.C. App. LEXIS 518 at *24 (citations and internal quotation marks omitted).

Obviously, this case stands in a different posture. This *is* the trial court, and the core Second Amendment question has not only been briefed, it is the only issue before the Court.

Even had the D.C. Court of Appeals passed on the Second Amendment right to bear arms, it is not an Article III court, but an Article I court that holds the same status as a state court of last resort. D.C. Code § 11-101. "[T]he Court Reform Act unequivocally distributed the 'judicial power in the District of Columbia' between the federal courts and the subservient to the other." *M.A.P.* v. *Ryan*, 285 A.2d 310, 313 (D.C. 1971) (footnote omitted). Defendants must not violate the federal constitution as interpreted by this, the local Article III court, even if the "state" court would approve of their conduct. District of Columbia residents enjoy a fundamental right to access Article III courts for the resolution of constitutional claims. *O'Donoghue* v. *United States*, 289 U.S. 516 (1933). And of course, in *Parker* v. *District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007), *aff'd sub nom District of Columbia* v. *Heller*, 554 U.S. 570 (2008), the D.C. Circuit was correctly unimpressed by the D.C. Court of Appeals' "collective right" view of the Second Amendment. *See Sandidge* v. *United States*, 520 A.2d 1057 (D.C. 1987), *overruled by Heller*.

2.     *Kachalsky* v. *County of Westchester*

Defendants' citation to *Kachalsky* is puzzling. To be sure, Plaintiffs disagree with much that is written in that opinion—and, Plaintiffs suspect, so might the Supreme Court. But *Kachalsky* is based entirely on the assumption that individuals do, in fact, enjoy the right to bear arms outside the home. *Kachalsky* acknowledged that "[t]he plain text of the Second Amendment does not limit the right to bear arms to the home" and that *Heller*'s "analysis suggests … that the Amendment must have some application in the … context of the public possession of firearms." *Kachalsky*, 2012 U.S. App. LEXIS 24363 at *19-*20 & n.10. The *Kachalsky* court "assum[ed]" without deciding "that the Second Amendment applies to this context." *Id.* at *29.

If this Court makes the same assumption, Defendants lose.

Because unlike New York, the District of Columbia does not maintain even the illusory licensing system it once did. On December 16, 2008, the City Council and Mayor repealed Defendant Lanier's authority to issue handgun carry licenses. *See* Statement of Undisputed Material Facts Nos. 10, 11. Any opinion from this Court about the constitutionality (or lack thereof) of a hypothetical licensing scheme mirroring that upheld in *Kachalsky* would be pure dictum.

Of course, *Kachalsky* failed to mention, let alone distinguish, the substantial body of precedent contradicting its position. For example, *Kachalsky* erred in holding that the prior restraint doctrine secures only First Amendment rights. The doctrine secures "freedoms which the Constitution guarantees." *Staub* v. *City of Baxley*, 355 U.S. 313, 322 (1958); *see, e.g. Kent* v. *Dulles*, 357 U.S. 116, 129 (1958) (Fifth Amendment international travel right: government lacks "unbridled discretion to grant or withhold [a passport]"). Courts have invoked it to secure the right to bear arms. *See, e.g. People* v. *Zerillo*, 219 Mich. 635, 639 (1922) ("The exercise of a right guaranteed by the Constitution cannot be made subject to the will of the sheriff"); *State ex rel. City of Princeton* v. *Buckner*, 377 S.E.2d 139, 144 (1988); *cf. Mosby* v. *Devine*, 851 A.2d 1031, 1050 (R.I. 2004) (rejecting "any system of [firearms] permitting... committed to the unfettered discretion of an executive agency"). Indiana's Court of Appeals held that

> police cannot subjectively evaluate an assignment of "self-defense" as a reason for desiring a license and the ability to grant or deny the license upon the basis of whether the applicant "needed" to defend himself. Such an approach contravenes the essential nature of the constitutional guarantee. It would supplant a right with a mere administrative privilege.

