UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELIZABETH E. MORRIS; and ALAN C. BAKER,<br><br>                        Plaintiffs,<br><br>     v.<br><br>U.S. ARMY CORPS OF ENGINEERS, *et al*.,<br><br>                        Defendants. | Case No. 3:13-CV-00336-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion for preliminary injunction filed by plaintiffs and a motion to dismiss filed by the defendants. The Court heard oral argument on January 7, 2014, and took the motions under advisement. After further review, the Court has decided, for reasons set forth below, to deny the motion to dismiss and grant the motion for preliminary injunction.

## LITIGATION BACKGROUND

Plaintiffs challenge regulations promulgated by the Army Corp of Engineers. The regulations govern the possession of firearms on property administered by the Corps. Plaintiffs argue that the regulations violate their Second Amendment right to keep and bear arms.

The regulations govern over 700 dams – holding back more than 100 trillion gallons of water – built by the Corps, and the surrounding recreation areas that serve over

**Memorandum Decision & Order -- 1**

300 million visitors annually. Adopted in 1973, the regulations were intended to provide for more effective management of the lake and reservoir projects. The regulation at issue here reads as follows:

> (a) The possession of loaded firearms, ammunition, loaded projectile firing devices, bows and arrows, crossbows, or other weapons is prohibited unless:
>   (1) In the possession of a Federal, state or local law enforcement officer;
>   (2) Being used for hunting or fishing as permitted under § 327.8, with devices being unloaded when transported to, from or between hunting and fishing sites;
>   (3) Being used at authorized shooting ranges; or
>   (4) Written permission has been received from the District Commander.
> (b) Possession of explosives or explosive devices of any kind, including fireworks or other pyrotechnics, is prohibited unless written permission has been received from the District Commander.

36 C.F.R. § 327.13. The plaintiffs' complaint alleges that this regulation violates the Second Amendment by (1) banning the possession of firearms in a tent, and (2) banning the carrying of firearms on Corps' recreation sites. The plaintiffs live in western Idaho, recreate on Corps-administered public lands where this regulation applies, and would possess a functional firearm at those recreation sites but for the Corps' active enforcement of this regulation.[1]

The Court will take up first the Corps' motion to dismiss, and specifically the Corps' argument that the plaintiffs have no Second Amendment rights as a matter of law.

## ANALYSIS

### Corps' Motion to Dismiss

---

[1] These allegations establish that the plaintiffs have standing and that the case is not moot. The Court therefore refuses to dismiss the case at this time on standing or mootness grounds.

**Memorandum Decision & Order -- 2**

The Corps argues that its recreation sites are public venues where large numbers of people congregate, making it imperative that firearms be tightly regulated. The Corps also points out that the sites contain dams and power generation facilities that require heightened protection, especially given homeland security threats. The Corps distinguishes its sites from those of other agencies like the Forest Service that are required by law to manage for multiple use, including the use by the public for recreation. In contrast, there is no law requiring the Corps to operate recreation sites, and that gives the Corps more leeway to restrict the public under the Second Amendment, the agency argues. For these reasons, the Corps seeks to dismiss the case on the ground that its regulation does not violate the Second Amendment as a matter of law.

To evaluate this argument, the Court will employ the two-step analysis set out in *U.S. v. Chovan,* 735 F.3d 1127 (9th Cir. 2013). The Court must determine first "whether the challenged law burdens conduct protected by the Second Amendment." *Id.* at 1136. The second step is to "apply an appropriate level of scrutiny." *Id.*

The "appropriate level" depends on (1) "how close the law comes to the core of the Second Amendment right," and (2) "the severity of the law's burden on the right." *Id.* at 1138 (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 705 (7th Cir.2011)). A regulation that threatens a core Second Amendment right is subject to strict scrutiny, while a less severe regulation that does not encroach on a core Second Amendment right is subject to intermediate scrutiny. *Silvester v Harris,* 2013 WL 6415670 (E.D.Cal. Dec. 9, 2013).

**Memorandum Decision & Order -- 3**

The Court must ask first whether the Corps' regulation burdens conduct protected by the Second Amendment. It does. The Second Amendment protects the right to carry a firearm for self-defense purposes. *Heller,* 554 U.S. at 628 (stating that "the inherent right of self-defense has been central to the Second Amendment right"). The regulation bans carrying a loaded firearm for the purpose of self-defense. It also bans carrying an unloaded firearm along with its ammunition. At most, it would allow a person to carry an unloaded firearm so long as he was not also carrying its ammunition. An unloaded firearm is useless for self-defense purposes without its ammunition. While those who use firearms for hunting are allowed greater latitude, the regulation grants no such exemption to those carrying firearms solely for purposes of self-defense. Consequently, the regulation does impose a burden on plaintiffs' Second Amendment rights.

The second step is to apply the appropriate level of scrutiny. That inquiry turns on how close the regulation cuts to the core of the Second Amendment and how severe the burden is on that right.

