IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TOM G. PALMER, et al., | ) | Case No. 09-CV-1482-FJS |
| | ) | |
| Plaintiffs, | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN SUPPORT OF |
| v. | ) | PLAINTIFFS' MOTION FOR |
| | ) | ATTORNEY FEES AND COSTS |
| DISTRICT OF COLUMBIA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS

COME NOW the Plaintiffs, Tom G. Palmer, George Lyon, Edward Raymond, Amy

McVey, and the Second Amendment Foundation, Inc., by and through undersigned counsel, and

submit their Memorandum of Points and Authorities in Support of their Motion for Attorney Fees

and Costs.

Dated: August 12, 2014    Respectfully submitted,

            Alan Gura (D.C. Bar No. 453449)
            Gura & Possessky, PLLC
            105 Oronoco Street, Suite 305
            Alexandria, VA 22314
            703.835.9085/Fax 703.997.7665

       By: /s/ Alan Gura
          Alan Gura

          Attorney for Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS

PRELIMINARY STATEMENT

Having prevailed in this action, Plaintiffs are entitled to recover their attorney fees and costs.

Congress's logic in promulgating fee-shifting provisions like 42 U.S.C. § 1988 is clear.

Sentimental idealism aside, the law will not be enforced in our market economy unless someone

pays attorneys their market rates to seek the law's enforcement.

> If the cost of private enforcement actions becomes too great, there will be no private enforcement. If our civil rights laws are not to become mere hollow pronouncements which the average citizen cannot enforce, we must maintain the traditionally effective remedy of fee shifting in these cases.

S. Rep. 1011, 94th Cong., 2d Sess. 5 (1976). "The purpose of § 1988 is to ensure effective access to

the judicial process for persons with civil rights grievances. Accordingly, a prevailing plaintiff

should ordinarily recover an attorney's fee unless special circumstances would render such an award

unjust." *Hensley* v. *Eckerhart*, 461 U.S. 424, 429 (1983) (citations, internal punctuation omitted).

> Where, as here, the relief sought is generally nonmonetary, a substantial fee is particularly important if that statutory purpose is to be fulfilled. It is relatively easy to obtain competent counsel when the litigation is likely to produce a substantial monetary award. It is more difficult to attract counsel where the relief sought is primarily nonmonetary.

*Copeland* v. *Marshall*, 641 F.2d 880, 907 (D.C. Cir. 1980). Nor does available monetary relief

fully reflect the value of civil rights litigation. "Unlike most private tort litigants, a civil rights

plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in

monetary terms." *Blanchard* v. *Bergeron*, 489 U.S. 87, 96 (1989) (citation omitted).

"The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the

number of hours reasonably expended on the litigation times a reasonable hourly rate. Adjustments

to that fee then may be made as necessary in the particular case." *Blum* v. *Stenson*, 465 U.S. 886,

2

888 (1984) (citation omitted). "The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case." *Gastineau* v. *Wright*, 592 F.3d 747, 748 (7th Cir. 2010).

The award here is fairly straightforward. Counsel has kept detailed, contemporaneous time records, and has established a rate for his services that is well-within the relevant market. Considering the nature of the case, and the results obtained, the total amount requested is relatively low. The motion should be granted.

ARGUMENT

I.    PLAINTIFFS ARE ENTITLED TO RECOVER THEIR ATTORNEY FEES AND EXPENSES.

A successful civil rights plaintiff "cross[es] the 'statutory threshold' for recovering attorney fees and expenses by coming within Section 1988's definition of a 'prevailing party.'" *Tex. State Teachers Ass'n* v. *Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989). "Prevail" means "to gain the victory." WEBSTER'S UNABRIDGED DICTIONARY 1426 (2d ed. 1979). Attorney fees and expenses are recovered in cases comprising "the stuff of which legal victories are made." *Buckhannon Board & Care Home, Inc*. v. *West Virginia Dep't of Health & Human Resources*, 532 U.S. 598, 605 (2001) (citations omitted).

