IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TOM G. PALMER, et al., ) | Case No. 09-CV-1482-FJS |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| DISTRICT OF COLUMBIA, et al., ) | |
| ) | |
| Defendants. ) | |

DECLARATION OF ALAN GURA

I, Alan Gura, am competent to state and declare the following based on my personal knowledge.

1. I earned my Juris Doctor degree from Georgetown University in 1995, the year in which I was first admitted to practice law. I earned my Bachelor of Arts degree from Cornell University in 1992. I am an active member in good standing of the California, District of Columbia, and Virginia bars. I am also admitted to practice before the United States Supreme Court, all but one of the federal appellate courts, and numerous federal district courts throughout the country.

2. Upon graduation from law school, I clerked for the Hon. Terrence W. Boyle, United States District Judge for the Eastern District of North Carolina. Subsequently, I served as a Deputy Attorney General for the State of California, in the Civil Division of the California Department of Justice. Based in the Los Angeles office, I covered courts throughout southern and central California. I was tasked with first-chair responsibility for representing the state and its employees in a broad array of matters, in trial and on appeal. I handled dozens of cases, ranging from aviation to privacy rights, but the heaviest component of my workload consisted of civil rights work under Section 1983.

3.      From 1998 to 2000, I worked at the Washington, D.C. offices of Sidley & Austin as an associate, where I continued working on civil rights cases in addition to various commercial litigation matters. From early 2000 through early 2001, I served as Counsel to the United States Senate Judiciary Committee, Subcommittee on Criminal Justice Oversight.

4.      I first opened my own practice in 2001. Shortly thereafter, I founded Gura & Day, PLLC, half of which became my current firm, Gura & Possessky, PLLC, in October, 2005. My practice has always focused in large part on constitutional law and civil rights litigation, in trial and on appeal. I have significant experience and expertise in the Second Amendment field.

5.      I have twice argued, and won, before the United States Supreme Court. *District of Columbia* v. *Heller*, 554 U.S. 570 (2008); *McDonald* v. *City of Chicago*, 130 S. Ct. 3020 (2010). I also acted as lead counsel throughout the conduct of those cases, including the successful argument in *Parker* v. *District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007). Among other cases, I organized, helped litigate in District Court, and argued successfully on appeal in *Moore* v. *Madigan*, 702 F.3d 933 (7th Cir. 2012) and *Ezell* v. *City of Chicago*, 651 F.3d 684 (7th Cir. 2011). I also briefed the fee appeal in *McDonald*, which we won without argument in *NRA* v. *City of Chicago*, 646 F.3d 992 (7th Cir. 2011). I have argued, as counsel for appellant, appellee, or amicus curiae, before the First, Second, Third, Fourth, Sixth, Seventh, Ninth, Tenth, and District of Columbia Circuits.

6.      In 2013, the *National Law Journal* named me among the "100 Most Influential Lawyers in America."  In 2010, *Legal Times* named me one of Washington, D.C.'s Top 40 Lawyers Under 40, and a "Champion of Justice."

7.      I have been published in various legal and general interest publications, including the *Harvard Law Review*, *UCLA Law Review, Texas Review of Law and Politics, The Cato Supreme*

*Court Review*, *Los Angeles Daily Journal*, *Legal Times*, *The American Enterprise,* and *Washington Jewish Week*.

8.  I teach bar-sponsored continuing legal education courses throughout the United States, and regularly lecture and debate at law schools. I have recently been appointed as an adjunct Professor of Law at Georgetown University, where I am set to start teaching in the Spring, 2015 semester.

9.  In 2012, I set my standard hourly rate, under which I billed and collected, at $600/hour. That rate is increased to $640/hour effective January 1, 2014, and I have billed and collected for federal appellate work at that rate. Where appropriate, I also work on flat fee, blended, or contingency bases, and in those cases my effective recovered rate has at times greatly exceeded my standard hourly rates.

10. My standard hourly rate is consistent with fees awarded me in similar cases dating to times when I did not have a set hourly rate. For example, in *McDonald*, three years ago, the Northern District of Illinois awarded me fees, on an *agreed* motion, at an hourly rate of $539/hour. See Exhibit 2. In *Heller*, also in 2011, the District Court for the District of Columbia awarded me fees at an hourly rate of $435. However, in so doing, *Heller* was bound by the D.C. Circuit's "Laffey Matrix" methodology, as I did not have an established hourly rate at the time.[1]

---

[1] The *Heller* fee opinion's reference to a $420 hourly rate was a clerical error that the district court corrected on an uncontested Rule 60 motion. See *Parker* v. *Dist. of Columbia*, D.D.C. No. 03-213, Dkt. Nos. 89 & 90. Respectfully, that court also erred in its application of *Laffey*, by selecting the U.S. Attorney's version of the Laffey Matrix, which utilizes an older rate survey and employs the generalized CPI for Washington, D.C. rather than the index for legal services employed by other accepted versions of the Laffey Matrix. See generally www.laffeymatrix.com (last visited Aug. 12, 2014). It is a matter of public record that the *Heller* fee dispute settled on appeal for an amount approximately 25% higher than the district court awarded. In any event, my requested rate is consistent with the updated Laffey Matrix utilizing the legal services CPI, and having since established and collected under an hourly rate, I am no longer subject to the *Laffey* methodology.

