**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

ELIZABETH E. MORRIS; and ALAN C. BAKER,

Plaintiffs,

v.

U.S. ARMY CORPS OF ENGINEERS, *et al.*,

Defendants.

Case No. 3:13-CV-00336-BLW

**MEMORANDUM DECISION**

## INTRODUCTION

The Court has before it cross-motions for summary judgment. The Court heard oral argument on August 27, 2014, and took the motions under advisement. After further review, the Court has decided, for reasons set forth below, to grant the plaintiffs' motion and deny the Corps' motion.

## LITIGATION BACKGROUND

Plaintiffs challenge regulations promulgated by the Army Corp of Engineers that govern the possession of firearms on property administered by the Corps. Plaintiffs argue that the regulations violate their Second Amendment right to keep and bear arms.

The regulations govern over 700 dams – holding back more than 100 trillion gallons of water – built by the Corps, and the surrounding recreation areas that serve over 300 million visitors annually. Adopted in 1973, the regulations were intended to provide for more effective management of the lake and reservoir projects. The regulation at issue here reads as follows:

> (a) The possession of loaded firearms, ammunition, loaded projectile firing devices, bows and arrows, crossbows, or other weapons is prohibited unless:
> (1) In the possession of a Federal, state or local law enforcement officer;
> (2) Being used for hunting or fishing as permitted under § 327.8, with devices being unloaded when transported to, from or between hunting and fishing sites;
> (3) Being used at authorized shooting ranges; or
> (4) Written permission has been received from the District Commander.
> (b) Possession of explosives or explosive devices of any kind, including fireworks or other pyrotechnics, is prohibited unless written permission has been received from the District Commander.

36 C.F.R. § 327.13. The plaintiffs' complaint alleges that this regulation violates the Second Amendment by (1) banning the possession of firearms in a tent, and (2) banning the carrying of firearms on Corps' recreation sites. The plaintiffs live in western Idaho, recreate on Corps-administered public lands where this regulation applies, and would possess a functional firearm at those recreation sites but for the Corps' active enforcement of this regulation.

Both sides seek summary judgment. To resolve this dispute, the Court will first identify the legal standards governing the Second Amendment and then evaluate the Corps' regulation under those standards.

## LEGAL STANDARDS

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." *U.S. Const. amend. II.* To determine if the Corps' regulation violates the Second Amendment, the Court must examine first "whether the challenged law burdens conduct protected by the Second Amendment." *U.S. v. Chovan*, 735 F.3d 1127, 1136

Case 3:13-cv-00336-BLW Document 67 Filed 10/13/14 Page 3 of 10

(9th Cir. 2013). The second step is to "apply an appropriate level of scrutiny." *Id.* The "appropriate level" depends on (1) "how close the law comes to the core of the Second Amendment right," and (2) "the severity of the law's burden on the right." *Id*. at 1138 (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 705 (7th Cir.2011)). A regulation that threatens a core Second Amendment right is subject to strict scrutiny, while a less severe regulation that does not encroach on a core Second Amendment right is subject to intermediate scrutiny. *Fyock v. City of Sunnyvale,* 2014 WL 984162 (N.D.Cal. Mar. 5, 2014).

However, this sliding scale analysis is not used when instead of merely burdening the right to bear arms, the law "destroys the right." *Peruta v. County of San Diego,* 742 F.3d 1144, 1168 (9th Cir. 2014). In that case, the law is unconstitutional "under any light." *Id.* "It is a rare law that 'destroys the right' requiring *Heller*-style per se invalidation." *Id.* at 1170. That type of "rare law" was at issue in *Peruta.* There, a firearm registration scheme in San Diego County effectively banned the open and concealed carry of handguns for law-abiding citizens. *Id.* at 1175. The Circuit held that while a State may be able to ban the open *or* concealed carry of firearms, it may not ban *both. Id.* at 1172 (holding that "the Second Amendment does require that the states permit some form of carry for self-defense outside the home"). Because the San Diego County law effectively "destroyed" a law-abiding citizen's Second Amendment right to carry a handgun for self-defense, the Circuit did not apply any level of scrutiny but simply declared the law unconstitutional. *Id.* at 1175.

**ANALYSIS**

The Court must ask first whether the Corps' regulation burdens conduct protected by the Second Amendment. It does. The Second Amendment protects the right to carry a firearm for self-defense purposes. *Heller,* 554 U.S. at 628 (stating that "the inherent right of self-defense has been central to the Second Amendment right"). That right extends outside the home. *Peruta,* 742 F.3d at 1166 (holding that "the right to bear arms includes the right to carry an operable firearm outside the home for the lawful purpose of self-defense").