*Schubert* v. *De Bard*, 398 N.E.2d 1339, 1341 (Ind. App. 1980). *Kachalsky*'s insistence that "proper cause" is a real standard limiting police discretion is risible. "Proper cause" plainly fits among the impermissible "illusory 'constraints'" amounting to "little more than a high-sounding

3

ideal." *City of Lakewood* v. *Plain Dealer Publishing Co.*, 486 U.S. 750, 769-70 (1988); *see, e.g. Largent* v. *Texas*, 318 U.S. 418, 422 (1943) (striking down ordinance allowing speech permit where mayor "deems it proper or advisable").

*Kachalsky* also badly misquoted *Heller* by offering that "*Heller* explains that the 'core' protection of the Second Amendment is the 'right of law-abiding, responsible citizens to use arms in defense of hearth and home.' *Heller*, 554 U.S. at 634-35." *Kachalsky*, at *30-*31. That is incorrect. "[T]he core lawful purpose [is] self-defense." *Heller*, 554 U.S. at 630. This is mentioned a full five pages before the reference to "hearth and home." *Id.* at 635.

Courts cannot randomly assemble words from a Supreme Court opinion to cobble together a limitation on the holding that was never pronounced. Although "the need for defense of self, family, and property is *most acute*" in the home, *Heller*, 554 U.S. at 628 (emphasis added), and the Second Amendment right is secured "*most notably* for self-defense within the home," *McDonald* v. *City of Chicago*, 130 S. Ct. 3020, 3044 (2010) (emphasis added), the self-defense interest at the Second Amendment's core plainly exists beyond the home. *See also* Plaintiffs' Response, 3/7/12, Dkt. 28 at 2-4. *Kachalsky*'s assertion that "there is no right to engage in self-defense with a firearm until the objective circumstances justify the use of deadly force," 2012 U.S. App. LEXIS 24363 at *52 (citation and footnote omitted), is irrelevant. *See Heller*, 554 U.S. at 584 (right to be "armed and ready for offensive or defensive action in a case of conflict with another person") (citation omitted).

The flaws inherent in *Kachalsky*'s historical survey of the Second Amendment do not require much annotation here. The Court has before it not only the briefing in this case, but also the briefing submitted *on both sides* of *Moore* v. *Madigan*, Seventh Cir. No. 12-1269 (argued June 8, 2012). Plaintiffs note only that *Kachalsky* misplaced reliance on Reconstruction Era laws

prohibiting the carrying of *some* handguns. These laws typically barred only the carrying of handguns that were relatively more accessible to poor people, e.g., the Freedmen. Cottrol & Diamond, *"Never Intended to be Applied to the White Population,"* 70 CHI.-KENT L. REV. 1307, 1333 (1995); *see, e.g. Wilson* v. *State*, 33 Ark. 557, 560 (1878).

And finally, *Kachalsky* reflects a belief that rational basis review is acceptable in Second Amendment cases so long as a court invokes the incantation "intermediate scrutiny." The court plainly applied rational basis review, eviscerating the right to bear arms merely upon the State having declared it unacceptable as a matter of public policy. *Kachalsky* refused to question a legislative judgment relating to an enumerated, fundamental right. But in so doing, *Kachalsky* second-guessed the People's ratification of the Second Amendment—an act the Supreme Court will soon have an opportunity to review.

Were this Court to apply intermediate scrutiny, it would have to first determine the scope of the right at issue, and only then, see if the government meets its burden of proving that the regulation advances an important interest in a way that reasonably fits with the right. It is simply impossible for Defendants' total carry prohibition to survive such a test. If there is a right—*any* sort of right, however limited, however regulated—to carry handguns for self-defense in public, completely abolishing that right for all people at all times under all circumstances without exception is not going to be reasonably-tailored. And whatever the state's interest in public safety, there is no valid interest in abolishing a constitutional right. If Defendant Lanier, or any other official or employee of the District feels the constitutional right is against the public interest, they may advocate for an amendment, in their capacity as private citizens. U.S. Const. amend. I.

Respectfully, the Court should enter summary judgment for Plaintiffs.

Dated: December 5, 2012							Respectfully submitted,

                                                  Alan Gura (D.C. Bar No. 453449)
                                                  Gura & Possessky, PLLC
                                                  101 N. Columbus Street, Suite 405
                                                  Alexandria, VA 22314
                                                  703.835.9085/Fax 703.997.7665

                                       By:  /s/ Alan Gura
                                                  Alan Gura

                                                  Attorney for Plaintiffs