No court has identified those core rights comprehensively. But one core right was described by the Supreme Court: The right of a law-abiding individual to possess a handgun in his home for self-defense. *District of Columbia v. Heller*, 554 U.S. 570 (2008). In addressing the need for self-defense in the home, the Supreme Court held that the home is "where the need for defense of self, family, and property is most acute." *Id.* at 628.

The same analysis applies to a tent. While often temporary, a tent is more importantly a place – just like a home – where a person withdraws from public view, and

**Memorandum Decision & Order -- 4**

seeks privacy and security for himself and perhaps also for his family and/or his property. Indeed, a typical home at the time the Second Amendment was passed was cramped and drafty with a dirt floor – more akin to a large tent than a modern home. Americans in 1791 – the year the Second Amendment was ratified – were probably more apt to see a tent as a home than we are today. *Heller,* 554 U.S. at 605 (holding that "public understanding" at time of ratification is "critical tool of constitutional interpretation"). Moreover, under Fourth Amendment analysis, "tents are protected . . . like a more permanent structure," and are deemed to be "more like a house than a car." *U.S. v. Gooch,* 6 F.3d 673 (9th Cir. 1993). The privacy concerns of the Fourth Amendment carry over well into the Second Amendment's security concerns.

The regulation at issue would ban firearms and ammunition in a tent on the Corps' sites. This ban poses a substantial burden on a core Second Amendment right and is therefore subject to strict scrutiny.

The plaintiffs also challenge the ban on their right to carry firearms outside their tents for self-defense purposes. As the Court discussed above, the regulation prohibits carrying firearms for self-defense purposes despite *Heller's* recognition that "the inherent right of self-defense has been central to the Second Amendment right." *Heller,* 554 U.S. at 628. In interpreting the phrase "bear arms" in the Second Amendment, the *Heller* majority held that "[w]hen used with 'arms,' . . . the term ["bear"] has a meaning that refers to carrying for a particular purpose – confrontation." *Heller,* 554 U.S. at 584. "Heller does not simply reaffirm the traditional right to act in self-defense when threatened. Rather, it recognizes a right to have and carry guns in case the need for such

**Memorandum Decision & Order -- 5**

an action should arise." Blocher, *The Right Not To Keep or Bear Arms,* 64 Stanford L. Rev. 1, 16 (2012).

The right of self-defense is not, however, unlimited. *Heller* stated that "nothing in our opinion should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings . . . ." *Heller*, 554 U.S. at 626-27. "[A]s we move outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self-defense." *U.S. v. Masciandaro*, 638 F.3d 458, 470 (4th Cir. 2011).

Still, a solid line of cases decided after *Heller* examines a regulation's impact on self-defense even when the conduct governed is a public venue outside the home. For example, *Masciandaro* upheld a regulation that banned loaded firearms in a National Park because the regulation contained an exception that struck a balance between public safety and self-defense. *Id.* at 474 (holding that the regulation "leaves largely intact the right to possess and carry weapons in case of confrontation").

The opposite result was reached in *Moore v. Madigan,* 702 F.3d 933, 936 (7th Cir. 2012) (Posner, J.). The Seventh Circuit examined an Illinois regulation with a reach similar to the regulation at issue here – it banned carrying even unloaded firearms if ammunition was accessible. *Id.* at 934. Judge Posner, writing the majority opinion, described the Illinois law as "the most restrictive gun law of any of the 50 states," and held that it violated the Second Amendment because it "flat[ly] ban[ned] . . . carrying ready-to-use guns outside the home" with no self-defense exception. *Id.* at 940–41.

**Memorandum Decision & Order -- 6**

The ban imposed by the Corps places this case closer to *Moore* than *Masciandaro*. The Corps' regulation contains a flat ban on carrying a firearm for self-defense purposes. By completely ignoring the right of self-defense, the regulation cannot be saved by the line of cases, like *Masciandaro,* that upheld gun restrictions accommodating the right of self-defense. *See also, U.S. v Parker*, 919 F.Supp.2d 1072 (E.D.Cal. Jan 22 2013) (upholding concealed weapon regulation in Yosemite Park that allowed for self-defense); *Nichols v Brown,* 2013 WL 3368922 (C.D.Cal. July 3 2013) (upholding California gun control laws that allowed for self-defense).

While the ban on carrying firearms for self-defense may impose a burden on this core right of the Second Amendment severe enough to call for strict scrutiny, it is unnecessary for the Court to decide that issue because the regulation fails to pass muster even if intermediate scrutiny is applied. The intermediate scrutiny standard requires: (1) that the government's stated objective must be significant, substantial, or important, and (2) that there is a reasonable fit between the challenged regulation and the government's asserted objective. *Chovan,* 735 F.3d at 1138. For there to be a "reasonable fit," the regulation must not be substantially broader than necessary to achieve the government's interest. *Id.*

Here, the regulation is designed to protect both critical infrastructure and the public. If the regulation ended there, it would satisfy the "reasonable fit" test. But it extends to ban firearms entirely from being carried for self-defense. It is simply too broad. Drafted long before *Heller,* it violates the Supreme Court's description of Second Amendment rights in that case. This regulation needs to be brought up to date.