"The touchstone of the prevailing party inquiry. . . is 'the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.'" *Sole* v. *Wyner*, 551 U.S. 74, 82 (2007) (quoting *Tex. State Teachers Ass'n*, 489 U.S. at 792-793). "Under our generous formulation of the term, plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar* v. *Hobby*, 506 U.S. 103, 109 (1992)

3

(citations and internal quotation marks omitted). "[A] 'prevailing party' is one who has been awarded some relief by the court. . ." *Buckhannon*, 532 U.S. at 603.

On July 29, 2014, the Court entered judgment for Plaintiffs and against Defendants. There can be no dispute that Plaintiffs prevailed within the meaning of Section 1988.

II.     THE TIME SUBMITTED BY COUNSEL WAS REASONABLY NECESSARY TO ACHIEVE SUCCESS IN THE LITIGATION.

The total hours sought by counsel for litigating a case of this magnitude and complexity – 85.5 – is extremely low, reflecting careful billing judgment and, to Defendants' benefit, the highly efficient nature of counsel's practice.

"[I]t is the law of this Circuit that the requirement of submitting detailed records should not be applied in a draconian manner." *Novak* v. *Capital Mgmt. & Dev. Corp.*, 496 F. Supp. 2d 156, 158 (D.D.C. 2007) (citation omitted). The D.C. Circuit admonishes,

> it can be exceptionally difficult for a court to review attorney billing information over the life of a complex litigation and make a determination about whether the time devoted to the litigation was necessary or reasonable. This Court has reiterated the Supreme Court's warning that "[a] request for attorney's fees should not result in a second major litigation."

*Swedish Hosp. Corp.* v. *Shalala*, 1 F.3d 1261, 1269-70 (D.C. Cir. 1993) (citations and internal quotation marks omitted).

Fortunately, there is no need for "a second major litigation" nit-picking at the records, as they are more than sufficiently detailed, and reflect normal amounts of time for tasks performed. "[T]he fee application need not present 'the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney.'" *Nat'l Ass'n of Concerned Veterans* v. *Sec'y of Defense*, 675 F.2d 1319, 1327 (D.C. Cir. 1982) (quoting *Copeland*, 641 F.2d at 891)).

> [I]t is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted. To enable opposing counsel adequately to assess the merits of the motion, and the court to fulfill its obligations, no more is necessary than fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiation, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, [and] associates. . . .

*Jordan* v. *United States Dep't of Justice*, 691 F.2d 514, 520 (D.C. Cir. 1982) (footnote and quotation marks omitted). Judge Kessler explained the time-keeping requirements well:

> When a lawyer writes, for example, that she spent six or eight hours in one day "researching and drafting" a brief dealing exclusively with issues on which her client has ultimately prevailed, there is certainly no need for her to itemize every case she looked up or every paragraph she labored over. Trial courts must recognize how lawyers work and how they notate their time. *It must be remembered that the ultimate inquiry is whether the total time claimed is reasonable.*

*Smith* v. *District of Columbia*, 466 F. Supp.2d 151, 158 (D.D.C. 2006) (emphasis added).

The Court possesses ample documentation to discern roughly how much time counsel spent in this case, doing what, and the extent to which the *total time claimed* for the work performed was "reasonable." See Exhibit 1. Counsel kept contemporaneous records of the time spent litigating this action, as plaintiff Second Amendment Foundation was billed for the work performed. The Foundation paid counsel's bills promptly and in full. Moreover, the District has previously raised a broad array of challenges to counsel's billing practices, claiming that counsel's billing entries were vague and inadequate, constituted improper "block billing," contained uncompensable tasks, sought excessive hours, sought compensation for unsuccessful claims, and reflected poor billing judgment. This Court rejected virtually all of these allegations. Of counsel's claimed 1,661 hours in the litigation that culminated with the decision in *District of Columbia* v. *Heller*, 554 U.S. 570 (2008), this Court allowed 1,577.2, or 94.95% of counsel's hours. *Heller* v. *District of Columbia*, 832 F. Supp. 32, 56 n.18 (D.D.C. 2011).