11.     My standard hourly rate is also consistent with the standard hourly rates of counsel in related cases. The National Rifle Association sponsored a case parallel to *McDonald*, called *NRA* v. *City of Chicago*. *NRA* counsel's rates are found in Exhibit 3, at 2-4. The Northern District approved of all but two of these rates (Halbrook and Kolodziej). See *NRA of Am., Inc.* v. *Vill. of Oak Park*, 871 F. Supp. 2d 781 (N.D. Ill. 2012). Seven of *NRA* counsel's 2011 court-approved hourly rates met or exceeded my 2014 rate: Stephen Poss ($850), Kevin Martin ($675), Paul Clement ($1020), Daryl Joseffer ($710), Jeffrey Bucholtz ($640), H. Christopher Bartolomucci ($950), and Charles Cooper ($815).[2] In *Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928 (N.D. Ill. 2014), in which the Northern District of Illinois struck down Chicago's ban on the retailing of firearms, two attorneys, Brian Koukoutchos and Howard Nielson, were awarded fees at $625/hour; another attorney, David Thomson, was awarded fees at $655/hour; and a fourth, Charles Cooper, recovered $975/hour. See Exhibits 4 & 5.

12.     My standard hourly rate is also competitive with those charged by other attorneys of similar experience and background who handle complex federal litigation in the relevant community. See 2012 National Law Journal Billing Rate Survey, Dec. 17, 2012, attached hereto as Exhibits 6 (partners), 7 (firmwide), and 8 (associates). In particular, my rate stands well-within the market range for partners, especially when considering our firm's greater efficiency.

13.     I offer public interest discounts to my standard rates, but always with the understanding that fee rights can be recovered at a market rate under fee shifting provisions such as 42 U.S.C. § 1988. This case utilized such an arrangement for four reasons: (1) I believe strongly

---

[2] Notably, the Supreme Court granted the more comprehensive *McDonald* petition for certiorari over NRA's. Our preservation of all available arguments for relief was necessary to prevail. See, e.g., David S. Cohen, THE PARADOX OF MCDONALD V. CITY OF CHICAGO, 79 Geo. Wash. L. Rev. 823 (2011).

that Second Amendment rights should be protected; (2) I believe it is critical that the District of Columbia not be allowed to prohibit wholesale the exercise of fundamental rights; (3) I believe that it is the role of attorneys to ensure that the government follows constitutional requirements; and (4) the Second Amendment Foundation's valuable public service depends in large part on donations from its individual members, and I want the Foundation to maximize its good work. However, without the prospect of recovering a market rate, I would take substantially less public interest work. I would not have undertaken this representation absent the prospect of a Section 1988 recovery because there is a limit as to how much time I am willing to work for below-market rates without hope of recovering the value of my time. I am familiar with the market for legal services, including that market in the civil rights field. I can confidently state that absent Section 1988 and similar fee shifting provisions, the public's access to justice would be greatly limited, as lawyers qualified to handle complex federal litigation would take even fewer civil rights and employment cases.

14.     Having worked in the Second Amendment field for many years, I can confirm that the odds that a firm will take on or assist in representation to secure Second Amendment rights declines precipitously in inverse relation to the size of the firm. As can be seen by the attitude of the organized bar, many attorneys are bitterly opposed to securing Second Amendment rights. In any large or even medium-sized partnership, such attorneys will strenuously object to their firm taking any sort of Second Amendment representation designed to secure individual rights, and the larger firms can usually be counted on to volunteer significant resources to support any form of gun control or prohibition. Large firms are also highly likely to have conflicts, real or practical, with government entities that enforce unconstitutional laws. Individuals seeking redress for their Second Amendment rights cannot expect to get much help from the mega-firms.

15. The discounted rate offered to the Second Amendment Foundation in this case is offered exclusively to the Foundation in Second Amendment matters. Furthermore, over the past five years, I have not charged on a straight hourly basis in any other matter at any rate other than my standard rates.

16. I have kept contemporaneous time records throughout this case. Exhibit 1 contains my record of time spent working on this matter, which was necessary to accomplish the result we achieved in this case. I have taken care to eliminate the notation of any time not actually essential to the litigation's achievements. As noted, I am claiming a total of 85.5 hours at my current rate for a total of $54,720.00 in attorney fees. The filing fee in this case was $350. I am quite confident in declaring that were this matter staffed by a large law firm, the bill would have been exponentially higher, without a commensurate improvement in the ultimate outcome.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 12th day of August, 2014.

/s/ Alan Gura
Alan Gura