The Corps' regulation bans carrying a loaded firearm for the purpose of self-defense. It also bans carrying an unloaded firearm along with its ammunition. At most, it would allow a person to carry an unloaded firearm so long as he was not also carrying its ammunition. An unloaded firearm is useless for self-defense purposes without its ammunition. While those who use firearms for hunting are allowed greater latitude, the regulation grants no such exemption to those carrying firearms solely for purposes of self-defense. Consequently, the regulation does impose a burden on plaintiffs' Second Amendment rights.

Under *Peruta,* this complete ban goes beyond merely burdening Second Amendment rights but "destroys" those rights for law-abiding citizens carrying operable firearms for the lawful purpose of self-defense. Accordingly, the Corps' regulation is unconstitutional "under any light" – that is, it is invalid no matter what degree of scrutiny is used in its evaluation. *Id.* at 1168-70.

The Corps certainly retains the right to regulate handguns on its property; the Second Amendment right is "not unlimited." *Heller,* 554 U.S. at 595. It is "not a right to

keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id*. at 626. The Ninth Circuit confirms this in *Peruta:*

> We conclude by emphasizing, as nearly every authority on the Second Amendment has recognized, regulation of the right to bear arms is not only legitimate but quite appropriate. We repeat *Heller's* admonition that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession"—or carriage—"of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller*, 554 U.S. at 626–27. Nor should anything in this opinion be taken to cast doubt on the validity of measures designed to make the carrying of firearms for self-defense as safe as possible, both to the carrier and the community. We are well aware that, in the judgment of many governments, the safest sort of firearm-carrying regime is one which restricts the privilege to law enforcement with only narrow exceptions. Nonetheless, "the enshrinement of constitutional rights necessarily takes certain policy choices off the table . . . . Undoubtedly some think that the Second Amendment is outmoded in a society where our standing army is the pride of our Nation, where well-trained police forces provide personal security, and where gun violence is a serious problem. That is perhaps debatable, but what is not debatable is that it is not the role of this Court [or ours] to pronounce the Second Amendment extinct." *Id*. at 636. Nor may we relegate the bearing of arms to a "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees that we have held to be incorporated into the Due Process Clause." *McDonald*, 130 S.Ct. at 3044.

*Peruta,* 742 F.3d at 1178. This language confirms the right of the Corps to regulate handguns on its property. But here the Corps is attempting to ban handguns, not regulate them. The Corps justifies the ban by arguing that its parks are a "sensitive place," a phrase used by *Peruta,* quoting *Heller,* in the excerpt above. But those cases limited the "sensitive place" analysis to facilities like "schools and government buildings." In contrast, the ban imposed by the Corps applies to outdoor parks.

The Corps argues that it is entitled to be more restrictive because it is a governmental entity acting as a proprietor managing its own property. In support, the Corps cites *Nordyke v King*, 681 F.3d 1041 (9th Cir. 2012) (en banc), a case upholding a firearms ban on the ground that the governmental entity was acting as a proprietor to manage its property. In *Nordyke,* the plaintiffs challenged an Alameda County law making it a misdemeanor to possess a firearm on County property. The ban in that case was just as broad as that faced two years later in *Peruta* – neither law allows a law-abiding citizen to carry a gun for self-defense purposes – but *Nordyke* comes to the opposite result and upholds the ban.

How can the two cases be reconciled? Quite easily, as it turns out. The plaintiffs in *Nordyke* only challenged the Alameda County law as an effective ban on gun shows on County property because no seller could display firearms without running the risk of committing a misdemeanor. Importantly, the plaintiffs did not allege that they wanted to carry guns on county property for the purpose of defending themselves.[1] Having to confront only that aspect of the law that burdened gun shows rather than the core Second Amendment right of self-defense, the Circuit held that the law passed muster because Alameda County was entitled to impose restrictions on gun shows on County property in

---

[1] The allegations of the parties in *Nordyke* were made clear in the three-judge panel opinion that was withdrawn when the case was taken en banc. *Nordyke v. King,* 644 F.3d 776, 786 (noting that plaintiffs "complain that they cannot display and sell guns on county property; they do not allege that they wish to carry guns on county property for the purpose of defending themselves while on that property"), *withdrawn by,* 664 F.3d 774 (9th Cir. 2011). The Court is not citing the three-judge panel opinion for its precedential value but merely reciting its factual account of the pleadings.

its role as proprietor of its property. Moreover, despite the strict language of the law, the County had interpreted the law to loosen its restriction and allow the display of firearms.

In contrast, the plaintiffs in the present case do allege that their core right of self-defense is infringed, and the Corps has not interpreted its regulation to impose something less than its language conveys. Thus, *Nordyke* offers little guidance here.