**Memorandum Decision & Order -- 7**

The Corps argues that the impact of its regulation is felt only on federal land that it administers, and that it is entitled to have the regulation evaluated under a rational basis test. The Corps cites *Nordyke v King*, 681 F.3d 1041 (9th Cir. 2012) where the Circuit upheld a county law regulating firearms at commercial gun sales on county property. In making that ruling, the Circuit cited *U.S. v. Kokinda,* 497 U.S. 720, 725 (1990) for the proposition that there is a distinction between governmental exercise of the "power to regulate or license, as law-maker" and governmental actions taken in its role "as proprietor, to manage its internal operations."

But *Nordyke* never discussed the right of self-defense, and cannot be used to justify the use of a rational basis test here. The cases cited above where self-defense was discussed – *Masciandaro*, *Moore, Parker,* and *Nichols* – all applied more than a rational basis test to evaluate the laws under scrutiny. The Court finds that line of authority persuasive.

The Corps argues that it should be treated differently than other agencies because unlike them, the Corps is not statutorily required to open its sites to the public. But the Corps cites no case exempting the Government from constitutional requirements whenever it acts voluntarily. The Court can find no reason to adopt such a rule.

For all these reasons, the Court will deny the Corps' motion to dismiss.

**Plaintiffs' Motion for Preliminary Injunction**

Plaintiffs seek to enjoin the Corps from enforcing its ban on law-abiding citizens possessing functional firearms on Corps-administered public lands for the purpose of self-defense. The Corps responds that plaintiffs are seeking a mandatory injunction that

**Memorandum Decision & Order -- 8**

is more difficult to obtain than a standard injunction. "A mandatory injunction orders a responsible party to take action," and therefore "goes well beyond simply maintaining the status quo." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir.2009). Accordingly, mandatory injunctions are "particularly disfavored." *Id.*

Plaintiffs are not, however, seeking a mandatory injunction – they are not asking the Corps to take affirmative action but are asking instead that a regulatory ban not be enforced. While this would require the Corps to change its practices, that type of change does not convert the injunction into a mandatory injunction. In the leading case of *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), the injunction required the Navy to stop using sonar in its training exercises – in other words, it caused the Navy to change its practices – but the Supreme Court evaluated the injunction under the standard test. This case presents the same type of prohibitory injunction, and the Court will therefore not apply the stricter test applicable to mandatory injunctions.

To be entitled to injunctive relief under that standard test, plaintiffs must show each of the following: (1) a likelihood of success on the merits; (2) that irreparable harm is likely, not just possible, if the injunction is not granted; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127 (9th Cir. 2011). If requirements (2) and (4) are satisfied, and the balance of hardships "tips sharply in the plaintiffs' favor," the plaintiff need only raise "serious questions going to the merits" to be entitled to injunctive relief.

**Memorandum Decision & Order -- 9**

*Id.* at 1134-35 (holding that this aspect of the Ninth Circuit's sliding scale test survived *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008)).

From the discussion above concerning the motion to dismiss, it is apparent that plaintiffs have shown a very strong likelihood of success on the merits. Moreover, irreparable harm is likely because the plaintiffs have made out a colorable claim that their Second Amendment rights have been threatened. *See Sanders County Republican Cent. Committee v. Bullock,* 698 F.3d 741, 744 (9th Cir. 2012) (holding that colorable claim of constitutional violation satisfies irreparable harm element). This threat tips the balance of equities in favor of plaintiffs because the harms complained of by the Corps could be "addressed by a more closely tailored regulatory measure[]." *Ezell,* 651 F.3d at 710. For the same reasons, an injunction would be in the public interest.

Accordingly, the Court will grant the injunction requested by plaintiffs enjoining the Corps from enforcing 36 C.F.R. § 327.13 as to law-abiding individuals possessing functional firearms on Corps-administered public lands for the purpose of self-defense.[2]

**Conclusion**

This is a preliminary injunction, and hence the Court's decision here is preliminary in nature. The Corps remains entitled to an evidentiary hearing or trial to establish a factual record before the Court reaches any final resolution. To move toward

---

[2] The Court waives the bond requirement under Rule 65(c). *Barahona-Gomez v. Reno,* 167 F.3d 1228, 1237 (9th Cir. 1999).

that point, counsel are directed to contact the Court's Clerk to set up a status conference to determine how the case should proceed from here.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to dismiss (docket no. 30) is DENIED.

IT IS FURTHER ORDERED, that the motion for preliminary injunction (docket no. 4) is GRANTED. The Corps is enjoined from enforcing 36 C.F.R. § 327.13 as to law-abiding individuals possessing functional firearms on Corps-administered public lands for the purpose of self-defense. This preliminary injunction shall remain in force until further notice of the Court.

IT IS FURTHER ORDERED, that counsel shall contact the Court's Clerk (jamie_gearhart@id.uscourts.gov) to set up a telephone status conference to determine how this case should proceed.

DATED: January 10, 2014

B. Lynn Winmill
Chief Judge
United States District Court

**Memorandum Decision & Order -- 11**