III.    COUNSEL'S RATE IS CONSISTENT WITH ESTABLISHED RATES IN THE WASHINGTON, D.C.
        MARKET FOR COMPLEX FEDERAL LITIGATION.

"[A] fee applicant's burden in establishing a reasonable hourly rate entails a showing of at

least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation;

and the prevailing market rates in the relevant community." *Covington* v. *District of Columbia*, 57

F.3d 1101, 1107 (D.C. Cir. 1995). Each factor is addressed in turn.

        A.      *The Attorneys' Billing Practices.*

"[A]n attorney's usual billing rate is presumptively the reasonable rate, provided that this

rate is 'in line with those prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience, and reputation.'" *Kattan ex rel. Thomas v. District of Columbia*, 995

F.2d 274, 278 (D.C. Cir. 1993) (quoting *Blum*, 465 U.S. at 895-96 n.11). "'[R]easonable fees'

under § 1988 are to be calculated according to the prevailing market rates in the relevant

community, regardless of whether plaintiff is represented by private or non-profit counsel." *Blum*,

465 U.S. at 895.

When a lawyer establishes a market billing rate, it makes no difference that, in particular

cases, the lawyer charges reduced rates to provide assistance for favored or charitable causes.

"[L]awyers who donate their services at bargain rates to legal aid organizations may collect under §

1988 the fees they could obtain if the charitable element were removed." *Barrow* v. *Falck*, 977 F.2d

1100, 1105 (7th Cir. 1992) (citing *Blum*, supra, 465 U.S. 886)).

The D.C. Circuit could not be more clear:

[T]he prevailing market rate method heretofore used in awarding fees to traditional for-profit
firms and public interest legal services organizations shall apply as well to those attorneys
who practice privately and for profit but at reduced rates reflecting non-economic goals.

6

*Covington*, 57 F.3d at 1107 (quoting *Save Our Cumberland Mountains, Inc.* v. *Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988) (en banc)).

At the time that counsel litigated *Heller*, he did not have an established billing rate. That changed in 2012, with the establishment of a $600 standard rate, that has since been updated to $640/hour. Counsel has billed and collected at this rate. Gura Decl. ¶ 9. Counsel reserves a lower, public interest rate for the Second Amendment Foundation, owing to his commitment to his client's cause. *Id.* ¶¶ 13, 15. But as Supreme Court and circuit precedent make clear, that is unimportant here—Defendants are not the intended beneficiaries of counsel's charitable accommodation, and the entire purpose of Section 1988's extension of market rates to attract qualified counsel would be defeated if losing defendants in civil rights cases were entitled to public interest discounts.

B.      *The Attorneys' Skill, Experience, and Reputation.*

Counsel's skill is best reflected in the quality of his work product. However, as precedent instructs reviewing counsel's experience and reputation, some discussion of these factors is in order.

Another judge of this Court has noted "the impressive qualifications of plaintiff's counsel," who headed "a team [composed largely] of skilled litigators with significant experience in the for-profit, nonprofit, and government sectors at both the trial and appellate level." *Heller*, 832 F. Supp. at 39. Undersigned counsel successfully argued *Heller* and *McDonald* v. *City of Chicago*, 130 S. Ct. 3020 (2010), before the Supreme Court, and indeed, acted as lead counsel in those cases through all phases of litigation. Counsel also led the successful litigation of other Second Amendment landmarks, *Moore* v. *Madigan*, 702 F.3d 933 (7th Cir. 2012) and *Ezell* v. *City of Chicago*, 651 F.3d 684 (7th Cir. 2011).