The Court recognizes that a District Court in the Eleventh Circuit has evaluated the same Corps' regulation and concluded, in resolving a motion for preliminary injunction, that it is unlikely the plaintiffs' challenge will succeed. *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers,* 2014 WL 4059375 (N.D.Ga. Aug. 18, 2014). That decision relied on *Nordyke* in applying an intermediate level of scrutiny and finding that the regulation passed muster. This Court, however, is bound by *Peruta*, as discussed above, and finds *Nordyke* distinguishable. Thus, the Court declines to follow the analysis of *GeorgiaCarry.Org.*

The Corps argues that its recreation sites are public venues where large numbers of people congregate, making it imperative that firearms be tightly regulated. The Corps also points out that the sites contain dams and power generation facilities that require heightened protection, especially given homeland security threats.

The Corps manages 422 projects in 42 states, including 702 dams and over 14,000 miles of levees. *See Statement of Facts (Dkt. No. 52-2)* at ¶¶ 1, 9. These dams and related structures have been deemed as "critical infrastructure" by the U.S. Department of Homeland Security's Office of Inspector General on that ground that a catastrophic

failure could affect populations exceeding 100,000 and have economic consequences surpassing $10 billion. *Id.* at ¶ 10.

The Corps undoubtedly has a substantial interest in "providing the public with safe and healthful recreational opportunities while protecting and enhancing [its] resources." 36 C.F.R. § 327.1. About 90% of the lakes that support Corps' projects are located near metropolitan areas. *Id.* at ¶ 2. It follows that most of these facilities have a "high density of use." *Id.* at ¶ 4. This density leads to conflicts caused by alcohol consumption, overcrowded facilities, visitors' preference for different types of music played at different sound levels, and the relative loudness of visitors' conversations. *Id.* at ¶ 18. Based on surveys conducted some twenty years ago, Corps Park Rangers often found themselves in dangerous situations, and were assaulted by visitors once every six days. *Id.* at ¶¶ 21-26. The Corps has concluded that "the presence of a loaded firearm could far more quickly escalate such tension between visitors from a minor disagreement to a significant threat to public safety involving the potential use of deadly force by a visitor against another visitor or unarmed Corps Park Ranger." *See Austin Declaration (Dkt. No. 18-1)* at ¶ 5c. The danger to Corps Park Rangers is especially acute because Congress has not authorized them to carry firearms. *Id.* at ¶ 28.

The Corps cites these considerations to support the ban imposed by its regulation. But *Peruta* and *Heller* rejected that line of argument: "We are well aware that, in the judgment of many governments, the safest sort of firearm-carrying regime is one which restricts the privilege to law enforcement with only narrow exceptions. Nonetheless, the

enshrinement of constitutional rights necessarily takes certain policy choices off the table . . . ." *Peruta*, 742 F.3d at 1178.

**<u>Conclusion</u>**

The regulation banning the use of handguns on Corps' property by law-abiding citizens for self-defense purposes violates the Second Amendment. While the Corps retains the right to regulate the possession and carrying of handguns on Corps property, this regulation imposes an outright ban, and is therefore unconstitutional under any level of scrutiny, as set forth in *Heller* and *Peruta.* The Court recognizes that this result conflicts with *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers,* 2014 WL 4059375 (N.D.Ga. Aug. 18, 2014), but the Court's decision is dictated by the law of the Ninth Circuit, namely *Peruta.*

For all of the reasons cited above, the Court will grant plaintiffs' motion for summary judgment and deny the Corps' motion. The plaintiffs are therefore entitled to a declaratory judgment that 36 C.F.R. § 327.13 violates the Second Amendment, and an injunction enjoining its enforcement in Idaho. The injunction is limited to Idaho because its scope is dictated by the allegations of the two named plaintiffs – Elizabeth Morris and Alan Baker. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (holding that "[t]he district court abused its discretion in enjoining the rules themselves as opposed to enjoining their enforcement as to the plaintiffs before him"). Morris and Baker allege that they use Corps' campgrounds in Idaho, *see Declarations of Morris and Baker (Dkt. Nos. 9 & 10),* and so the Court's injunction will be limited to enjoining enforcement on Corps' property in Idaho. *See Meinhold v. U.S. Dept. of Defense,* 34 F.3d 1469 (9th Cir.

1994) (holding that court could not impose nationwide injunction against application of unconstitutional federal regulation where plaintiffs had not been certified as a class).

The Court will enter a separate Judgment setting forth these rulings as required by Rule 58(a).

DATED: October 13, 2014

B. Lynn Winmill
Chief Judge
United States District Court