Apart from his current practice at Gura & Possessky, PLLC, counsel's 18 year career spanned positions as a Deputy Attorney General for California, counsel for the Senate Judiciary

7

Committee, an associate at Sidley & Austin, and a law clerk for a federal district judge. Among

other awards, counsel was recognized last year as one of America's 100 Most Influential Lawyers

by the *National Law Journal*. In 2010, *Legal Times* named counsel one of Washington, D.C.'s Top

40 Lawyers Under 40, and a "Champion of Justice."  He has published in leading law reviews, and

frequently speaks at bar-sponsored continuing legal education seminars and law schools. Most

recently, counsel has been appointed an adjunct Professor of Law at his alma mater, Georgetown

University, where he will begin teaching in Spring, 2015 semester. In *McDonald*, the Northern

District of Illinois awarded counsel fees at the rate of $539/hour—but that was already three years

ago. See Gura Decl. ¶¶ 2-8, 10.

      Respectfully, counsel's skill, reputation, and experience easily support his standard hourly

rates.

      C.     *Prevailing Market Rates in the Relevant Community*

      With respect to the Supreme Court's admonition regarding evidence "that the requested rates

are in line with those prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience, and reputation," *Blum*, 465 U.S. at 896 n.11,

> [T]he term "community" does not necessarily mean the local market area. In circumstances
> where the "subject matter of the litigation is one where the attorneys practicing it are highly
> specialized" the community may be the "community of practitioners" in the national market.

*Kaylor-Trent* v. *John C. Bonewicz, P.C.*, 916 F. Supp. 2d 878, 884 (C.D. Ill. 2013) (citing

*Jeffboat, LLC* v. *Dir., OWCP*, 553 F.3d 487 (7th Cir. 2009)). The D.C. Circuit allows parties to

submit their own rate surveys, as well as, inter alia, "evidence of recent fees awarded by the courts

or through settlement to attorneys with comparable qualifications handling similar cases."

*Covington*, 57 F.3d at 1109.

      Plaintiffs submit that "attorneys with comparable qualifications handling similar cases"

charge, and are awarded by courts, similar or even significantly higher rates. See Gura Decl. ¶¶ 11-12; Exhibits 3-8. Indeed, considering counsel's experience and qualifications, the requested rate of $640 may be on the lower end.

Plaintiffs are constrained to note that in *Heller*, Judge Sullivan held that counsel is not entitled to fees charged by attorneys in larger firms because counsel practices in a smaller firm. Respectfully, that theory is contrary to the clear command of Supreme Court and circuit precedent, which says absolutely nothing about establishing a caste system based on firm size.[1] Indeed, *Blum* and its progeny are unequivocal about the fact that clients employing attorneys in decidedly unglamourous non-profit public interest settings are entitled to recover *market* rates for quality work. The touchstone is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 896 n.11.

There is very little doubt that undersigned counsel could return to a large firm setting if he desired to do so. And while some (but by no means all) large firm attorneys could have won this case, institutionally, large firms are often reluctant to take on the sort of controversial work that Section 1988 is designed to promote----especially Second Amendment work. That is especially true in the Second Amendment area. Gura Decl. ¶ 14. The attorneys who have recovered similar or even substantially higher rates in Second Amendment cases, Exhibits 3-5, are all quite excellent and doubtless employed regularly at their rates, but they do not appear to work at particularly large firms.

---

[1] It is a matter of public record that the *Heller* fee dispute settled while the matter was pending on appeal for $1.5 million, approximately 25% more than what the Court had awarded.

CONCLUSION

The motion should be granted.

Dated: August 12, 2014                    Respectfully submitted,

                                          Alan Gura (D.C. Bar No. 453449)
                                          Gura & Possessky, PLLC
                                          105 Oronoco Street, Suite 305
                                          Alexandria, VA 22314
                                          703.835.9085/Fax 703.997.7665


                              By:    /s/ Alan Gura
                                     Alan Gura

                                     Attorney for Plaintiffs